| | |
|---|---|
| 1 | **BARNES & THORNBURG LLP** |
| 2 | Stephen R. Mick, Bar No. 131569<br>stephen.mick@btlaw.com |
| 3 | Devin J. Stone, Bar No. 260326<br>devin.stone@btlaw.com |
| 4 | 2029 Century Park East, Suite 300<br>Los Angeles, California  90067 |
| 5 | Telephone:   (310) 284-3880<br>Facsimile:    (310) 284-3894 |
| 6 | Attorneys for Defendants |
| 7 | LAKESHORE ENTERTAINMENT GROUP LLC, LAKESHORE |
| 8 | ENTERTAINMENT CORP., FILMDISTRICT PICTURES, LLC, FOCUS |
| 9 | WORLD, INC., SIDNEY KIMMEL ENTERTAINMENT, LLC, BRILLCO, |
| 10 | INC., and STEVEN BRILL |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | | |
|---|---|---|
| 14 | SHAME ON YOU PRODUCTIONS, INC., | Case No.: 2:14-cv-03512 MMM (JCx) |
| 15 | Plaintiff, | |
| 16 | v. | **LAKESHORE ENTERTAINMENT GROUP LLC'S EX PARTE APPLICATION FOR AN ORDER DIRECTING PLAINTIFF TO COMPLY WITH THE COURT'S EXPLICIT DIRECTION TO PROVIDE A COPY OF ITS SCREENPLAY** |
| 17 | ELIZABETH BANKS, an individual; MAX HANDELMAN, an individual, STEVEN BRILL, an individual, BRILLCO, INC., a California corporation, FOCUS WORLD, INC., a California corporation; SIDNEY KIMMEL ENTERTAINMENT, LLC, a California limited liability company; FILMDISTRICT PICTURES, LLC, a Delaware limited liability company; LAKESHORE ENTERTAINMENT CORP., a Delaware corporation; LAKESHORE ENTERTAINMENT GROUP LLC, a California limited liability company; and Does 1-10, inclusive, | |
| | | Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 780 |
| | | *[Assigned to Hon. Margaret M. Morrow]* |
| 25 | Defendants. | |

**EX PARTE APPLICATION**

1  **TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

2  PLEASE TAKE NOTICE THAT defendant Lakeshore Entertainment Group LLC ("Lakeshore") will, and hereby does, move *ex parte,* pursuant to this Court's prior instruction, for an order (1) immediately directing Plaintiff Shame On You Productions, Inc. ("SOYP") to comply with the Court's explicit instruction to turnover a copy of the screenplay on which it claims copyright infringement and (2) compensating Lakeshore for the cost of ordering a transcript of the Court' s September 29, 2014 scheduling conference which Lakeshore ordered in an attempt to informally resolve this dispute.

Good cause exists for the requested *ex parte* relief because, as discussed at the Court's September 29, 2014 scheduling conference, Lakeshore is considering filing a Rule 12(c) motion for judgment on the pleading's on Plaintiff's "substantial similarity" claim.  The case law is clear that when a Plaintiff files suit on the basis that one work infringes another, the Court can dispose of that claim by simply comparing the two works without additional evidence. *Branch v. Tunnell*, 14 F.3d  449, 454 (9th Cir. 1994); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 n. 6 (C.D. Cal. 2007) ("If after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to relief – the standard for dismissal under Rule 12(b)(6)."). Courts are also clear that in such circumstances the two works at issue are considered part of the pleadings.  Thus, a motion for judgment on the pleadings has a strong potential to dispose of the case without need for extensive and costly discovery or further motion practice.  However, remarkably, Plaintiff refuses to turn over a copy of its screenplay despite the fact that Plaintiff had public access to Lakeshore's feature film *Walk of Shame* (which Plaintiff claims infringes on its work) *and* Lakeshore has already produced the final shooting script for the movie.  Plaintiff has already propounded nine sets of written discovery and set three depositions and yet refuses to divulge its central

document: the screenplay. The only reason for this delay is so Plaintiff can prevent Lakeshore from filing a motion for judgment on the pleadings in order to take extensive and voluminous discovery, drive up the costs to all defendants, and delay the resolution of the case. As this Court stated at the scheduling conference "**as part of your initial disclosures, those screenplays have to be exchanged. This is not a game of cat and mouse. It's a game of put everything on the table and then let's see where the chips fall. So let's get that done.**"

This Application is based on this notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Devin Stone, all pleadings in the Court's file, and any oral argument that the Court may request on this matter.

Pursuant to Local Rule 7-19.1, Lakeshore provides the following known contact information for Plaintiff's counsel:

> Charles M. Coate
> ccoate@cacllp.com
> Costa Abrams & Coate LLP
> 1221 2nd Street, Third Floor
> Santa Monica, California 90401
> (310) 576-6161 (voice)
> (310) 576-6160 (fax)

Lakeshore has fully apprised Plaintiff of the substance of this ex parte application in correspondence and Plaintiff's counsel has already provided a "preliminary opposition" in which is attached the Declaration of Devin Stone ("Stone Decl.").

Dated: November 6, 2014         **BARNES & THORNBURG LLP**

By: _____/s/ Devin Stone_____
STEPHEN R. MICK
DEVIN STONE
Attorneys for Defendants
Lakeshore Entertainment Group LLC *et al.*

LAKESHORE ENTERTAINMENT GROUP LLC'S EX PARTE APPLICATION FOR AN ORDER DIRECTING PLAINTIFF TO COMPLY WITH THE COURT'S EXPLICIT DIRECTION TO PROVIDE A COPY OF ITS SCREENPLAY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff claims that Lakeshore's movie *Walk of Shame* infringes on Plaintiff's screenplay. Yet, despite quoting and comparing both works extensively in the Complaint, Plaintiff refuses to turn over a copy of its screenplay. When counsel explained to the Court at the initial scheduling conference that Plaintiff had failed to turn over this screenplay, the Court wasted no time in disposing of the issue:

> as part of your initial disclosures, those screenplays have to be exchanged. This is not a game of cat and mouse. It's a game of put everything on the table and then let's see where the chips fall. So let's get that done.

Lakeshore's movie has been public for over a six months and Lakeshore provided Plaintiff the final shooting script just days after providing its initial disclosures. Yet, inexplicably, Plaintiff refuses to turn over its screenplay. It is baffling that Plaintiff would file suit on the basis of a document it refuses to produce. Plaintiff Shame on You Productions, Inc. ought to be ashamed of itself.

Lakeshore tried to avoid this exact situation by suggesting a mutual exchange of screenplays at the Rule 26(f) conference amongst counsel in August. Plaintiff's counsel refused Lakeshore's offer and explicitly stated that, instead, Plaintiff would produce its screenplay with its initial disclosures. Inexplicably, Plaintiff still refuses to provide its screenplay. Plaintiff has no basis for doing so. This Court has already directed Plaintiff to provide its screenplay. Plaintiff has quoted and described the screenplay *ad naseum* in its Complaint. The only reason for delay is that Plaintiff wishes to prejudice defendants by preventing them from filing a valid motion for judgment on the pleadings demonstrating that there is no similarity between the two works. Given that Plaintiff has already served extensive discovery and defendants have filed none, it is incredibly

1

**LAKESHORE ENTERTAINMENT GROUP LLC'S EX PARTE APPLICATION FOR AN ORDER DIRECTING PLAINTIFF TO COMPLY WITH THE COURT'S EXPLICIT DIRECTION TO PROVIDE A COPY OF ITS SCREENPLAY**

unfair that Plaintiff seeks to hide the ball in contravention of the Court's explicit instruction and its Rule 26 obligations.

## II.   FACTS

The defendants in this action are the producers, distributors, authors, writer, director, and actress (and actress's husband) of the major motion picture *Walk of Shame*. (Compl, ¶¶ 4-12.). Plaintiff is a single purpose corporation that is the assignee of a screenplay entitled *Darci's Walk of Shame* written by Dan Rosen. (Compl., ¶ 16). Plaintiff alleges that "numerous substantive original elements of 'Walk of Shame' are copied from the [*Darci's Walk of Shame*] screenplay." (Compl., ¶ 24). Based on the alleged similarities, Plaintiff asserts one claim for copyright infringement and one claim for breach of an implied-in-fact contract (which also relies on the copyright infringement claim).

From the very beginning of this case, Lakeshore was worried that Plaintiff would play games with its screenplay because Plaintiff did not attach the screenplay to the Complaint. In anticipation of the Court's scheduling conference, on August 14, 2014, all counsel in this action participated in a Rule 26(f) conference in which Lakeshore offered to immediately provide the final screenplay to its widely released *Walk of Shame* movie, if Plaintiff would agree to provide its *Darci's Walk of Shame* screenplay at the same time. Despite the agreement of all defendants, Plaintiff declined a mutual exchange of scripts stating that it would instead provide plaintiff's screenplay with plaintiff's initial disclosures. Stone Decl. ¶ 2.

On September 29, 2014, the Court conducted its initial scheduling conference. All parties attended. Stone Decl. ¶ 3. The issue of disclosing the relevant screenplay was extensively discussed by Court and counsel:

> THE COURT: So you have not, as yet, produced for plaintiff a copy of Brill's screenplay; is that right?

| | |
|---|---|
| 1 | MR. MICK: We've offered to do so in exchange for their screenplay, which hasn't |
| 2 | happened yet. |
| 3 | THE COURT: Okay. But -- |
| 4 | MR. MICK: They -- |
| 5 | **THE COURT: -- we really need to get on with this, counsel, so as part of** |
| 6 | **your initial disclosures, those screenplays have to be exchanged. This is not a** |
| 7 | **game of cat and mouse. It's a game of put everything on the table and then** |
| 8 | **let's see where the chips fall. So let's get that done.** |
| 9 | MR. MICK: I would like to point out, Your Honor, that my clients released the |
| 10 | motion picture, which has been publicly available for the entire period of the |
| 11 | lawsuit and the plaintiff has seen it, so it's not like we're hiding the cards there. |
| 12 | THE COURT: Well, I just would like all sides to exchange the information they |
| 13 | need to exchange. |
| 14 | MR. MICK: Happy to do so. |

15 Stone Decl. Ex. A (9:3-19) (emphasis added).

16 The parties exchanged initial disclosures on October 14, 2014.  Stone Decl. ¶ 4-5.
17 Shortly thereafter, Lakeshore produced the final shooting screenplay for *Walk of Shame*.
18 Stone Decl. ¶ 6.  Notwithstanding, Plaintiff continued to refuse to produce its
19 screenplay.

20 From October 28 through November 5, Lakeshore sent numerous emails and
21 letters to Plaintiff's counsel in an attempt to convince Plaintiff to provide a copy of the
22 script.  Stone Decl. ¶ 7, Ex. B.  While Lakeshore sent *emails* directly to counsel,
23 Plaintiff waited days to respond and even then, responded via US mail, further delaying
24 matters. *Id.* Lakeshore went so far as to order a copy of the transcript of the Court's
25 scheduling conference so that it could provide the exact quote (above) in which the
26 court instructed the parties to provide copies of the relevant screenplays. *Id.*  As was
27 clear from the discussion in Court, defendants were at a distinct disadvantage because

28

Plaintiff had access to defendants' work for months (because it was publically released), but defendants had no access to Plaintiff's work because it was not attached to the Complaint. Plaintiff is not "putting everything on the table." Plaintiff is "playing cat and mouse." Plaintiff possesses not only defendants' work (which is publically available) but also the screenplay on which the movie was based. Plaintiff's extensive analysis of all of the relevant works can be found at Docket entry No. 1, the Complaint.

Rather than comply with Court's clear instruction, Plaintiff chooses to play games.

### III. ARGUMENT

#### A. Plaintiff Should Comply With the Court's Instructions to Level The Playing Field

Plaintiff spends 53 pages in the Complaint extolling the virtues of its screenplay. Plaintiff spends 25 pages *directly comparing its purported screenplay to defendants' publically-released movie*. Plaintiff should have included the screenplay with the original Complaint. Yet, six months have elapsed since Plaintiff filed suit, and Plaintiff is still hiding the ball.

Plaintiff initially claimed that it was not producing the screenplay because it had "yet to receive a formal written request to that effect." Stone Decl. Ex. B. Plaintiff quickly abandoned this argument when presented with the transcript of the scheduling conference.

Ironically, in correspondence, Plaintiff has stated that it was "*always*" willing to conduct a "mutual" and "reciprocal" exchange. It appears that Plaintiff does not understand the meaning of the terms "always," "mutual," or "reciprocal." *Lakeshore has already provided its screenplay* – which Plaintiff has had since before this litigation started. As it stands, defendants are more prejudiced than when litigation began – Plaintiff now has the movie and the script yet defendants have none of Plaintiff's claimed works. Plaintiff's revisionist position that it has 'always agreed to a mutual

exchange of scripts' ignores its current obstreperousness, ignores Lakeshore's offer of a mutual exchange in August (and Plaintiff's decline), and ignores Lakeshore's production of the *Walk of Shame* screenplay.

Plaintiff's main defense is that Lakeshore has not produced "all versions thereof and all drafts, development notes, electronic notes or email communications regarding the same both before and after the initiation of this case" and therefore Plaintiff is somehow excused from producing the one document on which its entire case rests. Stone Decl. Ex. B. Plaintiff "argument" is no argument at all. Lakeshore has produced its screenplay and Plaintiff has not. But more fundamentally, Plaintiff seems to confuse initial disclosures with full written discovery. To the extent prior versions of the *Walk of Shame* screenplay exists, defendants have no qualms with producing them, but such drafts have no bearing on Plaintiff's obligation to provide the document on which its entire case is based. Strangely, instead of providing the screenplay at the time of its initial disclosures, Plaintiff provided only one hundred pages of worthless contracts not related to the infringement claims. Unbelievably, Plaintiff's counsel claims that "Plaintiff timely complied with the requirements of F.R.C.P. Rule 26 with respect to …[the] documents it intends to rely upon in this action." Stone Decl. Ex. B. If Plaintiff continues to make this argument, Lakeshore requests that Plaintiff be barred from relying on its screenplay in this action since it has admitted it does not intend to rely on this document.[1]

In the same correspondence, Plaintiff has demanded a protective order. It appears that by demanding a protective order before producing the script, Plaintiff will attempt to designate its screenplay as "confidential" or "attorneys' eyes only." Such a designation would be preposterous. Plaintiff's demand for a confidentiality order (which, in general, Lakeshore has no problem with) is a complete red herring and has

---

[1] In another non sequitur, Plaintiff also demanded a copy of Lakeshore's insurance policy. Although Plaintiff continues to refer to the insurance policy in correspondence, Lakeshore has already agreed to provide the policy and is in the process of gathering the documents for production.

nothing to do with the production of Plaintiff's screenplay.  Plaintiff cannot seriously claim that the screenplay it described for 53 pages is confidential or "work product." Yet, Plaintiff's correspondence seems to suggest this is Plaintiff's plan.  Stone Decl. Ex. B.

It is incredible that this should-be minor dispute has reached this level. Lakeshore tried everything to avoid going before this Court.  For over a week, Lakeshore attempted to reason with Plaintiff.  It provided its screenplay and has agreed to produce many more documents.  Additionally, Lakeshore agreed in principal to a protective order. Yet Plaintiff stonewalls to take strategic advantage in this suit.  "This is not a game of cat and mouse. It's a game of put everything on the table and then let's see where the chips fall."  "[T]hose screenplays have to be exchanged."

### B. Defendants Require Plaintiff's Screenplay Immediately To Determine If This Case is Amenable to Judgment on the Pleadings

The case law is clear that when a Plaintiff files suit on the basis that one work infringes another, the Court can dispose of that claim by simply comparing the two works without additional evidence.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 n. 6 (C.D. Cal. 2007) ("If after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to relief – the standard for dismissal under Rule 12(b)(6).").  Courts are also clear that in such circumstances the two works at issue are considered part of the pleadings.  *Id.*  Thus, a motion for judgment on the pleadings has a strong potential to dispose of the case without need for extensive and costly discovery or further motion practice.

Lakeshore is considering filing a Rule 12(c) motion for judgment on the pleading's on Plaintiff's "substantial similarity" claim.  However, Lakeshore cannot determine if this case is amenable to judgment on the pleadings *until it has access to*

*Plaintiff's screenplay*. This is exactly what Plaintiff is attempting to avoid by delaying the production of its screenplay until it has completed extensive and onerous discovery. To date, Plaintiff has propounded nine sets of written discovery and noticed three depositions. Defendants have propounded no discovery. Defendants cannot properly defend themselves until they have access to Plaintiff's work – the work it contends forms the basis of its claims.

      Plaintiff's roadblocks delay a speedy resolution of the case, which burdens defendants and this Court.

### IV. CONCLUSION

      As Lakeshore stated in correspondence, "[i]t is a sorry state of affairs when Plaintiff refuses to provide the central document in its case, forcing needless letter writing and potential motion practice. [One] may remember that Lakeshore sought to avoid this very situation when it offered to mutually exchange screenplays before the parties had even filed their joint Rule 26 report. But Plaintiff rebuked the offer. Plaintiff has had two and a half months since the parties' initial conference to produce the documents; yet Plaintiff insists on hiding the ball." Plaintiff's gamesmanship should stop.

Dated: November 6, 2014

      **BARNES & THORNBURG LLP**

      By: _/s/ Devin Stone_
      STEPHEN R. MICK
      DEVIN STONE
      Attorneys for Defendants
      Lakeshore Entertainment Group LLC *et al.*