1   **BARNES & THORNBURG LLP**
    Stephen R. Mick, Bar No. 131569
2   stephen.mick@btlaw.com
    Devin J. Stone, Bar No. 260326
3   devin.stone@btlaw.com
    2029 Century Park East, Suite 300
4   Los Angeles, California 90067
    Telephone: (310) 284-3880
5   Facsimile: (310) 284-3894

6   Attorneys for Defendants
    LAKESHORE ENTERTAINMENT
7   GROUP LLC, LAKESHORE
    ENTERTAINMENT CORP.,
8   FILMDISTRICT PICTURES, LLC, FOCUS
    FEATURES, LLC, SIDNEY KIMMEL
9   ENTERTAINMENT, LLC, BRILLCO,
    INC., STEVEN BRILL, ELIZABETH
10  BANKS, and MAX HANDELMAN

11

12                  UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

14  SHAME ON YOU PRODUCTIONS,          Case No.: 2:14-cv-03512 MMM (JCx)
    INC.,
15                                     
                    Plaintiff,         
16                                     **LAKESHORE ENTERTAINMENT
    v.                                 LLC'S REPLY IN SUPPORT OF
17                                     MOTION FOR JUDGMENT ON THE
    ELIZABETH BANKS, an individual;    PLEADINGS**
18  MAX HANDELMAN, an individual,
    STEVEN BRILL, an individual,       [Fed. R. Civ. P. 12(c)]
19  BRILLCO, INC., a California        
    corporation, FOCUS WORLD, INC., a  Date:   May 18, 2015
20  California corporation; SIDNEY     Time:   10:00 a.m.
    KIMMEL ENTERTAINMENT, LLC,         Place:  Courtroom 780
21  a California limited liability company;
    FILMDISTRICT PICTURES, LLC, a      
22  Delaware limited liability company; *[Assigned to Hon. Margaret M. Morrow]*
    LAKESHORE ENTERTAINMENT            
23  CORP., a Delaware corporation;     
    LAKESHORE ENTERTAINMENT            
24  GROUP LLC, a California limited    
    liability company; and Does 1-10,  
25  inclusive,                         

26                  Defendants.

27

28
    ─────────────────────────────────────────────────
                              1
    REPLY TO MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    __INTRODUCTION__

The Ninth Circuit has long held that non-infringement can be determined on a motion to dismiss.  If "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."  *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see, e.g., Kennedy v. Paramount Pictures Corp.*, 2013 WL 1285109 (S.D. Cal. Mar. 27, 2013) (granting a plaintiff's motion to dismiss because plaintiff's work was not substantially similar to defendant's depiction of characters, plot, and themes in Titanic.)

Plaintiff's entire case is based on nothing more than superficial similarity of general concepts and ideas.  This has never been enough.  *See, e.g., Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (conceptual similarities between stories and characters are not enough to establish infringement regardless of plaintiff's ability to present an elaborate analysis of generalized adjectives that purport to describe each work – such descriptions "are so general as to be quite useless.).   As in the aforementioned cases, the only overlap here, if any, is of non-protectable, generalized concepts, stock devices, and *scenes a faire* – exemplified by Plaintiff's laundry list of abstract similarities and Plaintiff's own misleading use of general adjectives instead of actual comparison of expression.  This kind of conceptual similarity is insufficient as a matter of law and is routinely rejected by courts.  *See, e.g., Zella, v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1138 (C.D. Cal. 2007) ("Courts have routinely rejected . . . random similarities"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045–46 (9th Cir. 1994)("And, we are equally unimpressed by Koufs compilation of random similarities scattered throughout the works[.])"  A careful examination of the two works reveals that the story, setting and characters in the two works are simply different.  The Court should dismiss the copyright claim because no reasonable trier of fact could find substantial similarity of protectable expression here.

1  **II.    THIS MJOP IS PROPER**

2          **A.    Plaintiff's Claim that Lakeshore's MJOP is a MSJ Is Wrong**

3          The inclusion of the two works at issue does not convert Lakeshore's MJOP to a

4  motion for summary judgment.  *Rose v. Chase Manhattan Bank USA*, 396 F. Supp. 2d

5  1116, 1119 (C.D. Cal. 2005) *aff'd*, 513 F.3d 1032 (9th Cir. 2008); *Rosenfeld v.*

6  *Twentieth Century Fox Film*, 2008 WL 4381575, at *2 (C.D. Cal. 2008) (court may rely

7  on documents alleged in complaint in ruling on a "Rule 12(c) motion, without

8  converting the motion into a motion for summary judgment.").  Indeed, Lakeshore cited

9  five cases verifying the incorporation by reference doctrine in the copyright context (*See*

10  Mot. at 6), none of which Plaintiff addresses in any way.  Lakeshore's MJOP is a proper

11  pleadings motion based solely on the works at issue, which the Court may examine with

12  its own eyes.[1]  Plaintiff desperately wants the Court to latch on to the red herring of an

13  "issue of fact."  However, the content of the two works in question are undisputed and

14  will not change – thus no disputed issue of fact here.  There is only a question of

15  applying the law to the undisputed facts, which has long been the province of the Court.

16          **B.    A Motion For Judgment on the Pleadings is Proper, Especially Here**

17          A Rule 12 motion is both proper and optimal here.  Plaintiff completely ignores

18  the dozens of cases that Lakeshore cites demonstrating that the Court can determine lack

19  of substantial similarity at the pleadings stage.  *See e.g.,* Mot. at 5 n.2 (citing 10 cases

20  dismissing copyright claims on the pleadings).  *See also, Segal v. Rogue Pictures,* 2011

21  WL 11512768, at *3 (C.D. Cal. Aug. 19, 2011) aff'd, 544 F. App'x 769 (9th Cir. 2013)

22  (granting motion for judgment on the pleadings where no substantial similarity and

23  court took judicial notice of works in question); *Cano v. World of Difference Instit.,*

24  1996 WL 371064, at *1 (N.D. Cal. 1996); *Mandeville-Anthony v. Walt Disney Co.,*

25  _____

26  [1] Plaintiff curiously spends two and a half pages arguing that Lakeshore's MJOP (under Rule 12(c)) is
actually a Rule 12(b)(6) motion to dismiss in disguise and is therefore untimely.  This is nonsense.
Motions under 12(c) or Rule 12(b) are essentially identical and the case law applies equally to both.

27  *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002); *Dworkin v. Hustler
Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989) ("[T]he motions are <u>functionally identical</u>....").

28  The only difference is the timing of the motion.

1    2012 WL 4017785, at *2 (C.D. Cal. July 28, 2012).  In most cases, Rule 12 serves the

2    laudable goal of avoiding the cost of further litigation and extensive discovery.

3        Plaintiff's attempt to dodge the application of law to indisputable facts is merely

4    self-serving – the content of its screenplay and Lakeshore's movie are undisputed, and

5    will remain the same now, and in the future.   Dozens of cases show that the Court can –

6    and should – make this determination at the Rule 12 stage, without extrinsic evidence.

7        **C.    Plaintiff Cannot Defeat Lakeshore's MJOP By Attaching Extranous**

8        **and Irrelevant Evidence**

9        Plaintiff's attempt to evade the application of law to the acknowledged facts

10   extends to its purported "expert" declaration, which attempts to usurp the Court's

11   position and reasoning.  The opinion of "experts" is improper here for the reasons set

12   forth in Defendant's separately filed Objection.  In short, substantial similarity is a legal

13   question for this Court, and the Court alone.  *Gable v. Nat'l Broad. Co*., 727 F. Supp. 2d

14   815, 833 (C.D. Cal. 2010) *aff'd* 438 F. App'x 587 (9th Cir. 2011).  Nothing about

15   comparing two works requires an expert opinion.  The Court need only read, watch, and

16   compare.  All that is left is the application of the law.  *See also In re Novatel Wireless*

17   *Secs. Litig.*, 830 F. Supp. 2d 996, 1011 (S.D. Cal. 2011).

18       **D.    This MJOP is Not Moot**

19       While Plaintiff has filed an amended complaint, the FAC merely substitutes two

20   additional parties in as Doe defendants.  This amendment does not change the works at

21   issue or the analysis of thereof.   Plaintiff should not benefit once again from its

22   extensive delay in turning over the screenplay.

23   **III.   THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN THE WORKS**

24       **A.    Plaintiff's Reliance on the "Inverse Ratio" and Non-Protectable**

25       **Elements is Wrong**

26       Plaintiff grossly misstates the law regarding the "inverse ratio," and attempts to

27   apply a far more lenient standard than applies.   "Copying," within the meaning of the

28   law, embraces two distinct elements:  (1) actual use of someone else's work (as opposed

to independent creation), and (2) ultimate liability for infringement, which requires the appropriation of protectable elements to create a second work that is substantially similar within the meaning of the law.  *See e.g. Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006).

Actual use (i.e., physical copying of another's work) is generally demonstrated through circumstantial evidence of "access" plus sufficiently "striking" similarity to justify a logical inference of use.  *Id.*  This is the context in which the inverse ratio principle arises, because where two works are *extremely* similar, less evidence of access is necessary to justify the inference.

The inverse ratio principle, however, has no bearing on the second part of the test: i.e., whether the two works are sufficiently similar in their protected expression to establish liability for infringement.  Because the phrase "substantial similarity" is often used in overlapping fashion, it is convenient for Plaintiff to misapply cases that talk about the former concept in a manner that misleads the Court concerning the latter concept.  However, as Professor Nimmer (and others) have explained:

> the Inverse Ratio Rule does not indicate whether liability should be imposed. It only plays a role in determining whether actual use or copying occurred; actual use or copying, by itself, does not give rise to liability. In copyright cases, liability also requires substantial similarity (copying as a legal matter), which is separate from copying as a factual matter.

5-19D Nimmer on Copyright § 19D.07.  It is "error" to hold that the "the Inverse Ratio Rule reduced the degree of similarity necessary to find ultimate liability."  *Id.*  Thus, even where access and physical copying are admitted, a plaintiff must still prove substantial similarity of protected expression.  *Apple Computer v. Microsoft Corp.*, 35 F.3d 1435, 1442, (9th Cir. Cal. 1994). [2]

---

[2]  This motion is based entirely on lack of substantial similarity under the extrinsic test, and thus access is completely irrelevant.  *See, e.g., Feist Publications, Inc., v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991).  In *Feist*, there was no doubt that "actual use" occurred because one telephone directory copied every single name in a competitor's directory, even the fake names.  However, the Supreme Court reversed the lower court's finding of liability stating "[n]ot all copying, however, is copyright infringement" because the constituent elements that defendant admittedly copied were not themselves original.  *Id.*

1    Plaintiff errs in relying on *Metcalf v. Bochco*, 294 F.3d 1069, 1075 (9th Cir.

2    2002).  At most, *Metcalf* stands for the proposition, discussed above, that a high degree

3    of access requires less evidence of *actual use/copying*.  It does not lower the degree of

4    substantial similarity of protected expression necessary to prove Plaintiff's case.

5    Moreover, Plaintiff incorrectly uses *Metcalf* to assert that the Court may rely on

6    completely unprotectable ideas in order to prove substantial similarity.  Not so.

7    *Cavalier*, 297 F.3d at 822. ("a court must filter out and disregard the non-protectable

8    elements in making its substantial similarity determination.").  Courts may compare

9    unprotectable elements to find actual use/copying, but not to show substantial similarity.

10   "The ideas contained in a copyrighted work may be freely used by all so long as the

11   copyrighted original expression is not appropriated." *Cano*, 1996 WL 371064, at *6.

12   Thus, Plaintiff spends pages articulating the wrong standard, and fails to acknowledge

13   that the Court cannot rely upon unprotected expression to find a possibility of

14   infringement.

15       **B.    Plaintiff's Claims Fail the Extrinsic Test**

16       Once Plaintiff finally starts to address the issue of substantial similarity,

17   Plaintiff's analysis immediately goes side ways; the "foremost and central" fact that

18   Plaintiff claims demonstrates similarity of the works are the titles of the two works

19   "Darci's Walk of Shame" and "Walk of Shame."  (Opp. at 14:23-15:3).  But movie

20   titles receive no copyright protection and cannot form the basis of substantial similarity

21   because they are axiomatically ***not*** protected expression. 1-2 Nimmer on Copyright §

22   2.16 ("copyright may not be claimed in a title").  After interjecting the speculation of

23   Plaintiff's "expert" (which should be completely disregarded, *see above*), Plaintiff

24   finally addresses the elements of the Ninth Circuit's extrinsic test.[3]  Plaintiff's analysis

25   _____

26   [3] Plaintiff's expert opines that physical copying occurred because both movies have chase scenes, both protagonists wear dresses, both protagonists are called names, and both protagonists have ex-

27   boyfriends.  These are exactly the kinds of abstract "random similarities" that *do not* evidence substantial similarity.  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045–46 (9th Cir.

28   1994)("And, we are equally unimpressed by Koufs compilation of random similarities scattered throughout the works[.])"

1   is again trite and misleading at best.  Before addressing each of the extrinsic elements, it

2   is important to note that Plaintiff fails to distinguish, or even address, any of the dozens

3   of cases that Lakeshore cited finding lack of substantial similarity. (Mot. at 5 n.2, 9 n.6,

4   and 17-18); *see e.g. Funky Films,* 462 F.3d at 1077-81 (no substantial similarity

5   between two works about small funeral home and the intimate lives of family members

6   who operated it); *Kouf,* 16 F.3d at 1045-46 (no substantial similarity between two

7   family comedy/adventure films about people who are accidentally shrunk); *Berkic v.*

8   *Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985) (no substantial similarity between two

9   works about exposing a criminal organization that murders healthy people and sells the

10  organs for transplants).

11              1.      *Plot/Sequence*

12          Plaintiff claims to own the copyright of any movie in which the main character

13  "gets drunk, spends a 'one nighter' with a man . . . [and] embarks on a 'walk of

14  shame.'"  But, "[e]ven assuming *arguendo* that the two works share that concept, it is

15  merely a statement of overall concept at the highest level of generality, which is not

16  protected by copyright." *Gadh v. Spiegel*, 2014 WL 1778950, at *4 (C.D. Cal. 2014).  A

17  hero's journey is not a specific protectable expression.  Indeed, Plaintiff even coins a

18  name for this *genre* of film: "road-trip-on-foot."  Losing one's identification and means

19  of transport are ideas that naturally flow from the concept of a "road-trip-on-foot" – if

20  the character had a cellphone, money, and a car, the movie would immediately end

21  because the character would go home and probably take a nap.  These *scenes-a-faire* are

22  unprotectable. *Williams v. Crichton*, 84 F.3d at 589 (holding "electrified fences,

23  automated tours, dinosaur nurseries, and uniformed workers" *inter alia* were "classic

24  scenes-a-faire that flow[] from the uncopyrightable concept of a dinosaur zoo").

25          Even where two movies execute the exact same concept (which is actually not the

26  case here), where the expression of that idea is different, courts find no substantial

27  similarity.  *Benay v. Warner Bros. Entm't, Inc*., 607 F.3d 620, 625 (9th Cir.2010)

28  ("Though the [plaintiff's] Screenplay and the [defendants'] Film share the same basic

1  plot premise, a closer inspection reveals that they tell very different stories.") (finding

2  no substantial similarity where both works involved "an American war veteran

3  travel[ing] to Japan in the 1870s to train the Imperial Army in modern Western warfare

4  in order to combat a samurai uprising."); *DuckHole Inc. v. NBC Universal Media LLC*,

5  2013 WL 5797279, at *7 (C.D. Cal. 2013) (finding no substantial similarity where both

6  works involved animal hospitals in the inner city).

7        Plaintiff's extreme abstraction in describing the works (e.g. "each female lead

8  character is a 'good girl'" trying to get to "an important event") is an attempt to hide the

9  fact that they are completely different.   "These alleged similarities do not show that the

10  plot and sequence of events in the works are substantially similar under the extrinsic test

11  because they either mischaracterize the works, or are common elements not entitled to

12  copyright protection.  *Segal*, 2011 WL 11512768, at *5 (finding no substantial similarity

13  between stories involving dead twin spirits).  The extrinsic test compares "[n]ot the

14  basic plot ideas for stories," but the "actual concrete elements" that comprise the works'

15  stories. *Berkic*, 761 F.2d at 1293–94.  A "walk of shame" (aka a "stride of pride") is in

16  the public vernacular and is an unprotectable, general concept, even less specific than a

17  "dinosaur park," "American samurai," or "inner city animal hospital."

18              2.    *Characters*

19        Plaintiff's comparison of the various characters is strained and misleading.

20  Plaintiff abstracts each character to the point of unrecognizability, combines different

21  characters together, and breaks different characters apart in an attempt to make them

22  line up.  But they don't.[4]  Plaintiff's argument regarding the main characters boils down

23  to the abstract idea that they are both blonde dress-wearing "good girls."  But

24  protagonists in comedies are almost always good people.  General character types are

25  not protectable by copyright. *Hogan v. DC Comics,* 48 F. Supp. 2d 298, 310 (S.D.N.Y.

26

27      [4] Indeed, most of Plaintiff's analysis of the characters actually just parrots its discussion of the plot

28  (Opp. at 17, focusing on clothing, remarks, lack of communication devices, and "embarrassing
events.").  These are not character traits or characters.

1  1999).  Indeed there is a term for a "good" person who is wrapped up in a series of

2  unfortunate events: the straight man.  *See Zella,* 529 F.Supp.2d at 1137 ("the generic

3  idea to have a host is not protectable").   This is a general unprotectable idea to the

4  highest degree.  *Gadh*, 2014 WL 1778950 at *5 (lead characters "who uses a mobile

5  device that embodies a technologically-advanced electronic personal assistant . . . is far

6  from the level of specificity and distinctiveness required for characters to be protected

7  by copyright.").  Moreover, it is an open question whether Darci is even a "good girl" at

8  all given her crass behavior, drinking problems, and unlikeability.[5]  Similarly, Plaintiff

9  asserts that the male leads are both "nice guys."  Surely, male leads in comedies are

10  *always* "nice guys."  In addressing the substantial similarity of characters under the

11  extrinsic test, the similarities must be more than "generic and common."  *See Rice v. Fox*

12  *Broad. Co.,* 330 F.3d 1170, 1176 (9th Cir. 2003).  Plaintiff asserts a common "comical

13  character taxi driver who keeps showing up."  This is horribly misleading.  In *Darci's,*

14  the taxi driver *is the male lead*, who is also a firefighter, handyman, and helicopter pilot

15  – and he appears throughout the entire movie.  In *WOS*, an overweight, ethnic taxi

16  driver shows up twice and both times tries to kill the main character.  Moreover, in *WOS*

17  the male lead is a bartender who spends the entire movie apart from Meghan and helps

18  her friends find her.  Plaintiff's comparison is worse than comparing monkeys and dogs.

19  *DuckHole Inc.,* 2013 WL 5797279 at *9 ("the idea for a 'resident pet' is not an original

20  copyrightable element.").[6]

21          3.     *Mood/Themes*

22

---

23  [5] Plaintiff's suggestion that the dresses that the characters wear should be considered a "character,"
   even if true, cuts the wrong way; the sexy club dress from *WOS* is completely different from the puffy,
24  "pastry" bridesmaid's dress from *Darci's*.  This grossly misleading characterization of two very
   different expressions of a dress (itself an element so common as to defy protection) illustrates all that is
25  wrong with Plaintiff's claim.

26  [6] Plaintiff also asserts a common "loud mouthed searing female best friend and confidant in a
   prominent support role, and who provides comedic relief." (Opp. at 17) But it is unclear which of
27  Meghan's three best friends in *WOS* Plaintiff is referring.  Moreover it is unclear with which of *Darci's*
   numerous sisters, cousins, mother, or elderly aunt, Plaintiff wants to draw the comparison.  This is yet
   another example of Plaintiff's attempt to manufacture generic similarity at the conceptual level – i.e.,
28  "both screenplays have a loud friend."  A greater misstatement of copyright law is hard to imagine.

As explained in the moving papers, the mood and theme of the two works is quite different: *Darci's* is a lewd, almost farcical comedy, with Darci rampaging over tropical golf courses and being rescued by a boat in exotic Hawaii while at a fancy destination wedding.  *WOS*, on the other hand, has more of a gritty urban feel, in which a straight-laced character is forced to examine her own self-image while being exposed to the underside of Los Angeles.  Plaintiff's argument of similar "themes" seems to rest entirely on its claim that both lead characters are too old to engage in a "walk of shame."  (Opp. at 15)  Otherwise, Plaintiff appears to concede that a story involving a "walk of shame" is a non-copyrightable general concept.  Plaintiff's contention is far too general to support a copyright claim.  *See, e.g.*, *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal.2010) (dismissing complaint because "themes of self-reliance and the importance of friendship and teamwork" not protectable); *Gadh,* 2014 WL 1778950, at *5 (suggested theme of "an in-depth look at the human psyche through the interaction of the characters' and a special 'phone'" not protectable.")[7]

### 4.    *Dialogue similarlities*

As a comparison of the works reveals there is virtually no dialogue overlap. Plaintiff points to a handful of *individual words* taken out of context in claiming similarity (Opp. at 15, "'whore,''prostitute,' etc.") but these individual words do not constitute substantial similarity. *Merrill v. Paramount Pictures Corp.,* 2005 WL 3955653, at *13 (C.D. Cal. Dec. 19, 2005) (finding no similarity were "in each fight scene, the female protagonist tells an aggressive male to 'stop it' [and where] the aggressive male, ... says to the female lead: 'let's go'").  Indeed, they are not even protectable. *Id.*; *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 n.14 (9th Cir. 2000); *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *5 (N.D. Cal. 2014) (dismissing copyright claim where both parties made shirts with the phrase "lettuce

---

[7] It is also just untrue as a factual matter, as there is no inherent age limit on the concept of a "walk of shame."  Indeed, Plaintiff's own screenplay states on its second page "ANGLE on VARIOUS YOUNG and <u>NOT SO YOUNG</u> . . . doing the WALK OF SHAME."  (emphasis added).

REPLY TO MOTION FOR JUDGMENT ON THE PLEADINGS

turnip the beet."). To establish substantial similarity from dialogue, plaintiff must prove "extended similarity of dialogue." *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1106 (C.D. Cal. 2011). There is none.

>    5.    *Setting*

The two works here could not take place in more different settings. Plaintiff claims the works take "place throughout a city … to arrive at an important event." (Opp. at 16:22-23). Very wrong. While *WOS* occurs entirely in urban Los Angeles, *Darci's* occurs mainly in the Hawaiian tropics, with stints in a resort hotel, a volcano, a golf course, a church, and the Pacific Ocean. To the extent that the works share a brief scene in a "tow yard" this is merely a common and random element, no more significant than saying that two characters both own a car.

Plaintiff claims that there are only "superficial" differences. In reality, the two stories follow completely different arcs, with different scenes, settings, events, dialogue. They share no substantial similarity in *protected expression*.

## IV.    THE *DESNY* CLAIM FAILS ALSO FAILS FOR LACK OF SUBSTANTIAL SIMILARLITY

Plaintiff's implied contract claim should also be dismissed if the two works are so dissimilar that any inference of use of Plaintiff's work cannot be supported. *See Klekas v. EMI Films, Inc.*, 150 Cal. App. 3d 1102, 1114 (1984) (dismissing quasi contract claim because "the screenplay of "The Deer Hunter," is, as a matter of law, substantially dissimilar to plaintiff's novel."). In any event, the dismissal of the copyright claim will effectively end this case because the court will lack jurisdiction over the state law claim if the only federal claim is dismissed.

Dated: May 5, 2015

>    **BARNES & THORNBURG LLP**
>    By*:_____ /s/ Devin Stone_____*
>    Attorneys for Defendants
>    Lakeshore Entertainment Group LLC *et al.*

REPLY TO MOTION FOR JUDGMENT ON THE PLEADINGS