David Aronoff (SBN 125694)
    DAronoff@foxrothschild.com
Jacqueline Lechtholz-Zey (SBN 279074)
    JLechtholzZey@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Telephone:  310-598-4150
FACSIMILE:  310-556-9828

Attorneys for defendants TODD GARNER
and BROKEN ROAD PRODUCTIONS,
INC._____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAME ON YOU PRODUCTIONS, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>ELIZABETH BANKS, an individual; MAX HANDELMAN, an individual, STEVEN BRILL, an individual, BRILLCO, INC., a California corporation, FOCUS WORLD, INC., a California corporation; SIDNEY KIMMEL ENTERTAINMENT, LLC, a California limited liability company; FILMDISTRICT PICTURES, LLC, a Delaware limited liability company; LAKESHORE ENTERTAINMENT CORP., a Delaware corporation; LAKESHORE ENTERTAINMENT GROUP LLC, a California limited liability company; BROKEN ROAD PRODUCTIONS, INC., a California corporation, as Doe 1; TODD GARNER, an individual, as Doe 2; and Does 3-10, inclusive,<br><br>                              Defendants. | Case No.: 2:14-cv-03512 MMM (JCx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS TODD GARNER AND BROKEN ROAD PRODUCTIONS, INC. UNDER FED. R. CIV. P. RULE 12(b)(6); and**<br><br>**JOINDER OF DEFENDANTS TODD GARNER AND BROKEN ROAD PRODUCTIONS, INC. IN MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. RULE 12(c) OF DEFENDANT LAKESHORE ENTERTAINMENT, LLC**<br><br>**[DECLARATION OF DAVID ARONOFF RE COMPLIANCE WITH LOCAL RULE 7-3 AND PROPOSED ORDER FILED CONCURRENTLY]**<br><br>Date: July 27, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 780<br><br>***Hon. Margaret M. Morrow*** |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 27, 2015, at 10:00 a.m., or as soon thereafter as the parties may be heard, or on any such earlier date and time calendared by the Court pursuant to the concurrently-filed Ex Parte Application to Specially Set Hearing Dates of Defendants Todd Garner and Broken Road Productions, Inc. (collectively, "the Garner Defendants"), before the Honorable Margaret M. Morrow, United States District Judge, in Courtroom 780 of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, the Garner Defendants will and hereby do move to dismiss each and every claim alleged in the First Amended Complaint ("FAC") of plaintiff Shame on You Productions, Inc. ("Plaintiff"), with prejudice, under Fed. R. Civ. P. Rule 12(b)(6) on the grounds that the First Claim for Copyright Infringement and the Second Claim for Breach of Implied-In-Fact Contract of the FAC, separately and collectively, fail to state claims for relief against the Garner Defendants and their pleading deficiencies cannot be cured by amendment.  Additionally, the Garner Defendants join in, and incorporate by reference, the concurrently-pending Motion for Judgment on the Pleadings under Fed. R. Civ. P. Rule 12(c) of defendant Lakeshore Entertainment, LLC ("Lakeshore"), together with its supporting exhibits, declarations and evidence, which raise complementary arguments addressing the FAC's pleading deficiencies.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 21, 2015.  *See* concurrently-filed Declaration of David Aronoff re Compliance with Local Rule 7-3 ("Aronoff Declaration").

This Motion is based upon this Notice and the attached Memorandum of Points and Authorities; the proposed Order and Aronoff Declaration submitted herewith; the concurrently-filed Ex Parte Application to Specially Set Hearing Dates of the Garner Defendants; the concurrently-pending Motion for Judgment on the Pleadings under Fed. R. Civ. P. Rule 12(c) of defendant Lakeshore; the supporting declarations, exhibits and evidence submitted by Lakeshore in support of its pending Rule 12(c)

1   motion; all pleadings and papers on file in this action; any matters of which the Court

2   may take judicial notice; and such other argument, evidence and additional matters

3   that may be presented to this Court at or before the hearing on this Motion.

4

5   Dated: May 27, 2015                    **FOX ROTHSCHILD LLP**

6

7                                 By   /s/ David Aronoff
                                       David Aronoff
8                                      Jacqueline Lechtholz-Zey
                                       Attorneys for defendants TODD GARNER
9                                      and BROKEN ROAD PRODUCTIONS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION………………………………………………………… 1

II.   THE WORKS AT ISSUE ARE PROPERLY BEFORE THE COURT…… 2

    A.    Walk of Shame………………………………………………………… 2

    B.    Darcie's………………………………………………………………... 3

III.  THE FIRST CLAIM FOR COPYRIGHT INFRINGEMENT
SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT
SUBSTANTIALLY SIMILAR IN COPYRIGHT-PROTECTED
EXPRESSION………………………………………………………... 4

    A.    The Elements of a Copyright Infringement Claim………………….. 4

    B.    WOS and Darcie's are Not Substantially Similar in Expression…… 5

        1.    The Plots and Sequences of Events are Entirely Dissimilar…. 5

        2.    The Characters are Completely Different……………………. 7

        3.    The Settings of the Works are Divergent……………………. 9

        4.    The Themes of the Works are Entirely Unalike……………… 9

        5.    The Moods of the Works are Materially Different…………… 9

        6.    Dialogue Similarities Do Not Exist in the Works…………... 10

        7.    Similarities of Pace Based on a Common Genre are
Insufficient…………………………………………………...10

        8.    Summary of Extrinsic Test Factors………………………… 10

IV.   THE SECOND CLAIM FOR BREACH OF IMPLIED CONTRACT
SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT
SUBSTANTIALLY SIMILAR IN IDEAS………………………………11

    A.    The Elements of An Idea Submission Claim………………………11

    B.    WOS and Darcie's are Not Substantially Similar in Ideas………… 12

V.    CONCLUSION………………………………………………………… 13

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A Slice of Pie Productions, LLC v. Wayans Bros. Ent't,*
   487 F. Supp. 2d 41 (D. Conn. 2007) ................................................................ 11, 12

*Benay v. Warner Bros. Ent't, Inc.,*
   607 F. 3d 620 (9th Cir. 2010) ......................................................................4, 11, 12

*Berkic v. Crichton,*
   761 F.2d 1289 (9th Cir. 1985) .............................................................................4, 8

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ......................................................................................2

*Campbell v. Walt Disney Co.,*
   718 F. Supp. 2d 1108 (N.D. Cal. 2010)................................................................2, 5

*Cavalier v. Random House, Inc.,*
   297 F.3d 815 (9th Cir. 2002) ...............................................................................4, 8

*Cory Van Rijn, Inc. v. California Raisin Advisory Bd.,*
   697 F. Supp. 1136 (E.D. Cal. 1987) ..........................................................................5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) .......................................3

*Feldman v. Twentieth Century Fox Film Corp.,*
   723 F. Supp. 2d 357 (D. Mass. 2010).........................................................................5

*Funky Films, Inc. v. Time Warner Ent't Co.,*
   462 F.3d 1072 (9th Cir. 2006) ...................................................................................4

*Hogan v. DC Comics,*
   48 F. Supp. 2d 298 (S.D.N.Y. 1999) .........................................................................8

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) ...................................................................................2

*Kouf v. Walt Disney Pictures & Television,*
   16 F.3d 1042 (9th Cir. 1994) .....................................................................................4

*Litchfield v. Spielberg*,
   736 F. 2d 1352 (9th Cir. 1984) ................................................................. 1, 4

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir.1989) ....................................................................... 10

*Olson v. National Broadcasting Co., Inc.*,
   855 F.2d 1446 (9th Cir. 1988) .............................................................. 4, 9, 10

*Phillips v. Murdock*,
   543 F. Supp. 2d 1219 (D. Hawaii 2008) ...................................................... 5

*Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ...................................................................... 4

*Wild v. NBC Universal, Inc.*,
   788 F. Supp. 2d 1083 (C.D. Cal. 2011), *aff'd* 2013 WL 750655 (9th
   Cir. Feb. 23, 2013) ......................................................................... 2, 4, 5, 8

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) .............................................. 2, 5, 8, 9

**California Cases**

*Desny v. Wilder*,
   46 Cal. 2d 715 (1956) ................................................................................ 10

*Donahue v. United Artists Corp.*,
   2 Cal. App. 3d 794 (1969) ..................................................................... 11, 12

*Faris v. Enberg*,
   97 Cal. App. 3d 309 (1979) ................................................................... 10, 11

*Henried v. Four Star Television*,
   266 Cal. App. 2d 435 (1968) ...................................................................... 11

*Hollywood Screentest of America Inc. v. NBC Universal*,
   151 Cal. App. 4th 631 (2007) ..................................................................... 11

*Klekas v. EMI Films, Inc.*,
   150 Cal. App. 3d 1102 (1984) .................................................................... 11

*Kurlan v. Columbia Broadcasting System*,
   40 Cal. 2d 799 (1953) ................................................................................ 11

*Mann v. Columbia Pictures, Inc.*,
   128 Cal. App. 3d 628 (1982) ................................................................................. 11

*Sutton v. Walt Disney Productions*,
   118 Cal. App. 2d 598 (1953) ................................................................................. 11

**Federal Statutes**

17 U.S.C. § 102(b) ........................................................................................................ 4

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................. 1, 2, 5

Fed. R. Civ. P. Rule 12(c) ........................................................................................... 1

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Todd Garner and Broken Road Productions, Inc. (collectively, "the Garner Defendants"), who were added to this case at the eleventh hour, bring this motion under Fed. R. Civ. P. Rule 12(b)(6) on the grounds that the First Amended Complaint ("FAC") of plaintiff Shame on You Productions, Inc. ("Plaintiff") fails to state any viable claims for relief against the Garner Defendants.[1] This Motion has been noticed for hearing on the Court's first open hearing date, *i.e.*, July 27, 2015; however, pursuant to their concurrently-filed Ex Parte Application to Specially Set Expedited Hearing Dates, the Garner Defendants are seeking an expedited hearing of this Motion on the Court's earliest possible date.

The First Claim for Copyright Infringement of the FAC alleges that Plaintiff's claimed copyright in the screenplay *Darci's Walk of Shame* ("*Darci's*") was infringed by the motion picture *Walk of Shame* ("*WOS*").  The Second Claim for Breach of Implied-In-Fact Contract alleges that *WOS* was produced in breach of an implied contract not to use Plaintiff's ideas from *Darci's* without paying reasonable compensation.   Neither of these counts states a viable claim for relief against the Garner Defendants under Fed. R. Civ. P. Rule 12(b)(6) because the actual works at issue, which supersede the bare allegations of the FAC, reveal that *WOS* is not "substantially similar" to *Darci's* in either (a) copyright protected expression, or (b) ideas allegedly subject to implied contract protection.  Rather, "[a]s is too often the case, [this] action [is] premised 'partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so common among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism.'"   *Litchfield v.*

---

[1] Additionally, the Garner Defendants join in and hereby incorporate by reference the concurrently-pending Motion for Judgment on the Pleadings under Fed. R. Civ. P. Rule 12(c), together with its supporting declarations and exhibits, of defendant Lakeshore Productions LLC ("Lakeshore").  [Dkt. Nos. 110 and 111.]

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

1   *Spielberg*, 736 F. 2d 1352, 1358 (9th Cir. 1984) (citation omitted).

2          In short, *WOS* and *Darci's* are entirely divergent and not "substantially similar"

3   in any material respect.  Thus, this action should be dismissed with prejudice and

4   without leave to amend as to the Garner Defendants.

5   **II.     THE WORKS AT ISSUE ARE PROPERLY BEFORE THE COURT**

6          Works that are referenced in a complaint are properly before the court, and

7   supersede the written allegations of a plaintiff's pleading, under the doctrine of

8   incorporation by reference.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005)

9   (court properly considered web pages in surrounding website under the "incorporation

10  by reference" doctrine in ruling on motion to dismiss defamation claim); *Branch v.*

11  *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (in ruling on Rule 12(b)(6) motion, court

12  properly considered contents of documents referenced in, but not attached to,

13  amended complaint).  Such documents may be considered in ruling on a Rule 12(b)(6)

14  motion without converting the motion into one for summary judgment.  *See*, *e.g.*,

15  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131, n.6 (C.D. Cal. 2007) (*citing*

16  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n. 16 (11th Cir. 1999) (dismissal

17  based on comparison of plaintiffs' treatment and defendants' television show)); *Wild*

18  *v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1090 n.1 (C.D. Cal. 2011), *aff'd* 2013

19  WL 750655 (9th Cir. Feb. 23, 2013) (dismissal based on comparison of comic book

20  and television series); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 n.3

21  (N.D. Cal. 2010) (dismissal based on comparison of screenplay and motion picture).

22         **A.     Walk of Shame**

23         *WOS* is a light-hearted comedy about Meghan Miles, a successful local news

24  anchor in Los Angeles.  She dreams of becoming a national network news anchor, but

25  believes that she lost out on an opportunity to do so.  To cheer her up, her friends

26  convince her to have a night on the town in an alluring yellow cocktail dress.  After

27  having an out-of-character one-night stand, Meghan learns that she is still in the

28  running for the network news anchor position and she need only appear for a final

news-cast to secure the big promotion.  Unfortunately, Meghan's car has been towed

and circumstances lead her into a comedic series of misadventures as she tries to get

back to her news station.  Meghan's travails take her to a freeway underpass where

she must defend herself from a gang of prostitutes, a drug den in East L.A. where she

wins over a band of friendly drug dealers, the Chabad House temple where the Jewish

worshipers mistake her for a temptress, and many other adventures across L.A.

Eventually she is reunited with her friends, wins the admiration of her network bosses,

and learns the lesson that personal growth is more important than career achievement.

*See* Declaration of Devin Stone ("Stone Decl."), Ex. A and C (screenplay and DVD of

the movie Walk of Shame, respectively) [Dkt. No. 111 and Exs. A & C].

### B.  <u>Darcie's</u>

In contrast, *Darci's* is a vulgar romantic comedy about a crass Chicago woman

who cannot hold a steady boyfriend and is forced to attend her sister's wedding in

Maui alone after she catches her boyfriend having an affair with her travel agent.  As

the maid of honor at the wedding, Darci must wear a hideous puffy pink southern

belle bridesmaids dress.  Darci is not happy about it and proceeds to drink herself silly

for two days.  After failing to sleep with a waiter after the wedding reception, Darci

must get back to her hotel while dealing with Japanese tourists, local Hawaiians, and

indigenous snakes.  After a snake bite, Darci is rescued by her dream man, Nathan, a

down-to-earth local who drives a taxi, volunteers for the local fire department, and

flies a med-evac helicopter.  Ultimately, Darci receives her happy ending when she

learns that she was too drunk to have slept with the waiter and Nathan follows her

back to Chicago for their first kiss.  *See* Stone Decl. Ex. B (Plaintiff's screenplays for

Darci's Walk of Shame) [Dkt. No. 111 and Ex. B].

///

///

///

///

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

## III. THE FIRST CLAIM FOR COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT SUBSTANTIALLY SIMILAR IN COPYRIGHT-PROTECTED EXPRESSION

### A. The Elements of a Copyright Infringement Claim

To plead copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). The second "copying" prong has two distinct elements – it requires allegations that "the infringer had access to plaintiff's copyrighted work and that *the works at issue are substantially similar in their protected elements*." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis added); *Wild*, *supra*, 788 F. Supp. 2d at 1097-98.[2]

In the Ninth Circuit, the issue of substantial similarity in actions involving literary and motion picture works is evaluated under an "extrinsic test" that considers the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of each work at issue after first "filtering out" such unprotected elements as ideas (17 U.S.C. § 102(b)) and scenes-a-faire. *Funky Films, Inc. v. Time Warner Ent't Co*., 462 F.3d 1072, 1077 (9th Cir. 2006); *Cavalier*, 297 F.3d at 826. The test can be satisfied only by similarities in "the actual concrete elements that make up the total sequence of events and relationships between the major characters" because "[n]o one can own the basic idea for a story." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). Thus, the extrinsic test is not satisfied by lists of unprotected general plot ideas,

---

[2] For purposes of this Motion only, the Garner Defendants do not address the issue of access. Regardless, "[n]o amount of proof of access will suffice to show copying if there are no similarities." *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *see also Funky Films,* 462 F.3d at 1081 (rejecting plaintiff's request for additional discovery because evidence of access would "not change the fact that the two works lack any concrete or articulable similarities"); *Cavalier*, 297 F.3d at 822-28 (even where defendants concede access, lack of substantial similarity defeats copyright infringement claim); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1043-46 (9th Cir. 1994) (same).

character types, stock elements and scenes-a-faire that are summarized at a high level of abstraction. *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (such lists "are inherently subjective and unreliable"); *accord Kouf*, 16 F.3d at 1045-46; *Olson v. National Broadcasting Co., Inc*., 855 F.2d 1446, 1450 (9th Cir. 1988); *see also Benay v. Warner Bros. Ent't, Inc*., 607 F. 3d 620 (9th Cir. 2010).

Most importantly for purposes of this Motion, because the extrinsic test "may often be decided as a matter of law" (*Funky Films*, 462 F.3d at 1076), it is well-established that a court may dismiss a plaintiff's complaint under Rule 12(b)(6) if a complaint's allegations of "substantial similarity" are belied by the works at issue – and numerous courts have dismissed copyright claims under such circumstances. *See, e.g., Zella*, 529 F. Supp. 2d at 1131 ("If after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to relief – the standard for dismissal under Rule 12(b)(6)."); *Wild*, *supra*, 788 F. Supp. 2d at 1098-99; *Campbell v. Walt Disney Co*., 718 F. Supp. 2d 1108 (N.D. Cal. 2010); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007); *Feldman v. Twentieth Century Fox Film Corp*., 723 F. Supp. 2d 357 (D. Mass. 2010); *Phillips v. Murdock*, 543 F. Supp. 2d 1219 (D. Hawaii 2008); *Cory Van Rijn, Inc. v. California Raisin Advisory Bd*., 697 F. Supp. 1136 (E.D. Cal. 1987).

**B.    WOS and Darcie's are Not Substantially Similar in Expression**

**1.    The Plots and Sequences of Events are Entirely Dissimilar**

*WOS* begins with the life of its protagonist, Meghan Miles, in a state of professional and personal disarray.  Meghan is distraught that she has missed out on becoming the next network news anchor for her TV channel and her fiancé has recently left her.  Meghan's two girlfriends decide to cheer her up with a night on the town.  Meghan relents but, because she owns no appropriate "club wear," she puts on her friend's sexy canary yellow dress.  At a dance club, after downing several drinks and dancing, Meghan steps out onto the fire escape.  However, her heel becomes

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

snagged and she is rescued by the club's bartender, Gordon.  Meghan spends the night with Gordon in his apartment, but then receives an unexpected message that she has become the frontrunner for the network news anchor job.  The only condition is that Meghan must return to her news studio and conduct one final news cast to the satisfaction of the network executives.  Meghan leaves Gordon's apartment without her wallet or cell phone, and discovers that her car has been towed.  While desperately trying to return to her television studio across town in time for her news cast, Meghan stumbles into a series of misadventures with an off-duty cab driver, police officers, drug dealers, a bus driver and his passengers, orthodox Jewish members of Chabad House, and others – most of whom mistake her for a prostitute because of her sexy dress.  Eventually, Meghan reunites with her two girlfriends and Gordon, who have been trying to find her, at the impound lot where her car was towed.  Meghan makes it to the newsroom on time after getting a lift by helicopter from her station's traffic reporter.  When the main story is about her own misadventures journeying across Los Angles, Meghan is unable to deliver the newscast as written.  Instead she rails against everyone who assumed she was a prostitute because of her dress.  For her candor, the network executives offer Meghan her own undercover reality TV show.  Meghan says that she will think about the job offer and walks off romantically with Gordon.

In contrast, *Darci's* begins in Chicago with an ugly pink bridesmaid's dress that the protagonist, Darci Palter, must wear at her sister's upcoming wedding in Hawaii.  Things quickly go awry when Darci walks in on her boyfriend having sex with her travel agent.  Darci storms out of the apartment and leaves for Hawaii alone.  On the plane, Darci gets drunk, crudely describes her sexual encounters to fellow passengers, and then vomits all over the airplane bathroom.  On arriving in Maui, Darci meets Nathan – a handsome jack-of-all-trades, who drives a cab and has several other jobs as well.  At the wedding reception, while wearing her horrible pink bridesmaid dress, Darci drunkenly makes out with a young waiter, Justin, and goes home with him.  When Darci wakes up the next day, Justin offers his car to her so that she can return to

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

her hotel, but Darci finds that the car has been towed.  Darci walks onto a golf course where a group of Japanese business men refuse to provide help.  She steals a golf cart and drives it to the tow yard to get Justin's car.  The attendant explains that everyone is on Hawaiian time, so the car cannot be released.  However, he invites Darci to his local church, where Darci's dress receives many stares.  Leaving the church, Darcie is bitten by a snake.  However, Nathan, who is also a volunteer firefighter, sucks the snake poison out of Darci's foot.  Nathan is also a helicopter pilot and he starts to fly Darci back to her hotel, but he first must rescue Darci's parents from an active volcano.  Darci cannot face the embarrassment of seeing her parents so she demands that Nathan drop her off in the rainforest.  Darci hitches a ride on a native's outrigger back to her hotel in time for the wedding brunch.  After a pep-talk from her 101 year-old aunt, Darci attends the brunch and tries to explain where she has been.  However, Justin reveals that Darci slept over at his place – although they did not have sex.  Darci, mortified, leaves the brunch to fly back to Chicago.  Nathan follows Darci to Chicago and agrees to leave Hawaii – so Darci lands the man of her dreams.

## 2.     The Characters are Completely Different

The characters in *WOS* and *Darci's* are entirely different.  Meghan Miles of *WOS* is a steady, professional, and somewhat repressed career woman – who initially defines herself solely by job success.  However, over the course of the movie, she cuts loose, puts on a sexy dress, triumphs over a series of misadventures, and comes to learn that it is more important to find happiness than to sacrifice personal fulfillment for career success.  In *Darci's*, on the other hand, the protagonist Darci is crass, vulgar, and is driven only by her need to find a successful relationship with a man. She swears like a longshoreman, and never mentions her job or career.

The male lead characters are also dissimilar.  Gordon, in *WOS,* is a bartender and amateur writer who lives in a loft in downtown Los Angeles.  He does not have a car and does not appear to be very successful or career-oriented.  The fact that he is a "nice guy" is just a general plot staple, as it would make no sense to make the love

interest a "bad" guy in a light-hearted comedy.  In contrast to Gordon, *Darci's* Nathan is a rugged jack of all trades who drives a cab, volunteers for the fire department, and flies an emergency helicopter.  He moved to Hawaii after his wife died.  Nathan is Darci's dream man and provides her main goal.  In contrast, in *WOS*, Meghan is much more independent and career-oriented, so she is far less needy of Gordon.

The remaining characters also share no legitimate similarities:

- There are no network executives in *Darci's*.  Plaintiff attempts to draw a parallel to the helicopter pilot "Chopper Steve" from *WOS* with Nathan, but this comparison falls flat; Chopper Steve – a traffic reporter – provides only comic relief whereas Nathan (the romantic lead) uses the helicopter to impress Darci.
- Meghan's friends, Rose and Denise, have no parallels in *Darci's*.
- The two police officers who chase Meghan throughout *WOS* have no parallels in *Darci's*.
- The young waiter Justin in *Darci's* has no parallel in *WOS*.
- The kind drug dealers, the suburban teenager, the evil cab driver, and the Jewish Chabad worshipers have no parallels in *Darci's*.
- Darci's family (including her sisters, parents, in-laws, and 101 year-old aunt Bertha) have no parallel in *WOS*.
- The Japanese golfers, the native Hawaiians, and Darci's dimwitted ex-boyfriend have no parallels in *WOS*.

Moreover, to the very limited extent that generalized traits are shared by any of the characters, such similarities do not support a claim because general character types are not protectable by copyright.  *See*, *e.g.*, *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999) (character types do not merit copyright protection); *Zella*, 529 F. Supp. 2d at 1134; *Cavalier*, 297 F.3d at 824 (character which naturally flow from a "basic plot idea" are "scenes-a-faire"); *Berkic*, 761 F.2d at 1293 (same).  Indeed, "[t]he almost complete lack of parallel characters strongly suggests, without any

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

further analysis, that the works lack substantial similarity." *Wild,* 788 F. Supp. 2d at 1109 (*citing Benay*, 607 F.3d at 626 and *Olson*, 855 F.2d at 1451–53).

### 3. The Settings of the Works are Divergent

The settings of *WOS* and *Darci's* could not be less alike.  *WOS* is set across highly urban areas of Los Angeles and many of its surrounding neighborhoods, with scenes taking place all over the city – including Hollywood, Brentwood, Downtown, Mid-Town, MacArthur Park, and the Santa Monica Freeway.  *Darci's* on the other hand, is set in the romantic jungle island of Maui, with a few brief scenes in Chicago.

### 4. The Themes of the Works are Entirely Unalike

The themes of *WOS* and *Darci's* are 180 degrees different.  In *WOS*, the humor largely stems from Meghan's transformation into someone who, through a series of misadventures, has become open to the happenstance and spontaneity of life without regard to job advancement.  As a result, the basic theme of *WOS* is that one should be open to life, without solely being consumed by career considerations.  In the context of *WOS*, a work featuring an independent career-minded female protagonist such as Meghan, these elements create a strong theme of gender equality.  In contrast, because *Darci's* focuses on the vulgar neediness of Darci and her desperate wish to land the man of her dreams, the theme of *Darci's* is the misogynistic notion that a woman cannot be happy unless she catches an idealized man.  Thus, *Darci's* utilizes a dated sexist theme that is entirely out-of-step with the theme of *WOS*.

### 5. *The Moods of the Works are Materially Different*

*WOS* is a modern comedy of transformation in which the female protagonist is self-determining and learns to improve her life from within; in contrast, *Darci's* is an old-fashioned but vulgar and rather sexist romantic comedy in which the female protagonist can only find fulfillment through a man.  Thus, while both works are comedies, their moods are very different:  In *WOS*, the ultimate mood carries the heft of lessons about personal growth; in *Darci's* the comedy solely stems from Darci's attainment of her desperate wish to be fulfilled by a man, so the mood is crassly

romantic and merely reinforces sexist stereotypes with no lessons of personal growth. Moreover, the law is clear that any purported "similarities" in mood based merely on the fact that both works are broadly in the "comedy" genre are insufficient to satisfy the extrinsic test. *Zella*, 529 F. Supp. 2d at 1136; *Olson*, 855 F.2d at 1451.

### 6. *Dialogue Similarities Do Not Exist in the Works*

To establish a claim of substantial similarity based on dialogue, a plaintiff must establish "extended similarity of dialogue." *Olson*, 855 F.2d at 1450.  This is because copyright protection does not subsist in ordinary words, short phrases, or "phrases or expressions conveying an idea typically expressed in a limited number of stereotyped fashions." *Narell v. Freeman*, 872 F.2d 907, 911–12 (9th Cir.1989).  Here, Plaintiff points to no "extended similarity of dialogue" an d merely alleges similarities of a few random words and short phrases that are insufficient under the extrinsic test.

### 7. *Similarities of Pace Based on a Common Genre are Insufficient*

It is difficult to compare the pacing of a fully-fledged movie to Plaintiff's unproduced screenplay.  However, even if it is assumed that both works feature the brisk pace of many modern comedies, similarities of pace that are common to a genre are insufficient to satisfy the extrinsic test. *Olson*, 855 F.2d at 1451.

### 8. *Summary of Extrinsic Test Factors*

In sum, the "extrinsic test" factors used to determine substantial similarity in the Ninth Circuit reveal that *WOS* and *Darsi's* are entirely distinct works.  They feature plots, sequences of events, characters, themes, moods, settings, dialogue and pace that are all highly divergent, to tell stories that are different in every material respect.  As a result, Plaintiff's First Claim for Copyright Infringement should be dismissed.

///

///

///

///

///

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

## IV.   THE SECOND CLAIM FOR BREACH OF IMPLIED CONTRACT SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT SUBSTANTIALLY SIMILAR IN IDEAS

### A.   The Elements of An Idea Submission Claim

"Generally speaking, *ideas are as free as the air* . . . .  The general rule of law is that the noblest of human productions – knowledge, truths ascertained, conceptions and ideas – become, after voluntary communication to others, free as the air to common use." *Desny v. Wilder*, 46 Cal. 2d 715, 731-32 (1956) (emphasis added). Consequently, the law has developed that an idea is generally protected only if there exists an implied-in-fact contract between a seller who offers to sell an otherwise unprotectible idea, and a willing buyer who agrees to pay for use of the idea under conditions that he or she is specifically made aware of before the idea's disclosure. *Desny*, 46 Cal. 2d at 737-739; *Faris v. Enberg*, 97 Cal. App. 3d 309, 318-320 (1979).

To prevail on an idea submission claim based on the breach of such an implied-in-fact contract, the plaintiff bears the burden of proof to establish:  (1) plaintiff submitted his or her ideas to defendant; (2) before submitting his or her ideas, plaintiff clearly conditioned the disclosure on defendant's agreement to pay for those ideas if used; (3) defendant knew or should have known about the condition before plaintiff disclosed the idea; (4) defendant voluntarily accepted the idea on plaintiff's terms; (5) defendant actually used plaintiff's idea; (6) plaintiff's idea had value.  *Mann v. Columbia Pictures, Inc*., 128 Cal. App. 3d 628, 647 n.6 (1982); *Faris*, 97 Cal. App. 3d at 318; *Klekas v. EMI Films, Inc*., 150 Cal. App. 3d 1102, 1114 (1984).

The essential element of "use" – element (5), above – has two separate prongs, both of which must be established by the plaintiff.  First, the plaintiff must prove "derivation" – that his or her idea was actually utilized in the defendant's creative process.  *See Hollywood Screentest of America Inc. v. NBC Universal*, 151 Cal. App. 4th 631, 648 (2007).  Second, the plaintiff must prove that the defendant's finished work is "substantially similar" to the ideas that the plaintiff allegedly submitted.  *See*,

GARNER DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

*e.g.*, *Benay*, 607 F. 3d at 631 (holding "[t]he requirement of substantial similarity for implied-in-fact contract claims 'aligns this field with copyright infringement .... [and] also means that copying less than substantial material is non-actionable.' …'Courts have specifically rejected the contention that liability could be imposed on defendants on the basis of less than substantial similarities.'") (citations omitted); *Kurlan v. Columbia Broadcasting System*, 40 Cal. 2d 799, 809 (1953) (holding the works must share "substantial similarity" to create a jury issue).

The comparison of the works at issue to determine whether "substantial similarity" exists can be conducted by the court as a matter of law.  *See Klekas*, 150 Cal. App. 3d at 1114 (affirming summary judgment); *see also Kurlan*, 40 Cal. 2d at 809 (holding that on demurrer, where the works are before the court, "the court may determine whether there is substantial similarity"); *Henried v. Four Star Television*, 266 Cal. App. 2d 435, 436-37 (1968) (affirming order sustaining demurrer); *Sutton v. Walt Disney Productions*, 118 Cal. App. 2d 598, 603-04 (1953) (same); *A Slice of Pie Prods., LLC v. Wayans Bros. Ent't*, 487 F. Supp. 2d 41, 52 (D. Conn. 2007) (applying California law in granting summary judgment).  To state a viable claim for relief, the works must show that the defendant used "a substantial portion of plaintiffs' material" rather than a "mere trivial or minor use…."  *Donahue v. United Artists Corp*., 2 Cal. App. 3d 794, 807 n.5 (1969).

## B.   WOS and Darcie's are Not Substantially Similar in Ideas

Here, as a matter of law, Plaintiff cannot satisfy the second prong of "actual use" because *WOS* and *Darci's* share no "*substantial* similarity" of ideas.  *Benay*, 607 F. 3d at 631 (emphasis added).  As is discussed at length above (*see* Sections III.B.1. through 8., *supra*) , *Darci's* is a vulgar romantic comedy in which a woman mistakenly thinks she has slept with a waiter at her sister's wedding in Maui, has difficulties getting back to her hotel, and is rescued by the man of her dreams.  In contrast, *WOS* is a comedy of personal growth, in which a woman happily enters into a relationship with a bartender/writer, has trouble getting to her TV studio across town

in Los Angeles in time to secure the promotion she wants, but ultimately realizes that career advancement is not as important as the rewards of personal happiness.  Thus, any purported "similarities" of the ideas delineated in the two works are only "trivial or minor" at most, and thus fail to state a claim.  *Donahue*, 2 Cal. App.2d at 807 n.5.

Of course, at the very highest levels of abstraction (if one ignores all of the distinguishing features of the works), *WOS* and *Darci's* can be said to contain a few parallels:  For example, they both feature female protagonists who have travel problems after spending the night with a new-found man, they each have male love interests, they both travel in helicopters, and they visit car impound lots.  However, Plaintiff does not allege that he submitted such abstractions to the Garner Defendants. Instead, the FAC alleges that he submitted his screenplay.  FAC ¶¶ 21& 38.a.; *see* Stone Decl. Ex. B (Plaintiff's screenplays for Darci's Walk of Shame) [Dkt. No. 111 and Ex. B].  In the context of the screenplay that actually embodies Plaintiff's ideas for *Darci's* – which concerns a woman who mistakenly thinks she has slept with a young waiter at her sister's wedding in Maui – the isolated "similarities" with *WOS* that can be found only at the highest levels of abstraction are minor and trivial rather than "substantial" because the protagonists, their specific adventures, and the plots, stories, themes, moods and other elements of the works are so fundamentally different.  *See* Sections III.B.1. through 8., *supra*.

Thus, the Second Claim fails to state a claim for relief and should be dismissed. *See*, *e.g.*, *A Slice of Pie Prods.*, 487 F. Supp. 2d at 52 (holding that "given the … lack of substantial similarity between the works with respect to … their respective plots, elements, and themes, which assessment is used to infer use, plaintiff has insufficient evidence of use by defendants of plaintiff's screenplay and/or the ideas therein.").

## V.   CONCLUSION

In short, *WOS* and *Darci's* share no ***substantial*** similarities of either expression or ideas.  As a result, Plaintiff cannot satisfy the extrinsic test necessary to plead a claim for copyright infringement.  Likewise, Plaintiff cannot allege a viable claim that

its ideas were used in breach of an implied-in-fact contract.  Thus, both the First and Second Claims of the FAC should be dismissed without leave to amend.

Dated: May 27, 2015                              **FOX ROTHSCHILD LLP**


                                        By   /s/ David Aronoff
                                             David Aronoff
                                             Jacqueline Lechtholz-Zey
                                             Attorneys for defendants TODD GARNER
                                             and BROKEN ROAD PRODUCTIONS, INC.