1
2
3
4
5

**BARNES & THORNBURG LLP**
Stephen R. Mick, Bar No. 131569
stephen.mick@btlaw.com
Devin J. Stone, Bar No. 260326
devin.stone@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, California  90067
Telephone:   (310) 284-3880
Facsimile:    (310) 284-3894

6
7
8
9
10

Attorneys for Defendants
LAKESHORE ENTERTAINMENT
GROUP LLC, LAKESHORE
ENTERTAINMENT CORP.,
FILMDISTRICT PICTURES, LLC, FOCUS
FEATURES, LLC, SIDNEY KIMMEL
ENTERTAINMENT, LLC, BRILLCO,
INC., STEVEN BRILL, ELIZABETH
BANKS, and MAX HANDELMAN

11
12
13

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

14
15

SHAME ON YOU PRODUCTIONS,
INC.,

16

Plaintiff,

17

v.

18
19
20
21
22
23
24
25

ELIZABETH BANKS, an individual;
MAX HANDELMAN, an individual,
STEVEN BRILL, an individual,
BRILLCO, INC., a California
corporation, FOCUS WORLD, INC., a
California corporation; SIDNEY
KIMMEL ENTERTAINMENT, LLC,
a California limited liability company;
FILMDISTRICT PICTURES, LLC, a
Delaware limited liability company;
LAKESHORE ENTERTAINMENT
CORP., a Delaware corporation;
LAKESHORE ENTERTAINMENT
GROUP LLC, a California limited
liability company; and Does 1-10,
inclusive,

26

Defendants.

27
28

Case No.: 2:14-cv-03512 MMM (JCx)

**LAKESHORE ENTERTAINMENT
GROUP LLC, LAKESHORE
ENTERTAINMENT CORP.,
FILMDISTRICT PICTURES, LLC,
FOCUS FEATURES, LLC, SIDNEY
KIMMEL ENTERTAINMENT, LLC,
BRILLCO, INC., STEVEN BRILL,
ELIZABETH BANKS, AND MAX
HANDELMAN'S NOTICE OF
MOTION AND MOTION FOR FEES
AND COSTS**

Date:   December 7, 2015
Time:   10:00 a.m.
Place:  Courtroom 780

*[Assigned to Hon. Margaret M. Morrow]*

1

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................. 1

II. PLAINTIFF'S UNCONSCIONABLE CONDUCT JUSTIFIES AN
    AWARD OF ATTORNEYS' FEES ................................................. 3

    A.  Plaintiff's Allegations ......................................................... 3

    B.  Plaintiff Actively and Intentionally Hid Its Screenplay From
        Defendants for Eight Months ............................................. 4

        1.  Plaintiff Refused to Turn over Its Screenplay at the outset of
            the case ...................................................................... 4

        2.  Plaintiff Refused to Turn Over the Screenplay at the Rule 26f
            Conference or with the Initial Disclosures ................. 4

        3.  Court Orders disclosure at Initial Scheduling Conference ......... 5

        4.  Defendants Continued to Request Plaintiff's Screenplay To
            Facilitate A Rule 12 Motion ...................................... 5

        5.  The Court Grant's Defendants' Ex Parte Application ................ 5

    C.  Despite Actively Refusing to Provide the Screenplay on which the
        Claim was Based, Plaintiff Moved Forward With Voluminous
        Discovery and Engaged in Improper Gamesmanship .......................... 6

        1.  Plaintiff Propounds Extensive Discovery Just Before the
            Holidays ..................................................................... 6

        2.  Plaintiff Filed Eight Motions to Compel Without Meeting and
            Conferring .................................................................. 7

        3.  Plaintiff Used The Discovery Process to Needlessly Increase
            the Expenses of the Litigation ...................................... 7

    D.  Defendant's Long-Delayed Pleadings Motion Resulted in a Finding
        that Plaintiff's Claims Lacked Any Basis ........................... 8

    E.  Plaintiff is Solely Responsible for Every Discovery-Related Cost ....... 9

i

III.   DEFENDANTS ARE ENTITLED TO FEES UNDER THE COPYRIGHT
ACT ....................................................................................................10

    A.   The Copyright Act Encourages An Award of Fees .............................10

    B.   Courts are especially willing to provide fees where the Defendants
are successful as a matter of law on a Rule 12 motion .......................11

    C.   Defendants are the Prevailing Parties and Are Entitled to Recover
Their Reasonable Attorneys' Fees Under 17 U.S.C. § 505 .................11

    D.   The *Fogerty* Factors Weigh Heavily in favor of An Award of Fees ...12

        1.   Degree of Success .....................................................................12

        2.   Frivolousness and Objective Reasonableness ..........................13

        3.   Motivation and Need for Compensation and Deterrence .........14

        4.   The Purposes of the Copyright Act............................................15

IV.   THE COURT SHOULD AWARD FEES JOINTLY AGAINST
PLAINTIFF'S COUNSEL, CHARLES COATE UNDER 28 U.S.C. § 192716

V.   DEFENDANTS' ATTORNEYS' FEES AND COSTS ARE
REASONABLE.......................................................................................18

VI.   CONCLUSION.......................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*
303 F. Supp. 2d356 (S.D.N.Y. 2003) ............................................................15

*Batjac Products Inc, v. Goodtimes Home Video Corp*
44 U.S.P.Q. 2d 1788 (CD. Cal. 1997)..........................................................13

*Bridgeport Music, Inc, v. WB Music Corp.*
520 F.3d 588 (6th Cir.2008).......................................................................10

*Camacho v. Bridgeport Finance, Inc.*
523 F.3d 973 (9th Cir. 2008) ..............................................................17, 18

*Columbia Pictures Television, Inc. v. Krypton Broadcast of Birmingham, Inc.*259
F.3d 1186 (9th Cir. 2001) ...................................................................10, 14

*Fantasy, Inc. v. Fogerty*
94 F.3d 553 (9th Cir. 1996)...................................................1, 10, 11, 12, 15

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (1994)........................................................................10, 11, 15

*Gates v. Deukmejian*
987 F.2d 1392 (9th Cir. 1992).................................................................18, 19

*Goldberg v. Cameron*, No. C-05-03534 RMW, 2011 WL 3515899 (N.D. Cal.
Aug. 11, 2011)..........................................................................................20

*Hall v. Cole*
412 U.S. 1 (1973)......................................................................................14

*Hensley v. Eckerhart*
461 U.S. 424 (1983)..................................................................................18

*Historical Research v. Cabral*
80 F.3d 377 (9th Cir. 1996).......................................................................10

iii

*HyperQuest, Inc. v. N'Site Solutions, Inc.*
  632 F.3d 377 (7th Cir. 2011) ...................................................................10

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*
  739 F.3d 446 (9th Cir. 2014) ....................................................................3

*Invessys, Inc. v. McGraw-Hill Companies, Ltd.*
  369 F.3d 16 (lst Cir. 2004) .....................................................................13

*Lahiri v.  Universal Music & Video Distribution Corp.*
  606 F.3d 1216 (9th Cir. 2010) ................................................................16

*MGIC Indemnity Corp vs. Moore*
  952 F.2d 1120 (9th Cir. 1991) ................................................................16

*Maljack Products, Inc. v. Goodtimes Homes Video Corp.*
  81 F.3d 881 (9th Cir. 1996).............................................10, 13, 14, 21

*Mattel, Inc. v. Walking Mountain Products*
  353 F.3d 792 (9th Cir. 2003) ..................................................................15

*Matthew Bender & Co. v.  West Publishing Co.*
  240 F.3d 116 (2d Cir. 2001) ...................................................................13

*MiTek Holdings, Inc. v. Arce Engineering Co.*
  198 F.3d 840 (11th Cir. 1999)(citation omitted) ...................................16

*Rosciszewski v. Arete Associates, Inc.*
  1 F.3d 225 (4th Cir. 1993).................................................................13, 14

*Three Boys Music Corp. v. Bolton*
  212 F.3d 477 (9th Cir. 2000)...................................................................14

*Yankee Candle Co. v. Bridgewater Candle Co.*
  140 F. Supp. 2d 111 (D. Mass. 2001) ....................................................13

## STATE CASES

*DuckHole Inc. v. NBC Universal Media LLC*
  2013 WL 5797204 (C.D. Cal. Oct. 25, 2013)..........................................20

*Gashtili v. JB Carter Properties II, LLC*, No. 2:12-CV-00815-MMD-PAL, 2014
    WL 300178 (D. Nev. Jan. 24, 2014) .................................................................. 12

*Gilbert v. New Line Productions, Inc.*
    *CV 09-02231-RGK* 2010 WL 5790688 (CD Cal. Dec. 6, 2010) ......11, 14, 16, 20

*Kesey, LLC v. Francis*
    No. 06-CV-540-AC, 2010 WL 4235857 (D. Or. July 27, 2010) ......................... 12

*Redwall Live Corp. v. ESG Sec., Inc.*, No. 1:13-CV-01849-SEB-DML, 2015 WL
    791450 (S.D. Ind. Feb. 24, 2015) ...................................................................... 12

*Yue v. Storage Technology Corp.*
    *Number C 07-0585 JW*, 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008) .............. 13

**FEDERAL STATUTES**

The United States Copyright Act, 17 U.S.C. § 505 ..................................1, 3, 10, 11

28 U.S.C. § 1927 ...........................................................................................1, 3, 16

MOTION FOR FEES

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 7, 2015, at 10:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Margaret M. Morrow, United States District Judge, in Courtroom 780 of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, defendants Lakeshore Entertainment Group LLC ("Lakeshore"), Lakeshore Entertainment Corp., Film District Pictures, LLC, Focus Features, LLC, Sidney Kimmel Entertainment, LLC, Brillco, Inc., Steven Brill, Elizabeth Banks, and Max Handelman (collectively "Defendants") will and hereby do move the Court for an order awarding attorneys' fees incurred by Defendants in connection with claims for copyright infringement asserted against them by Plaintiff Shame On You Productions, Inc., ("Shame" or "Plaintiff"). The Motion is made pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927. Final judgment was entered in this matter on August 14, 2015. (See docket entry for CM/ECF ["Dkt."] Nos. 172 and 173.) Defendants request the above fees to be awarded jointly and severally against Plaintiff Shame on You Productions, Inc., and Plaintiff's attorney of record, Charles M. Coate.

The Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Stephen R. Mick and Devin J. Stone, the concurrently filed bill of costs, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

//
//
//
//
//

The Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 20, 2015.

Dated:  August 28, 2015          **BARNES & THORNBURG LLP**


By: _____ */s/ Devin Stone* _____
                     STEPHEN R. MICK
                     DEVIN STONE
                     Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff's Complaint alleged that everyone remotely associated with the movie *Walk of Shame* – including the husband of the lead actress, whose only offense was to attend the wrong lunch – was guilty of copyright infringement with respect to Plaintiff's decade-old script.  These allegations were baseless.  As this Court found, the two works shared no legally relevant similarities.  This Court was able to make that determination "on the pleadings" – a judgment that should have occurred in the Fall of 2014, but which was delayed for almost a year because Plaintiff knowingly and intentionally hid its screenplay in a bad faith effort to extort settlement money from Defendants.  This wanton act of misconduct should not go unnoticed – or unpunished – by the Court.

What should have been a quick and simple 12(b) decision became, instead, a full blown litigation through the end of discovery and well into pretrial preparation because Plaintiff did everything in its power to prevent a substantive decision in this case.  Plaintiff's extensive misfeasance dramatically increased the costs and extent of the litigation for no purpose other than to harass Defendants.

The United States Copyright Act, 17 U.S.C. § 505, provides that the Court may award Defendants' reasonable attorneys' fees as the prevailing parties in this action.  As this Court determined in its August 14th ruling, Plaintiff's claims against Defendants were baseless and Defendants prevailed.  The Copyright Act does not require Plaintiffs' claims to have been groundless or to have been brought in bad faith to warrant an award of fees to Defendants.  *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557-60 (9th Cir. 1996).  That this action was, in fact, utterly baseless and pursued in bad faith simply underscores the need for an award of attorneys' fees to vindicate the purposes of the Act.

Plaintiff's behavior fully justifies an award.  In sum:

- Immediately before filing suit, Plaintiff's putative author, Dan Rosen, created a shell company – "Shame on You Productions" – for the sole

purpose of bringing this claim in an attempt to insulate himself from liability for a fee and costs award under the Copyright Act.   Plaintiff's intentional and conscious understanding of his potential liability for fees is a brazen indication of how clearly this claim lacked merit

- After sending an initial demand letter to Lakeshore, Plaintiff's counsel refused to provide Lakeshore with a copy of the script on which the claim was based, despite written requests from Lakeshore's in-house counsel.

- Plaintiff knowingly declined to attach the screenplay to its Complaint, and then refused to provide the screenplay to defense counsel at the outset of the litigation.

- In contravention of its obligations under Rule 26, Plaintiff refused to turn over the screenplay on which the claim was based at the initial meeting of counsel.

- Despite being ordered to turn over the screenplay by the Court at the initial scheduling order, Plaintiff continued to refuse to do so, and admitted that its refusal was for the explicit purpose of preventing Defendants from filing a Rule 12 motion.

- In the weeks prior to the Court's second order that it turn over the screenplay, Plaintiff attempted to bury Defendants in thousands of pages of discovery requests, and then further thousands of pages of discovery motions, in an effort to extort a settlement before Defendants had even the *opportunity* to evaluate the merits of the claim.

- Plaintiff then amended its complaint (at the 11th hour) to assert claims against two additional parties (the "Garner Defendants") *who also faced no liability for copyright infringement,* simply to create new issues to avoid a determination on the merits.

The claims in this case should have been adjudicated in the Fall of 2014, prior to discovery, based on the pleadings in the case.  Instead, solely because of Plaintiff's bad faith conduct, Defendants were forced to expend significant and completely unnecessary time in defending this suit.

"A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc*., 739 F.3d 446, 449 (9th Cir. 2014).  Defendants were completely successful in defending against Plaintiff's meritless copyright claims.  It is entirely consistent with the purposes of the Copyright Act to protect rightful expression by strongly discouraging invalid claims.  For those reasons, Defendants respectfully request that this Court award attorneys' fees pursuant to 17 U.S.C. §505 and 28 U.S.C. § 1927 in the amount of $ 360,616.00 against, Plaintiff Shame on You, and its attorney, Mr. Coate.

## II.   PLAINTIFF'S UNCONSCIONABLE CONDUCT JUSTIFIES AN AWARD OF ATTORNEYS' FEES

### A.   Plaintiff's Allegations

In 2006, Dan Rosen ("Rosen"), allegedly wrote a screenplay for a movie about a fanciful rom-com throughout Hawaii entitled *Darci's Walk of Shame* ("*Darci's*").  Rosen's script went nowhere – like 100,000 scripts in Los Angeles, it was rejected by anyone who read it.  In 2014, however, after learning that Lakeshore was producing a movie with a similar <u>name</u>, Rosen created a shell company and assigned his rights in the screenplay to plaintiff Shame on You Productions, Inc. – for the sole purpose of shielding his liability for fees and costs in connection with this suit.[1]  Plaintiff then brought suit against everyone even remotely associated with movie – the producers,

---

[1] This stratagem employed by Rosen and Coate effectively forces Defendants to pursue a separate lawsuit in order to recover any costs, in which Defendants fully intend to demonstrate that Plaintiff Shame on You Productions was an asset-less shell company created for the sole purpose of insulating Rosen from the natural and expected results of his bad faith litigation against Defendants.

distributors, authors, writer, director and actress – and, for good measure, the actress' husband, who had the misfortune of going to a lunch meeting many years ago [Dkt. 1 "Compl.", ¶¶ 4-12.].

## B. **Plaintiff Actively and Intentionally Hid Its Screenplay From Defendants for Eight Months**

### 1. *Plaintiff Refused to Turn over Its Screenplay at the Outset of the Case*

At the outset of the case, Lakeshore reached out to Plaintiff to request a copy of Plaintiff's screenplay so that Lakeshore might meaningfully assess Plaintiff's claims. Plaintiff refused to provide the screenplay. Declaration of Devin Stone ("Stone Decl.") ¶ 2, Ex. 1. (Because Lakeshore's motion picture was, of course, publicly released, it was always fully available to Plaintiff. The Complaint admits that Plaintiff had access to the Lakeshore movie.)

When Plaintiff filed its Complaint, it attached an extensive (if inaccurate and one-sided) comparison between Plaintiff's screenplay and Defendants' movie. The matrix itself comprised of over seven pages citations to Plaintiff's screenplay (complete with page references) yet, Plaintiff intentionally withheld the *actual* screenplay and did not attach it to the Complaint. *See* Compl.

### 2. *Plaintiff Refused to Turn Over the Screenplay at the Rule 26f Conference or with the Initial Disclosures*

On August 14, 2014, all counsel in this action participated in a Rule 26(f) conference. Defense counsel renewed the prior demands for Plaintiff to turn over a copy of the Rosen screenplay. Indeed, Defense counsel suggested that the parties could streamline proceedings by an early exchange of every screenplay. Plaintiff's counsel, Charles Coate, refused to provide the script. Stone Decl. ¶ 3.

Weeks later, Plaintiff refused again to provide the script with Plaintiff's screenplay with Plaintiff's initial disclosures. Stone Decl. ¶¶ 5-8.

4

### 3. *Court Orders Disclosure at Initial Scheduling Conference*

On September 29, 2014, the Court held a scheduling conference in which the Court ordered Plaintiff to produce its screenplay.  There was an explicit discussion of the issue on the record, and Court explicitly told Plaintiff to hand over the screenplay. Plaintiff, again, refused to comply.   [Dkt. 34-1]; Stone Decl. ¶ 4.

### 4. *Defendants Continued to Request Plaintiff's Screenplay To Facilitate A Rule 12 Motion*

On October 28, 2014, defense counsel called and emailed Plaintiff's counsel to discuss Plaintiff's failure to provide its screenplay.  Plaintiff's counsel responded by refusing to provide a copy of Plaintiff's screenplay and denying that the Court had ordered Plaintiff to provide a copy of its screenplay.  Defendants responded several times explaining that Plaintiff could not proceed with a copyright claim in good faith without providing the work that was allegedly infringed.  Stone Decl. ¶¶ 7-10

Several days later, Defendants reached out again, this time, with a copy of the transcript of the Court's scheduling conference.  Defense counsel provided the exact language the Court used in ordering the parties to turnover their relevant screenplays. Unfortunately, even the Court's own words were not persuasive.  Defendants informed Plaintiff that if it did not turn over the screenplay, it would force Defendants to move for an *ex parte* order forcing Plaintiff to comply with the Court's prior directive ordering Plaintiff to turn over its screenplay.  *Id.*

Because Plaintiff refused to comply with the Court's directives and failed to uphold its Rule 26 obligations, Defendants were required to file an ex parte application for (another) order compelling Plaintiff to turn over its screenplay on November 6, 2014.  [Dkt. 33]

### 5. *The Court Grants Defendants' Ex Parte Application*

On December 12, 2014 – nearly eight months after Plaintiff filed suit – the Court granted Defendant's ex parte application.   The Court ordered Plaintiff to turn over its

MOTION FOR FEES

screenplay by December 17, 2014.  The Court stated that "Defendants have provided their screenplay; it is time for Shame on You to do the same."  The Court noted that it was well within its power to "hold Shame on You in civil contempt to force compliance with its disclosure order."  The Court characterized Plaintiff's contentions in opposition as "not well taken," "lacking in merit," and "troubling."  [Dkt. 42]  Plaintiff finally complied just before the Christmas holiday at the end of 2014.  Defendants responded that they "anticipate[d] filing a motion for judgment on the pleadings" as soon as possible.  [Dkt. 58].

## C.   **Despite Actively Refusing to Provide the Screenplay on which the Claim was Based, Plaintiff Moved Forward With Voluminous Discovery and Engaged in Improper Gamesmanship**

### 1.   *Plaintiff Propounds Extensive Discovery Just Before the Holidays*

While Plaintiff hid its screenplay to prevent Defendants from filing the obvious motion to dismiss or motion for judgment on the pleadings, Plaintiff attempted to leverage Defendants into a settlement by propounding nine sets of requests for production of documents, nine sets of interrogatories, four sets of requests for admissions, and three deposition notices.  Plaintiff's requests for production *alone* included 300 nealry separate requests for production of documents over the holiday season.  Stone Decl. ¶ 11.

In response, Defendants asked for a *one week* extension given that the Thanksgiving holiday fell in the middle of the responses.   Plaintiff refused to grant any extension.  Stone Decl. ¶ 12.[2]  Defendants also explained that Plaintiff's discovery was premature, given that Plaintiff had refused to provide the screenplay on which the

---

[2] On the same day, then-counsel for Elizabeth Banks and Max Handelman also asked for an extension.  Plaintiff refused to grant that extension as well.  Stone Decl. ¶ 13.

MOTION FOR FEES

claims were based, and thus that Defendants had no basis on which to evaluate the claims or their defenses.[3]

Shortly thereafter, on December 3, 2014, Plaintiff sent eight letters regarding Plaintiff's written discovery requests.  Stone Decl. ¶ 14.  Defendants responded by explaining that they were more than willing to meet & confer with Plaintiff but were unavailable for the December-dates Plaintiff suggested due the holiday schedule, Mr. Mick's two back-to-back December trials, and Mr. Stone's cross-country move.  Stone Decl. ¶ 15. Defense counsel also explained that they would need time to come up to speed in representing the new defendants, Ms. Banks and Mr. Handelman – who had just agreed to be represented by the same counsel as Lakeshore.  *Id.*  Defense counsel requested only that the meet & confer conference occur in the first week of January. Plaintiff responded by refusing to make any accommodation and demanding full concessions from Defendants.  Stone Decl. ¶ 15-19.

### 2.   *Plaintiff Filed Eight Motions to Compel Without Meeting and Conferring*

Without allowing even the smallest of scheduling accommodation or discussion, Plaintiff immediately filed eight motions to compel with no meet & confer, in a transparent attempt to prejudice Defendants.  Each of the motions was roughly 150 pages long – a total of more than 1000 pages.   [Dkt. 43-50]

### 3.   *Plaintiff Used The Discovery Process to Needlessly Increase the Expenses of the Litigation*

Despite a direct order from Magistrate Judge Chooljian to stop such conduct, and engage in a good faith meet and confer process, Plaintiff's counsel was not amenable to

---

[3] Defendants repeatedly raised this issue at virtually every discovery conference, all correspondence related to discovery, and with every written discovery response. *See e.g.* Dkt. 33, 34, 40, 41, 41-1, 58, and 64-75.  Plaintiff cannot claim that it was not warned that its behavior was multiplying the cost of the litigation and that its discovery was premature and baseless.

MOTION FOR FEES

conducting a real conference or seriously discussing most of the issues presented by Plaintiff's eight motions to compel. [Dkt. 54]; Stone Decl. ¶ 33-39.

On January 7, 2015, Defendants attempted to conduct the Conference ordered by the Court with Plaintiff. Plaintiff was only willing to discuss two requests out of the 271 requests at issue. *Id.* Thus began a lengthy process in which Plaintiff sought to use the discovery process as a blunt instrument to bludgeon Defendants into a settlement of the action before the Court could adjudicate the merits of the claim.[4]

### D. Defendant's Long-Delayed Pleadings Motion Resulted in a Finding that Plaintiff's Claims Lacked Any Basis

When Plaintiff was finally forced to hand over the script on which the claim was based, Defendants were able to file a motion for judgment on the pleadings in early 2015. Unfortunately, the Court's calendar prevented that motion from being heard until many months later. The result was that a determination that could have, and should have, been made the outset of the case, was made in August 2015. But not for any lack of effort on the part of Defendants.

In its order of August 14, 2015, this Court dismissed Plaintiff's copyright claims with prejudice stating, inter alia, in its 65 page order that "many of the purported similarities Shame on You identifies flow directly from the basic premise of a walk of shame," "these *scenes-à-faire* are not protectable," "the events . . . are entirely different," "it is evident that the settings of the two works are substantially different, not similar," "the court cannot find the pace of the two works substantially similar," "to the extent the characters are sufficiently developed, they share no articulable similarities,"

---

[4] Plaintiff's counsel's obstinacy in the discovery conferences was transparent and well-documented. A classic and representative sample: "MR. COATE: If you think we're going through request by request individually, that's not going to happen." (Dkt. 59-9 "Tr." at 11:3-5); "MR. STONE: If you want to -- to narrow it down, then I think we might be able to respond. MR. COATE: We're not willing to -- we're not willing to amend our requests." (Tr. 33:2-5)

and "the two works tell decidedly different stories, and lack substantial similarity as a matter of law." The Court also held that Plaintiff had "mischaracterized" substantial aspects of the two works. [Dkt 172]

Accordingly, the Court entered judgment in Defendants' favor on August, 14, 2015. [Dkt. 173].

### E.     Plaintiff is Solely Responsible for Every Discovery-Related Cost

The common thread running through Plaintiff's entire case, was to withhold the basis of its case while simultaneously pursuing needlessly aggressive discovery. Defendants were extraordinarily prejudiced by being forced to litigate without the benefit of Plaintiff's work, while Plaintiff possessed Defendants' work (a publically released movie) from the very start. The Court explicitly commanded Plaintiff to provide its screenplay to put the parties on equal footing back in September 2014. But Plaintiff disregarded the command. Plaintiff also dissembled in stating that it would produce its script with its initial disclosures. It took another order following Defendants' Ex Parte Application for an Order Directing Plaintiff to Produce its Screenplay before Plaintiff would comply. Plaintiff admitted to the Court that it did so to prevent Defendants from filing a motion for judgment on the pleadings. [Dkt. 42, p. 6] ("Shame on You's suggestion that it is withholding evidence to prevent the filing of a motion is troubling.") Plaintiff's gamesmanship resulted in nearly a year of needless litigation and discovery, for which Plaintiff bears the ultimate responsibility.[5]

The notion that a copyright plaintiff can sue nine defendants for infringement of a work, and refuse to provide the work that is allegedly infringed for the sole purpose of running up the defense costs and preventing the court from examining the work defies every bound of professional or responsible behavior.   It cannot be condoned.

---

[5] Plaintiff also took full advantage of asymmetry of one plaintiff against nine – and eventually eleven – defendants. Plaintiff propounded nearly identical discovery and filed nearly identical motions against all defendants causing Defendants to expend nine times the effort to respond and contest.

## III. **DEFENDANTS ARE ENTITLED TO FEES UNDER THE COPYRIGHT ACT**

### A. **The Copyright Act Encourages An Award of Fees**

Section 505 of the Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "The grant of fees and costs is the rule rather than the exception and [they] should be awarded routinely." *Bridgeport Music, Inc, v. WB Music Corp*., 520 F.3d 588, 592 (6th Cir.2008) (emphasis added); *see also Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 (1994) (*Fogerty I*) (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 436-37 (1983)); *see Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996) (*Fogerty II*) (stating that "an award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of district courts, and that such discretion is not cabined by a requirement of culpability on the part of the losing party"). A showing of exceptional circumstances is not a prerequisite to an award of fees under the Copyright Act. *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996); *see also Fogerty II*, 94 F.3d at 560 ("[A] finding of bad faith, frivolous or vexatious conduct is no longer required; and awarding attorney's fees to a prevailing defendant is within the sound discretion of the district court informed by the policies of the Copyright Act"). On the contrary, "[d]efendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees." *HyperQuest, Inc. v. N'Site Solutions, Inc*., 632 F.3d 377, 387 (7th Cir. 2011) (emphasis added).

"In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Prods., Inc. v. Goodtimes Homes Video*

*Corp.*, 81 F.3d 881, 889 (9th Cir. 1996); *see Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (same); *see also Fogerty I*, 510 U.S. at 534 n. 19. The Ninth Circuit has identified as additional considerations the "purposes" of the Copyright Act, and whether the chilling effect of attorneys' fees may be too great or impose an inequitable burden on the party against whom the award is made. *Fogerty II*, 94 F.3d at 559-60.

**B.    Courts are especially willing to provide fees where the Defendants are successful as a matter of law on a Rule 12 motion**

Courts routinely award attorneys' fees to successful Defendants who are able to dismiss unfounded copyright claims based on the pleadings.  *See DuckHole Inc. v. NBCUniversal Media LLC,* 2:12-cv-10077-BRO-CW (C.D. Cal., Oct 25, 2013) (Dkt. 37) (awarding $65,781 in attorneys' fees and $878.11 in costs after successful dismissal of copyright claim); *Gilbert v. New Line Productions, Inc.*, CV 09-02231-RGK, 2010 WL 5790688, at *3 (CD Cal. Dec. 6, 2010) (awarding $801,130 in attorneys' fees where plaintiff "was only able to point to some generic similarities between the two works that were not protected under copyright law) *aff'd in part, vacated in part, remanded*, 490 F. App'x 34 (9th Cir.2012); *Scott v. Meyer,* 2:09-cv-06076-ODW-RZx, 2010 WL 2569286 (C.D. Cal. June 21, 2010) (granting $4,797.57 in costs and $83,878.65 in attorney's fees following successful motion to dismiss); *Jazan Wild v. NBC Universal*, 2:10-cv-03615-GAF-AJW, (C.D. Cal. July 18. 2011) (granting award of $113,041.85 in attorneys' fees and costs following successful Rule 12 motion). [6]

**C.    Defendants are the Prevailing Parties and Are Entitled to Recover Their Reasonable Attorneys' Fees Under 17 U.S.C. § 505**

"Prevailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty I*, 510 U.S. at 534.  This Court dismissed Plaintiff's sole copyright claim with prejudice.

---

[6] In dismissing Plaintiff's copyright claims, this Court relied on many of these same cases as factual and legal analogies.

Defendants thus achieved complete victory over the relevant claims for the purposes of the Copyright act and are therefore entitled to fees under Section 505.

Plaintiff has intimated that because its state-law claims were remanded to state court, there is no prevailing party. Plaintiff could not be more wrong – Defendants are inarguably the prevailing parties. *Gashtili v. JB Carter Props. II, LLC*, No. 2:12-CV-00815-MMD-PAL, 2014 WL 300178, at *2 (D. Nev. Jan. 24, 2014) ("the Court rejects Plaintiffs' first argument that IDS is not the prevailing party under Nevada law because Plaintiffs' state law claims were dismissed. The pendent state law claims are of no consequence to this motion because the Court declined to exercise jurisdiction over those claims and those claims were not litigated before this Court. What was litigated was the copyright claim, on which IDS prevailed. Moreover, this case would have never come before this Court were it not for the disputed copyright. Thus, in identifying the prevailing party, the Court is not concerned with the dismissed state law claims."); *Kesey, LLC v. Francis*, No. 06-CV-540-AC, 2010 WL 4235857, at *4 (D. Or. July 27, 2010) report and recommendation adopted, No. 06-CV-540-AC, 2010 WL 4257496 (D. Or. Oct. 20, 2010) ("a party who prevails on a claim under the Act, but not on related state law claims, is the prevailing party for the purposes of attorney's fees under Section 505."); *Redwall Live Corp. v. ESG Sec., Inc.*, No. 1:13-CV-01849-SEB-DML, 2015 WL 791450, at *4 (S.D. Ind. Feb. 24, 2015) ("We shall allow Redwall to walk away with its state-law claims intact, but we dismiss its copyright claim with prejudice. ESG is the "prevailing party" on the copyright claim, and is thus presumptively entitled to attorneys' fees for the litigation of that claim under 17 U.S.C. § 505"). What is important, here, is that Defendants were 100% successful over Plaintiff's *copyright* claims.

### D.    The *Fogerty* Factors Weigh Heavily in favor of An Award of Fees

   1.    *Degree of Success*

Under the first factor, the Court weighs the party's degree of success in a lawsuit.

See *Fogerty II*, 94 F.3d at 559. This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense. *See id.* Here, Defendants prevailed on the merits, granted Defendants MJOP, and dismissed Plaintiff's copyright claims without leave to amend after finding no substantial similarity. [Dkt. 172 at 65] ("The court's conclusion that the two works are not substantially similar applies equally to the remaining defendants . . . the court grants defendants' motion for judgment on the pleadings on Shame on You's copyright claim.")

Accordingly, this factor heavily favors of granting Defendants' request for attorneys' fees. *See Yue v. Storage Tech. Corp.*, No. C 07-0585 JW, 2008 WL 4185835, at *4 (N.D. Cal. Sept. 5, 2008) (holding that the first factor weighs in favor of granting fees because Defendants "obtained a dismissal of the entire action with prejudice," and Defendants "established that Plaintiff could not assert new copyrights against Defendants. . . .").

## 2. *Frivolousness and Objective Reasonableness*

While frivolousness is not required, the court may consider whether the positions advanced by a party were frivolous in determining whether to award fees (*see Moljack Prods.*, 81 F.3d at 889; *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993)); *Yankee Candle Co. v. Bridgewater Candle Co*., 140 F. Supp. 2d 111, 115 (D. Mass. 2001) ("To determine objective unreasonableness, a court must examine the factual and legal assertions advanced by the non-prevailing party, and determine whether they were reasonable. An unreasonable claim need not be frivolous to be compensable"), *abrogated on other grounds in Invessys, Inc. v. McGraw-Hill Companies, Ltd*, 369 F.3d 16 (lst Cir. 2004); *Batjac Prods. Inc, v. Goodtimes Home Video Corp*, 44 U.S.P.Q. 2d 1788, 1790 (CD. Cal. 1997) ("Claims need not be frivolous, however, in order to merit an award of fees to the prevailing party. . . . Where claims are objectively unreasonable, frivolousness is not required. . . . Allegations that are unsupported by facts or law are objectively unreasonable" (citations omitted). Whether

MOTION FOR FEES

a party's claim is objectively reasonable, however, is a factor accorded substantial weight in determining whether to award attorneys' fees. *See Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001); *accord Columbia Pictures Television*, 259 F.3d at 1197; *Maljack Prods.*, 81 F.3d at 889.

As discussed above, Plaintiff's claims were unreasonable and frivolous from the start. The court found few, if any, similarities between the works and none of it was protectable. This Court had no trouble, once the two works were put before it, to analyze the works and find no substantial similarity. This Court also easily rejected numerous other meritless assertions from Plaintiff like attempting to convert the Rule 12 motions into motions for summary judgment, proffering completely improper extrinsic evidence and expert testimony, claiming the Rule 12 motions were moot because of a barely amended complaint, and objecting to the timing of the reply.[7]

3.    *Motivation and Need for Compensation and Deterrence*

Bad faith in bringing a claim, while not necessary to the imposition of fees, is a factor to be taken into consideration in evaluating whether a fee award is appropriate. *Rosciszewski*, 1 F.3d at 234 ("While a finding of willful infringement or bad faith on the part of the opposing party properly may be considered by the district court, the presence or absence of such motivation is not necessarily dispositive"). "Courts generally hold that a finding of bad faith can be based on 'not only the actions that led to [the] lawsuit, but also [] the conduct of the litigation.'" *Gilbert*, 2010 WL 5790688, at *3 (*quoting Hall v. Cole*, 412 U.S. 1, 15 (1973)).

---

[7] Plaintiff's scorched earth tactics were completely unjustifiable given that the motion picture *Walk of Shame* was a box office failure. *See* http://www.imdb.com/title/tt2463288/ (reporting that Walk of Shame grossed $39,751 at the box office). By the time of the Rule 26 conference in August 2014, it was clear that the film would generate no net profit. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (copyright claimant was only entitled to recover the portion of defendant's profit that was derived from the use of the plaintiff's work, not all of the total profit).

As discussed above, because the potential recovery was so small, it is likely that Plaintiff believed that driving up litigation costs could result in a higher nuisance-value settlement.  That was likely Plaintiff's motivation in withholding its screenplay for most of the litigation: prevent Defendants from filing a dispositive motion and drive up settlement costs.  As such, Plaintiff should not be rewarded for its bad faith tactics.  An award for defendants would "advance considerations of compensation and deterrence." *Wild*, No. CV 10-3615 at *4 (order granting motion for attorneys' fees) (quoting *Fogerty II*, 94 F.3d at 558 n. 2).  Plaintiff's tactics likely double or tripled the amount of fees Defendants incurred to defend the case.  Indeed, as shown by the concurrently filed Declaration of Stephen R. Mick ("Mick Decl."), the fees incurred in the last half of this case are ***six times*** larger than the fees incurred in the first half.  Mick Decl. Ex. 1.  In *Scott*, the Court was persuaded to award attorneys' fees after "[d]efendants were forced to defend against plaintiff's claims even after pointing out the fatal flaws from which her lawsuit suffered." 2010 WL 2569286 at *3.  Attorney's fees are fully justified under the circumstances in order to deter Plaintiff – and its attorneys – from filing frivolous lawsuits against innocent film makers, producers, actors (and actor's husbands) in the future and especially to prevent them from delaying swift resolution of those frivolous cases.

### 4. *The Purposes of the Copyright Act*

"Under the Copyright Act, the question is whether a successful defense of the action furthered the purposes of the Act, not whether a fee award would do so." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003). The primary objective of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty I*, 510 U.S. at 524. "This objective is promoted by discouraging infringement as well as by the successful defense of copyright infringement actions." *Arclightz and Films Pvt. Ltd. v. Video*

MOTION FOR FEES

*Palace Inc*., 303 F. Supp. 2d356, 363-64 (S.D.N.Y. 2003) (*citing Fogerty I*, 510 U.S. at 526).

Defendants successfully defended against an objectively unreasonable lawsuit. Through their successful defense, Defendants promoted the Copyright Act's objective of ensuring "'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *MiTek Holdings, Inc. v. Arce Eng'g Co*., 198 F.3d 840, 842-43 (11th Cir. 1999)(citation omitted).

If fees are awarded in this case, Plaintiff (and Plaintiff's counsel) will be discouraged from filing suits lacking a factual basis against the producers, creators, and actors (and actor's family) in movies that have not infringed its copyrights. The requested amount of fees is not so great, however, that it will chill Plaintiff from attempting to enforce its rights under the Copyright Act as appropriate in the future. Furthermore, an award of attorney's fees is also proper so that Defendants may be compensated for a portion of the unnecessary fees and costs they were needlessly forced to incur in their defense of this matter. *See Gilbert*, 2010 WL 5790688 at *3 (awarding $801,130 in attorneys' fees where plaintiff "was only able to point to some generic similarities between the two works that were not protected under copyright law).

## IV. THE COURT SHOULD AWARD FEES JOINTLY AGAINST PLAINTIFF'S COUNSEL, CHARLES COATE, UNDER 28 U.S.C. § 1927

Attorneys' fees should also be jointly awarded against Plaintiff's counsel, Charles Coate. Section 1927 furnishes a wholly separate and independent basis upon which fees may be awarded. "Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Under Section 1927, recovery of "excess" costs, expenses and attorney's fees may be claimed against the attorney who multiplies the proceedings

upon a finding of subjective bad faith, i.e., knowingly or recklessly raising a frivolous argument. *MGIC Indem. Corp vs. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("The district court's bad faith finding was based on the cumulative effect of his litigation conduct for more than five years. Clear and convincing evidence supports the district court's conclusion that Kornarens acted recklessly and in bad faith and his conduct caused unreasonably protracted and costly litigation over a frivolous copyright claim").

Mr. Coate recklessly pushed forward expensive litigation for months while at the same time defying this Court's clear orders and preventing Defendants from filing a Rule 12 motion to dismiss the case. Plaintiff obviously possessed both its screenplay and Defendants' movie from the very beginning of the case. But surely Plaintiff's *counsel* deserves a share of the blame in refusing to turn over a copy of Plaintiff's screenplay to Defendants for eight months. As a result, Plaintiff's counsel prevented Defendants from filing their MJOP until February 2015.

Plaintiff's counsel's refusal to produce the Rosen screenplay at the Rule 26 conference was especially disturbing, and clear evidence of bad faith. The Rule 26 disclosure obligations were instituted for the specific purpose of requiring counsel to produce the core documents that form the basis of the claims, in order to avoid gamesmanship and prevent needless discovery costs.[8]  If Rule 26 means *anything*, it <u>must</u> mean that a copyright plaintiff has to turn over the work that it alleges has been infringed. Mr. Coate's intentional and knowing refusal to do so was the single most egregious Rule 26 violation that defense counsel has ever seen. If he had turned over

---

[8] *See* Rule 26 Advisory Committee Notes, 1993 Amendment ("Through the addition of paragraphs (1)–(4), this subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. … A major purpose of the revision is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives.")

MOTION FOR FEES

the Rosen screenplay at the outset of the case, Defendants would have filed a Rule 12 motion in *the summer of 2014* and the costs in this case would have been a small fraction of what eventually occurred.  Mr. Coate's actions were the very essence of needlessly multiplying the proceedings and vexatious litigation.

Moreover, as this Court has decided, Plaintiff's copyright infringement claims were objectively unreasonable both in fact and in law.  Yet, Mr. Coate actively prevented a swift adjudication on the merits.  He wanted to keep this case going past the pleading stage and he got what he wanted.  Now it is time for Mr. Coate to face the consequences of his actions.

## V.  **DEFENDANTS' ATTORNEYS' FEES AND COSTS ARE REASONABLE**

The Ninth Circuit has specified that "[d]espite a district court's discretion in determining the amount of a fee award, it must calculate awards for attorneys' fees using the lodestar method." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 982 (9th Cir. 2008) (citation and internal quotation marks omitted).  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id*. at 978. (citation omitted).  Thus, the amount of attorneys' fees "must be [based] on the facts of each case." *Id*. (*citing Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).  "While in most cases the lodestar figure is presumptively reasonable, in rare cases a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Actors Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho,* 523 F.3d. at 982 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992)). "[A] strong presumption exists that the lodestar . . . represents a reasonable fee. . . *G&G Fire Sprinklers, Inc. v. Bradshaw*, 136 F.3d 587, 600 (9th Cir. 1998), vacated on other grounds, 526 U.S. 1061 (1998).

The amount of fees sought covers approximately 800 hours of total time, which was expended from the initial review of the complaint in mid-2014 through the preparation of this motion for attorneys' fees in August of 2015.[9]  Both the total amount of time and the amount of fees sought are eminently reasonable for a multi-claim action litigated through the end of discovery.   See Mick Decl. ¶ 4.

The reasonable amounts incurred in defending this suit include:

- Investigating Plaintiff's claims
- Researching the legal defenses
- Attending numerous court hearings
- Extensive motion practice regarding Plaintiff's failure to provide its screenplay
- Extensive motion practice regarding Plaintiff's premature and improper discovery
- In depth analyzes of the two works at issue in the litigation and comparisons between the two.
- Responding to broad discovery including hundreds of written requests and several party depositions
- Drafting and litigating a motion for judgment on the pleadings
- Drafting a motion for summary judgment (which would have been filed if the Court denied any portion of the motion for judgment on the pleadings)

At the end of the day, the docket in this case contains hundreds (173) entries and contains at least six thousand pages of filings.  The entries and the fees incurred are *heavily* back-weighted after December 2014 when Plaintiff finally provided its screenplay:

---

[9] These numbers include the amount of time spent up to the filing of this motion (as explained in the Mick Decl.), the time spent by Ms. Banks and Mr. Handelman's prior attorneys (see Mick Decl. ¶¶ 15, 19), and the time spent and anticipated to be spent on this motion (Stone Decl. ¶ 42).

MOTION FOR FEES



The lion's share of such fees could have been easily avoided with an early production of Plaintiff's screenplay – if only Plaintiff had upheld its obligations.

A complete record of the time and fees for which reimbursement is sought is attached as Exhibit 1 to the Mick Declaration. These records are taken directly from the contemporaneously prepared time and billing records of the Barnes and Thornburg firm. Mick Decl., ¶¶ 4.  The hours spent by counsel, as reflected in this application, were reasonably and necessarily spent in defense of the action. *Id*., ¶¶ 3-5.

The billing rates for which Defendants seek reimbursement in this motion for the proceeding are as follows:

| | |
|---|---|
| Stephen R. Mick [Partner] | $595 / hr |
| Devin Stone [Sr. Associate] | $395 / hr |
| Stacey Foster [Associate] | $320 / hr |
| Jennifer Wylie [Sr. Paralegal] | $270 / hr |
| Carla Montiel [Sr. Paralegal] | $270 / hr |
| James Cho [Paralegal] | $200 / hr |

The rates requested in this application, cited above, are reasonable in view of the experience of counsel and the quality of the work performed; the rates are also consistent with prevailing hourly rates for private attorneys of similar skill and experience in the Los Angeles legal community.  See Mick Decl., ¶¶ 7-9.  See also *DuckHole Inc. v. NBC Universal Media LLC*, CV-12-10077-BRO, 2013 WL 5797204

(C.D. Cal. Oct. 25, 2013) (finding hourly rates of $580 per hour reasonable and awarding attorneys' fees); *Goldberg v. Cameron*, No. C-05-03534 RMW, 2011 WL 3515899, at *7 (N.D. Cal. Aug. 11, 2011) (finding the hourly rates charged by a partner at Greenberg Glusker in Los Angeles for $550 an hour to be reasonable in 2009 for a copyright infringement case). A detailed description of counsel's experience and qualifications is set forth in the Mick Decl. ¶¶ 10-14. The quality of the work and the results obtained are, of course, a matter of record before the Court. As detailed further in the Mick Declaration, the Ninth Circuit and this district has found counsel's rates to be reasonable on multiple occasions. Mick Decl. ¶ 10.

Multiplying the hours reasonably expended times the market rates produces a lodestar total amount of $360,616.00. The total amount of attorneys' fees fall within the range approved in copyright cases dismissed at a similar posture. *See e.g., Gilbert,* 2010 WL 5790688 at *3 (awarding $801,130 in attorneys' fees where plaintiff "was only able to point to some generic similarities between the two works that were not protected under copyright law); *Wild v. NBC Universal*, 2:10-cv-03615-GAF-AJW at *6 (awarding Defendants $112,590.80 in attorneys' fees after dismissing the copyright infringement case because the works lacked in substantial similarity); *Maljack Prods.,* 81 F.3d at 890 (affirming district court's award of $162,175.04 after granting summary judgment).[10]

Defendants concurrently submit a bill of costs in accordance with local rules seeking $3,825.15 for the reasonable and allowable costs incurred in this case.

\\

\\

\\

---

[10] The only reason the parties in *Wild* incurred fewer fees is that they were able to have their Rule 12 motions heard and decided before discovery began; here, Plaintiff prevented any adjudication before discovery. Adjusted for twenty years of inflation, *Maljack* is right in line with the amount sought here.

## VI.   **CONCLUSION**

For the foregoing reasons, Defendants request that the Court award its attorneys' fees in the amount of $360,616.00 in favor of Defendants and against Plaintiff Shame on You Productions, Inc. and Plaintiff's attorney of record – Charles Coate.

Dated:  August 28, 2015                    **BARNES & THORNBURG LLP**

By: _____/s/ Devin Stone_____
                                  STEPHEN R. MICK
                                  DEVIN STONE
                          Attorneys for Defendants
                    Lakeshore Entertainment Group LLC *et al.*

DCDS01 211996v3

MOTION FOR FEES

# Notices

## 2:14-cv-03512-MMM-JC Shame On You Productions Inc et al v. Elizabeth Banks et al CASE CLOSED on 08/14/2015

ACCO,(JCx),AO121,CLOSED,DISCOVERY,MANADR,PROTORD

## UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Stone, Devin on 8/28/2015 at 8:17 PM PDT and filed on 8/28/2015

| | |
|---|---|
| **Case Name:** | Shame On You Productions Inc et al v. Elizabeth Banks et al |
| **Case Number:** | 2:14-cv-03512-MMM-JC |
| **Filer:** | Lakeshore Entertainment Corp. |
| **WARNING: CASE CLOSED on 08/14/2015** | |
| **Document Number:** | 174 |

**Docket Text:**
**NOTICE OF MOTION AND MOTION FOR FEES AND COSTS filed by DEFENDANTS Lakeshore Entertainment Corp.. *LAKESHORE ENTERTAIMENT GROUP, LLC, LAKESHORE ENTERTAINMENT CORP., FILMDISTRICT PICTURES, LLC, FOCUS FEATURES, LLC, SIDNEY KIMMEL ENTERTAINMENT, INC. STEVEN BRILL, ELIZABETH BANKS AND MAX HANDELMAN NOTICE OF MOTION AND MOTION FOR FEES AND COSTS* (Stone, Devin)**

**2:14-cv-03512-MMM-JC Notice has been electronically mailed to:**

Charles Michael Coate      ccoate@abramscoate.com, tjohnson@abramscoate.com

David Aronoff      daronoff@foxrothschild.com, cliu@foxrothschild.com

Devin Stone      devin.stone@btlaw.com, ajohnson@btlaw.com

Stephen R Mick      smick@btlaw.com, Docket-LA@btlaw.com,

rshushanyan@btlaw.com

Theresa E Johnson     tjohnson@abramscoate.com

**2:14-cv-03512-MMM-JC Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\MOTION FOR FEES.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=8/28/2015] [FileNumber=20066276-0
] [41f5fab58d6afb64b32185ff06aa4e8af422ba75ad28cb68c7010ff4ba766e45a72
91d95be3c5a90f00501fd7e1ff556f5ac24c96bd27f2fe2326e31f7011728]]