UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT

AUG 15, 2016

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

Shame on You Productions, Inc.,

Plaintiff,

v.

Elizabeth Banks, an individual; Max
Handelman, an individual; Steven
Brill, an individual; Brillco, Inc., a
California corporation; Focus World, a
Division of Focus Features, LLC, a
California corporation; Sidney
Kimmell Entertainment, LLC, a
California limited liability company;
Filmdistrict Pictures, LLC, a
Delaware limited liability company;
Lakeshore Entertainment Group LLC,
a California limited liability company;
Broken Road Productions, Inc., a
California corporation, as Doe 1; Todd
Garner, an individual, as Doe 2; and
Does 3-10, inclusive,

Defendants.

CV 14-03512-MMM ( JCx)

ORDER (1) GRANTING IN PART
DEFENDANTS' MOTION FOR ATTORNEYS'
FEES AND COSTS AND (2) GRANTING IN
PART DEFENDANTS' MOTION FOR
SANCTIONS

Before the Court is Defendants Elizabeth Banks, Max Handelman, Steven
Brill, Billco, Inc., Focus World, Sidney Kimmell Entertainment, LLC, Filmdistrict
Pictures, LLC, and Lakeshore Entertainment Group LLC's "Motion for Fees and
Costs" ("Motion"), filed on August 31, 2015.  The Motion came before the
Honorable Margaret M. Morrow for oral argument on December 7, 2015, after
which the matter was taken under submission.  On the same day, following the
hearing, the Court entered a Minute Order stating that the Motion was granted in
part and denied in part and that "[a] final order will issue."[1]

_____

[1] Minutes of Defendants' Motion for Fees and Costs, Docket No. 200 (Dec. 7,
2015).

Judge Morrow retired from the bench in January 2016.  Defendants filed a "Request for Entry of Final Order on Fees and Costs" on July 29, 2016.[2]  Plaintiff filed a response thereto on August 1, 2016.[3]

Pursuant to the Court's procedures, as Judge Morrow has retired from the bench, the Motion now comes before Chief Judge Virginia A. Phillips for a ruling. Having considered the papers filed in support of, and in opposition to, the Motion, the Court rules as follows.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Lawsuit

On May 7, 2014, Shame on You Productions, Inc. ("Plaintiff") filed an action against Defendants Elizabeth Banks, Max Handelman, Steven Brill, Brillco, Inc., Focus World, Inc., Sidney Kimmel Entertainment, LLC, Filmdistrict Pictures, LLC, Lakeshore Entertainment Corp., Lakeshore Entertainment Group LLC (collectively "Defendants"), and various fictitious parties.[4]  The complaint alleged claims for copyright infringement and breach of implied-in-fact contract.  Plaintiff alleged that it was the owner, by way of assignment from the author, Dan Rosen, of an original motion picture screenplay titled <u>Darci's Walk of Shame</u>.[5]  It alleged that Rosen had registered an early version of the screenplay with the Writers Guild of America, East ("WGA") on November 17, 2006, and had received registration number 145107.[6] Plaintiff asserted that Rosen's assignment of rights to it, as well as the relevant version of the screenplay, had also been registered with the United States Copyright Office.[7]

---

[2] Defendants' Request for Entry of Final Order on Fees and Costs, Docket No. 209 ( July 29, 2016).

[3] Response by Plaintiff re: Defendants' Ex Parte Request re: Final Order, Docket No. 210 (Aug. 1, 2016).

[4] Complaint, Docket No. 1 (May 7, 2014).

[5] FAC, ¶ 16.

[6] <u>Id.</u>

[7] <u>Id.</u>

Plaintiff contended that, in late 2013 or early 2014, it learned of a <u>Deadline Hollywood</u> article stating that Banks was starring in a motion picture titled <u>Walk of Shame</u>.[8]  The article reported that Steven Brill had written the script for the film, that Focus World was the distributor, and that the film was scheduled for release on April 25, 2014.[9]

Plaintiff asserted that <u>Walk of Shame</u> borrowed heavily from Rosen's screenplay.[10]  Specifically, it alleged that the plot, story, characters, sequence of events, themes, and incidents portrayed in the two works were, in many respects, "virtually identical."[11]  It alleged that the substantially similar, if not strikingly similar, elements, coupled with Defendants' direct access to Rosen's screenplay through Banks and Handelman, left "little doubt that numerous substantive original elements of [<u>Walk of Shame</u> had been] compiled from the [<u>Darci's Walk of Shame</u>] [s]creenplay."[12]  Plaintiff asserted claims for copyright infringement under 17 U.S.C. § 101, <u>et. seq.</u>, and breach of implied-in-fact contract.[13]

On February 25, 2015, Defendants filed a motion for judgment on the pleadings.[14]  On April 27, 2015, after the Court granted Plaintiff's ex parte application for an order granting it leave to amend its complaint,[15] Plaintiff filed a first amended complaint alleging the same claims as the original complaint but adding Broken Road Productions, Inc. ("Broken Road") and Todd Garner as Defendants.[16]  The same day, it filed opposition to Defendants' motion for judgment

---

[8] <u>Id.</u>, ¶ 22.

[9] <u>Id.</u>

[10] <u>Id.</u>, ¶ 24.

[11] <u>Id.</u>

[12] <u>Id.</u>

[13] <u>See id.</u>, ¶¶ 26-36 (copyright infringement), ¶¶ 37-49 (breach of contract).

[14]  Motion for Judgment on the Pleadings, Docket No. 110 (Feb. 25, 2015); <u>see also</u> Reply in Support of Motion for Judgment on the Pleadings, Docket No. 139 (May 4, 2015).

[15] Order Granting Ex Parte Application for Order Granting Leave to Amend, Docket No.  133 (April. 24, 2015).

[16] First Amended Complaint ("FAC"), Docket No. 135 (Apr. 27, 2015).

on the pleadings.[17]  On May 11, 2015, all Defendants other than Garner and Broken Road answered the first amended complaint.[18]  On May 27, 2015, Garner and Broken Road filed a motion to dismiss the first amended complaint, arguing there was no substantial similarity between the works as a matter of law.[19]

On August 14, 2015, the Court granted Garner and Broken Record's motion to dismiss the copyright infringement claim, finding that there was no similarity between the two works as a matter of law.[20]  The Court granted the remaining Defendants' motion for judgment on the pleadings on the same grounds.[21]  It declined to exercise supplemental jurisdiction over Plaintiff's state law breach of implied contract claim, and dismissed the claim without prejudice to refiling in state Court.  The federal copyright claim was dismissed with prejudice.[22]  Plaintiff has appealed the order dismissing that claim.[23]

On August 31, 2015, all Defendants except Broken Road and Garner filed the instant Motion, which moves the Court to order Plaintiff to pay their fees and costs, and hold Charles Coate, Plaintiff's attorney, jointly liable for the fees and costs as a sanction.[24]  Plaintiff filed Opposition to the Motion on November 16, 2015.[25]

---

[17] Opposition to Motion for Judgment on the Pleadings, Docket No. 134 (Apr. 27, 2015).

[18] Answers to Amended Complaint, Docket Nos. 144 and 145 (May 11, 2015).

[19] Motion to Dismiss, Docket No. 151 (May 27, 2015); see also Reply in Support of Motion to Dismiss, Docket No. 167 ( July 13, 2015).

[20] Order Granting Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings. . . , Docket No. 172 (Aug. 14, 2015).

[21] Id. at 65.

[22] Id. at 64-65.

[23] Notice of Appeal to the Ninth Circuit Court of Appeals ("Notice of Appeal"), Docket No. 187 (Sept. 9, 2015).

[24] Lakeshore Entertainment Group LLC, et al.'s Motion for Fees and Costs ("motion"), Docket No. 180 (Aug. 31, 2015).

[25] Plaintiff Shame on You Production, Inc.'s Opposition to 1) Defendants' Motion for Attorneys' Fees and Costs; 2) Request for Sanctions ("Opposition"), Docket No. 196 (Nov. 16, 2015); see also Evidentiary Objections to Declarations of Stephen R. Mick and Devin J. Stone Filed in Support of Defendants' Motion for At-

Defendants filed a Reply thereto on November 23, 2015.[26]

## B.    The Dispute Surrounding Plaintiff's Production of the Rosen Screenplay

In the Motion for attorneys' fees and costs, Defendants' attorney Devin Stone asserts that a little more than a week before suit was filed – on April 28, 2014 – Defendants contacted Plaintiff to discuss its copyright infringement allegations.[27] Defendants proffer a letter sent by their representative, Robert Benum.[28]  Benum asked that Plaintiff, inter alia, provide "a copy of Mr. Rosen's script."[29]  Stone contends that Plaintiff did not provide the script, and instead filed suit against Defendants approximately one week later.[30]

Counsel for both parties participated in a Rule 26(f) conference on August 14, 2014.[31]  Stone proposed that the parties exchange screenplays immediately; Plaintiff stated that it would give a copy of the Darci's Walk of Shame screenplay to Defendants as part of its initial disclosures.[32]  On September 29, 2014, the Court held a scheduling conference.[33]  At the conference, the parties stated that they had not yet exchanged copies of their screenplays; the Court ordered that the

---

torneys' Fees and Costs and Request for Sanctions ("Shame on You Objections"), Docket No. 197 (Nov. 16, 2015).

[26] Defendants' Reply Brief in Support of Motion for Fees and Costs ("Reply"), Docket No. 198 (Nov. 23. 2015).

[27] Declaration of Devin J. Stone in Support of Defendants' Motion for Fees ("Stone Decl."), Docket No. 182 (Aug. 31, 2015), ¶ 2.

[28] Notice of Errata Re Exhibit to Declaration of Devin J. Stone in Support of Defendants' Motion for Fees, Exh. A ("4/28 Letter"), Docket No. 184 (Sept. 4, 2015).  Plaintiff objects that the letter is hearsay.  (Shame on You Objections at 8).  The letter is not being offered to prove the truth of statements contained in it, however, but rather to show that the reader – Plaintiff – knew that Defendants had requested a copy of the script.  The document, thus, is not hearsay.  See Fed. R. Evid. 801(c).

[29] Id.

[30] Stone Decl., ¶ 2.

[31] Id., ¶ 3.

[32] Id.

[33] See Transcript of Proceedings, Docket No. 31 (Nov. 4, 2014).

screenplays be exchanged as part of the parties' initial disclosures.[34]  The Court set October 14, 2014 as the date on which initial disclosures were to be made.[35]  Stone asserts that Defendants produced a copy of the Walk of Shame script on October 27, 2014; Plaintiff did not produce the Rosen script by that date.[36]  Stone purportedly called Plaintiff's counsel the next day to determine why the script had not been provided.[37]  He asserts that on October 29, 2014, Plaintiff's lawyer sent an email in which he refused to produce the script and asserted that the Court had not ordered that a screenplay exchange take place.[38]  On October 31, 2014, Stone purportedly asked Plaintiff, once again, to produce Rosen's script.[39]

On November 5, 2014, Stone obtained a copy of the scheduling conference transcript; he purportedly ordered it because of the disagreement as to whether the Court had ordered an exchange.[40]  Stone sent an email to Plaintiff the same day, stating that if he did not receive the script by the end of the day, he would move ex parte to compel its production.[41]  On November 6, 2014, Defendants filed an ex parte application asking that the Court order Plaintiff to produce the Rosen script.[42]  Plaintiff opposed the application, arguing that it was not obligated to produce its screenplay until Defendants produced all drafts and other materials associated with

---

[34] Id. at 9 (Court: "[W]e really need to get on with this, counsel, so as part of your initial disclosures, those screenplays have to be exchanged"); id. at 13–14 (Plaintiff's Counsel: "I will say . . . we have always been willing to exchange copies of the screenplay and relevant information.  We've asked defendants, even before the lawsuit was initiated, for their relevant documents, production notes, screenplay drafts, et cetera, and we haven't received anything from them.  But we have always been willing to do a mutual exchange, which we intend to do."  Court: "Well, now you have a date by which to do it.").

[35] Minutes of Scheduling Conference, Docket No. 28 (Sept. 29, 2014).

[36] Stone Decl., ¶ 7.

[37] Id., ¶ 8.

[38] Id.  Defendants do not submit a copy of this email.

[39] Id., ¶ 9.

[40] Id., ¶ 10.

[41] Id.

[42] Lakeshore Entertainment Group LLC's Ex Parte Application for an Order Directing Plaintiff to Comply with the Court's Explicit Direction to Provide a Copy of its Screenplay, Docket No. 33 (Nov. 6, 2015).

theirs, including development notes.[43]  The Court granted Defendants' ex parte application on December 12, 2014.[44]  It held that Plaintiff could not rely on Defendants' alleged failures to comply fully with the Court's order to avoid performing its own obligations under the order.  It directed Plaintiff to produce its screenplay by December 17, 2014; it also ordered that Defendants produce any interim drafts of their screenplay by December 22, 2014.[45]  Plaintiff complied with the new deadline; Defendants assert they received Plaintiff's script on December 17, 2014 at 4:00 p.m., when it was sent to them by messenger.[46]

## C.    Discovery Disputes

        During this period, Plaintiff began to serve discovery requests on Defendants. Defendants assert that between October 21, 2014 and January 2, 2015, Plaintiff propounded nine requests for production, four sets of request for admissions, and nine sets of written interrogatories.  It also served five notices of deposition.[47]  Stone called Plaintiff's counsel on November 21, 2014, one week before responses to the requests for production were due.[48]  He contends he sought a ten-day extension to produce documents, given the Thanksgiving holiday; Plaintiff's lawyer purportedly denied the request.[49]  Stone asserts that Defendants ultimately responded in a timely fashion to all of the discovery requests.[50]  Apparently, the parties disputed the sufficiency of some of the responses.  Stone contends that he contacted Plaintiff's counsel on December 9, 2014, in an attempt to resolve the disagreements and avoid discovery motions.[51]  He asserts that Plaintiff was not amenable to meeting and

---

[43] Response by Plaintiff Seeking Reciprocal Order Compelling Defendants to Produce all Defendant Walk of Shame Screenplays and Development Notes, Docket No. 35 (Nov. 7, 2014).

[44] Order Granting Defendants' Ex Parte Application for an Order Directing Plaintiff to Produce its Screenplay and Denying Defendants' Ex Parte Application for an Order Staying Discovery ("Ex Parte Order"), Docket No. 42 (Dec. 12, 2014).

[45] Id. at 5-6.

[46] Stone Decl., ¶ 26.

[47] Id., ¶ 11.

[48] Id., ¶ 12.

[49] Id.

[50] Id., ¶ 13.

[51] Id., ¶ 15.

conferring and on December 11, 2014, demanded that Defendants capitulate on all points in dispute.  On December 16, 2014, Plaintiff filed four motions to compel production of documents.[52]  It filed four additional motions to compel on December 18, 2014.[53]  The next day, Defendants filed an ex parte application to strike the motions, arguing that Plaintiff had violated a number of procedural requirements by failing to meet and confer; failing to narrow the issues in dispute; failing to use the joint stipulation procedure; and failing to provide a copy of its screenplay until December 17, 2014.[54]  On December 22, 2014, Magistrate Judge Jacqueline Chooljian denied Defendants' application, but ordered the parties to meet and confer, narrow the matters in dispute, and file a joint status report respecting the motions by January 7, 2015.[55]  Counsel conferred telephonically on January 7, 2015.[56]  Defendants have proffered a transcript of the conference, which indicates that it ran from 10:33 a.m. to 11:46 a.m.[57]  A review of the transcript indicates that the parties discussed briefly two of the requests for document production, both of which were directed to Lakeshore.[58]  The parties also discussed a dispute concerning proper interpretation of the Federal Rules of Civil Procedure, specifically whether Defendants' responses to Plaintiff's discovery requests had been timely.[59]  It also appears that the call terminated at the request of Plaintiff's counsel, Charles Coate, and over Stone's objection.[60]

---

[52] Id., ¶¶ 24-25.

[53] Id., ¶ 27.

[54] Lakershore Entertainment Group LLC's Ex Parte Application to Strike Plaintiff's Eight Motions to Compel, Docket No. 51 (Dec. 19, 2015).

[55] Order Re: Ex Parte Application, Docket No. 54 (Dec. 22, 2015).

[56] Id., ¶ 35.

[57] See Declaration of Devin J. Stone in Support of Ex Parte Application to Strike, Exh. I ("Meet and Confer Transcript"), Docket No. 59-9 (Jan. 8, 2015).

[58] Id. at 32-33, 47-48.

[59] See, e.g., id. at 12-15.

[60] See id. at 40 (Coate: "So if this is the one you want to hang your hat on, please be my guest.  I'm about the conclude this call because I don't believe that we're making any further progress on –" Stone: "You're concluding this call?  Charles, we've talked about one request, and we've barely gotten through the timing issue. . . . We have about 350 requests to go through here").

The day after the conference, Defendants filed another ex parte application to strike Plaintiff's motions to compel.[61]  It asserted that the motions should be stricken because Plaintiff had not met and conferred in good faith, and had terminated the conference before any meaningful discussion of the issues surrounding production of documents had occurred.[62]  Judge Chooljian denied the application without prejudice, and set a status conference to address the parties' dispute regarding document production.[63]  At the status conference, Judge Chooljian stated she believed "that an adequate meet-and-confer ha[d] [not] yet taken place," and directed counsel to spend a portion of the status conference meeting separately with each other to meet and confer regarding their disputes.[64]  As a result, they were able to reach a stipulated resolution of the issues raised by the motions to compel.[65]

---

[61] Lakeshore Entertainment Group LLC's Ex Parte Application to Deny or Strike Plaintiff's Motion to Compel for Failure to Meet and Confer in Good Faith, Docket No. 58 (Jan. 8, 2015).

[62] Id. at 1-2.

[63] Order, Docket No. 63 (Jan. 12, 2015).

[64] Transcript of Proceeding held January 16, 2015 ("Motions to Compel Hearing Transcript"), Docket No. 122 (Apr. 3, 2015).

[65] Status Conference on Plaintiff's Eight (8) Discovery Motions, Docket No. 81 (Jan. 16, 2015).

## II. DISCUSSION[66]

**A.     Whether the Court Will Award Attorneys' Fees and Costs Under the
Copyright Act**

### 1.      Whether the Court Should Defer the Attorney's Fees Award Pending Appeal

Plaintiff has appealed the order granting Defendants' motion to dismiss and
motion for judgment on the pleadings on its copyright claim.[67]  If a motion for
attorneys' fees is made in a case for which an appeal has been taken, the Court may
in its discretion decline to rule on the Motion and defer ruling until the appeal has
been resolved.  See Fed. R. Civ. Proc. 54, Advisory Committee Notes ("Filing a
motion for fees under this subdivision does not affect the finality or the appealability
of a judgment. . . .  If an appeal on the merits of the case is taken, the court may rule
on the claim for fees, may defer its ruling on the motion, or may deny the motion
without prejudice, directing under subdivision (d)(2)(B) a new period for filing after
the appeal has been resolved").  The Ninth Circuit encourages district courts to rule
on attorneys' fees motions notwithstanding an appeal to "prevent postponement of
fee consideration until after the circuit court mandate, when the relevant

---

[66] Plaintiff asserts eighteen evidentiary objections to the declarations of Stone and
Mick.  (Shame on You Objections; see also Declaration of Stephen R. Mick in
Support of Motion for Attorneys' Fees ("Mick Decl."), Docket No. 181 (Aug. 31,
2015).)  Many of the objections merely take issue with the manner in which Stone
and Mick have characterized certain events.  In response to Stone's statement that
Plaintiff's counsel "declined a mutual exchange of scripts," for example, Plaintiff
objects that the statement is "[m]isleading and erroneous [because] Plaintiff was
always amenable to the mutual exchange of scripts, so long as Defendants ex-
changed all drafts of their screenplay at that time."  (Id. at 8).  This is an argument
that Plaintiff is entitled to make – and in fact has made – in its Opposition and the
supporting declaration of Charles Coate.  The argument, and similar arguments,
are not evidentiary objections, however.  Where the Court has relied on evidence
to which Plaintiff has made bona fide objections, the Court addresses those objec-
tions.  All other objections are overruled.

[67] Notice of Appeal, Docket No. 187 (Sept. 9, 2015).  Plaintiff also filed an appeal
of the Court's December 7, 2015 Minute Order.  See Notice of Appeal, Docket
No. 205 (Jan. 5, 2016).  The Ninth Circuit has since concluded that the Court's
December 7, 2015 Minute Order was not an appealable final order.  See Ninth Cir-
cuit Order, Docket No. 211 (July 27, 2016).

circumstances will no longer be fresh in the mind of the district judge." <u>Masalosalo
by Masalosalo v. Stonewall Ins. Co.</u>, 718 F.2d 955, 957 (9th Cir. 1983); <u>see also</u> <u>Boza
v. U.S. Bank., N.A.</u>, No. LA CV 12–06993, 2013 WL 5943160, *3 (C.D. Cal. Oct. 28,
2013) ("Thus, the Ninth Circuit has held that district courts retain discretion during
the pendency of an appeal to consider motions for attorney's fees. . . . [T]he rule is
designed to promote judicial economy"). The Court entered judgment for
Defendants on August 14, 2015. In the interest of judicial economy, the Court
declines to defer decision of this Motion until the appeal is concluded.[68] <u>See
Reinicke v. Creative Empire LLC</u>, No. 12cv1405-GPC, 2014 WL 5390176, *2 (S.D.
Cal. Oct. 22, 2014) ("Here, summary judgment was granted in favor of Defendant
and against Plaintiff on August 6, 2014. The facts and proceedings of the case are
still fresh in the mind of the undersigned judge. In order to have a just, speedy and
final determination of the entire case, the Court exercises its discretion and
considers Defendant's motion for attorney's fees. Accordingly, the Court declines
to defer ruling on the attorney's fees motion").

> ## 2. Legal Standard Governing Attorneys' Fee Awards Under 17 U.S.C. § 505

"The Copyright Act of 1976 permits the district court to 'award a reasonable
attorney's fee to the prevailing party as part of the costs.'" <u>Perfect 10, Inc. v. CCBill
LLC</u>, 488 F.3d 1102, 1120 (9th Cir. 2007) (quoting 17 U.S.C. § 505). Local Rule 54-1
states that the prevailing party is "the party in whose favor judgment is rendered,
unless otherwise determined by the Court." L.R. 54-1. Here, Defendants obtained a
Court-ordered judgment in their favor. They are therefore the prevailing parties.
<u>See</u>, <u>e.g.</u>, <u>Buckhannon Board and Care Home, Inc. v. W. Va. Dep't of Health and
Human Servs.</u>, 532 U.S. 598, 605-06 (2001) (holding that a prevailing party is one
that obtains a judgment on the merits or a court-ordered consent decree).

"Fees are proper under [§ 505] . . . when either successful prosecution or
successful defense of the action furthers the purposes of the Copyright Act."
<u>Perfect 10, Inc.</u>, 488 F.3d at 1120 (citing <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553, 558
(9th Cir. 1996) ("[A] successful defense of a copyright infringement action may
further the policies of the Copyright Act every bit as much as a successful
prosecution of an infringement claim by the holder of a copyright")). Thus,
"prevailing defendants as well as prevailing plaintiffs are eligible for such an award,

---

[68] Moreover, it appears beneficial to the parties for the Court to issue a ruling on
the Motion now, so that any likely appeal of the Court's ruling may be consolidat-
ed with the other matters currently pending before the Ninth Circuit.

and the standards for evaluating whether an award is proper are the same regardless of which party prevails." Id. (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).

The Supreme Court has held that "district courts are to use their discretion in awarding attorney's fees and costs to the prevailing party" in copyright actions. Fogerty, 510 U.S. at 523 n. 10. Exceptional circumstances are not a prerequisite to a fee award under the Copyright Act. Historical Research v. Cabral, 80 F.3d 377, 378 (9th Cir. 1996). Nor is culpability on the part of the losing party. See Fogerty, 94 F.3d at 558. Rather, the district court should consider a series of "nonexclusive factors" when evaluating whether to award fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty, 510 U.S. at 534 n.19; see also Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't, 447 F.3d 769, 787 (9th Cir. 2006) ("A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to § 505. These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence," citing Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996)); Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1147 (9th Cir. 2003) ("In exercising its discretion regarding whether it should award attorney's fees, the district court should weigh[, inter alia,] the factors identified in Fogerty v. Fantasy, Inc."). The Court addresses these factors in turn.

### 3. Degree of Success on the Merits

The Court granted Defendants' motions to dismiss and for judgment on the pleadings on Plaintiff's copyright claim.[69] It did so on the merits, after concluding that "there [was] no substantial similarity between plaintiff's and defendants' works as a matter of law."[70] This factor thus weighs in favor of granting attorneys' fees. See DuckHole Inc. v. NBCUniversal Media LLC, No. CV-12-10077-BRO, 2013 WL 5797204, *2 (C.D. Cal. Oct. 25, 2013) ("Th[e] [degree of success] factor weighs more in favor of a party who prevailed on the merits, rather than on a technical

---

[69] Order Granting Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings. . . (hereinafter "August 14, 2015 Order"), Docket No. 172 (Aug. 14, 2015), 63, 65.

[70] Id. at 63.

defense.  Here, Defendants prevailed on the merits.  The Court granted Defendants['] motion to dismiss without leave to amend after finding 'no similarity, much less substantial similarity, between any expressive elements in the works.' This factor weighs in favor of granting Defendants' Motion").

Plaintiff disputes this.  It argues that Defendants' "'degree' of success is not very high" because only its copyright claims were dismissed, and not its state law breach of implied contract claim.[71]  In determining whether fees should be awarded, however, the primary focus is on the Copyright Act, not state law.  See Perfect 10, Inc., 488 F.3d at 1120.  For that reason, the fact that the Court declined to address Plaintiff's state law claim does not preclude an award of fees; for all relevant purposes, Defendants' success was total.  See Yue v. Storage Tech. Corp., No. C 07-05850 JW, 2008 WL 4185835, *4 (N.D. Cal. Sept. 5, 2008) ("Defendants are the prevailing parties. . . .  Defendants' degree of success in the action was total, as they established that Plaintiff could not assert new copyright claims against Defendants. . . .  This factor supports an award of fees" (emphasis added)); Identity Arts v. Best Buy Enterprise Services, Inc., No. C 05-4656 PJH, 2008 WL 820674, *1, 4 (N.D. Cal. Mar. 26, 2008) (finding that defendant had "achieved a high degree of success," and that this factor weighed in favor of awarding fees, despite the fact that defendant had been denied judgment on the pleadings on an implied breach of contract claim).

### 4.    Frivolousness and the Reasonableness of the Losing Party's Arguments

Another relevant factor in deciding whether to award fees under the Copyright Act is whether the positions advanced by the party against whom fees are sought were frivolous.  See, e.g., Columbia Pictures Television Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001) (noting that frivolousness is a factor to be considered); see also Rosciszewski v. Arete Assoc., Inc., 1 F.3d 225, 233 (4th Cir. 1993).  A finding of frivolousness is not a prerequisite to awarding fees, however.  Fogerty, 94 F.3d at 560 ("[A] finding of . . . frivolousness . . . is no longer required"); see also Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB, 2015 WL 1746484, *8 (C.D. Cal. Mar. 24, 2015) ("[T]he fact that Perfect 10's copyright claims were not frivolous when it filed them in 2011 does not undermine the Court's ultimate conclusion that attorneys' fees would promote the purpose of the Copyright Act and are appropriate in this case"); Batjac Prod. Inc. v. Goodtimes Home Video Corp., 44 U.S.P.Q. 2d 1788, 1790 (C.D. Cal. 1997) ("Claims need not be frivolous, however, in order to merit an award of fees to the

---

[71] Opposition at 4-5.

13

prevailing party" (citations omitted)); see also McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 571 (7th Cir. 2003) ("A showing of bad faith or frivolousness is no longer required to receive attorney's fees").

The critical question is whether plaintiff's copyright claim was objectively unreasonable. See Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121-22 (2d Cir. 2001); see also Columbia Pictures Television, 259 F.3d at 1197. Courts have concluded that the imposition of fees against a party with an objectively reasonable litigation position generally does not promote the purposes of the Copyright Act. See Matthew Bender & Co., 240 F.3d at 122; Mitek Holdings, Inc. v. Arce Eng'g Co., 198 F.3d 840, 842-43 (11th Cir. 1999) ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works'"). Here, the Court concludes that Plaintiff's lawsuit was objectively unreasonable. Plaintiff alleged that Defendants had been given access to its screenplay and had copied it. As the Court noted in granting Defendants' motion to dismiss and motion for judgment on the pleadings, however, a successful copyright suit requires a finding of substantial similarity. Universal Dyeing & Printing, Inv. v. U.S. Textile Printing, Inc., No. CV 09-09132 DDP, 2011 WL 4084557, *3 (C.D. Cal. Sept. 13, 2011) ("Accordingly, even assuming that Universal had shown direct evidence of copying and access, the analysis would be the same: Defendants would still be entitled to summary judgment because the patterns at issue are not substantially similar"); Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1175-78 (C.D. Cal. 2001) (considering "substantial similarity" in a copyright action despite the fact that defendant did not dispute its alleged direct access and copying); Berkla v. Corel Corp., 66 F.Supp.2d 1129, 1140-41 (E.D. Cal. 1999) (explaining that even if plaintiff "did have evidence of direct copying . . . he still remains unexcused from demonstrating the requisite similarity"); Decorative Aides Corp. v. Staple Sewing Aides Corp., 497 F.Supp. 154, 157 (S.D.N.Y. 1980) ("Copying cannot be found on proof of access alone when the resulting works are not substantially similar," citing Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966)).

After reviewing the two screenplays, the Court found that they were not substantially similar for a variety of reasons. It found that the plots, themes, dialogue, mood, setting, pace, and characters in the two works were not substantially similar. It held that "[t]he only articulable similarities between the . . . works [were] the fact that each lead character ha[d] her car towed to a tow lot and engage[d] in

similar dialogue with a tow lot employee, and the fact that each lead character [was] ultimately transported by helicopter to (or close to) her final destination."[72]  The Court noted that even these articulable similarities were not strong evidence of substantial similarity.  It held that the tow truck scene, while not sufficiently general or foreseeable as to constitute a scène-à-faire, was still a relatively foreseeable plot device to deal with a character's walk of shame.[73]  Moreover, it found that the helicopter plot devices in the works were different: <u>Darci's Walk of Shame</u> actually depicted a helicopter ride while <u>Walk of Shame</u> merely referenced one.[74]  The Court thus concluded that "the two works [told] decidedly different stories, and lack[ed] substantial similarity as a matter of law."[75]

Plaintiff contends its claim was objectively reasonable for two reasons, neither of which the Court finds persuasive.  First, it appears to argue that reasonableness can be inferred from the fact that the Court did not dismiss its breach of implied contract claim with prejudice.[76]  The Court declined to adjudicate Plaintiff's contract claim because it declined to exercise supplemental jurisdiction over the claim, however.[77]  Thus, even if the Court could infer that Plaintiff's copyright claim was objectively reasonable from the fact that it had pled a plausible breach of implied contract claim, the Court expressly declined to address the merits of that claim.  That the Court did not dismiss the claim with prejudice, therefore, does not in any way demonstrate the claim was plausible; a <u>fortiori</u>, it says nothing about the reasonableness of Plaintiff's copyright claim.

Second, Plaintiff argues that the Court should not find objective unreasonableness simply because it determined that "plaintiff's inherently subjective opinion regarding the similarities between two works was incorrect as a matter of law."[78]  Plaintiff appears to assert that a lawsuit cannot be objectively

---

[72] August 14, 2015 Order at 60.

[73] <u>Id.</u>

[74] <u>Id.</u>

[75] <u>Id.</u>

[76] <u>See</u> Opposition at 5 ("Plaintiff's claims were neither frivolous nor objectively unreasonable; indeed, the Court[ ] . . . declined to dispose of the contractual claims with prejudice").

[77] August 14, 2015 Order at 64-65.

[78] Motion at 5.

unreasonable if works are ultimately found not to be substantially similar, because substantial similarity is an "inherently subjective" standard.  Although the possibility that there could be reasonable disagreement concerning similarity is something a Court must consider in deciding whether a lawsuit was objectively reasonable, courts have found objective unreasonableness in situations in which "the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious."  Randolph v. Dimension Films, 634 F.Supp.2d 779, 794 (S.D. Tex. 2009); see also Mallery v. NBC Universal, 331 F. App'x 821, 822 (2d Cir. June 3, 2009) (Unpub. Disp.) (affirming the district court's award of attorneys' fees to defendant based on its conclusion that "[t]he context, presentation, plot lines, narrative structure, and styles of the two works are substantially different"); Williams v. Crichton, 891 F.Supp. 120, 122 (S.D.N.Y. 1994) (awarding attorneys' fees after finding objective unreasonableness based on the fact that the similarities asserted by plaintiff "all flow[ed] from the concededly uncopyrightable concept of a dinosaur zoo," and that plaintiff's claim "was based on the comparison of highly selective, scattered details").

The case DuckHole v. NBCUniversal Media LLC, No. CV-12-10077-BRO, 2013 WL 5797204 (C.D. Cal. Oct. 25, 2013), is illustrative, as the facts there were almost identical to those presented here.  In DuckHole, plaintiff brought a copyright action, alleging that defendant's television program Animal Practice infringed its copyright in a work titled PETS.  Id. at *1.  The Court granted defendant's motion to dismiss, finding that "PETS and Animal Practice ha[d] distinct plots, demonstrating that they [were] wholly different expressions of the same idea."  Id.  It further held that although there were elements of the show that were superficially similar, those elements were "too generic to be protectable elements."  Id.  Following the dismissal of plaintiff's copyright claim, defendant filed a motion for attorneys' fees.  In granting the motion, the Court held that "the Ninth Circuit has clearly instructed that in applying the extrinsic test [for substantial similarity], the Court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters. . . . Plaintiff was unreasonable in arguing that the protectable elements were substantially similar and that the idea of a sitcom set in an animal hospital was novel enough to support a copyright infringement claim.  This [objective reasonableness] factor therefore weighs in favor of defendants."  Id. at *3.

Despite the fact that the Court dismissed plaintiff's claim in DuckHole on grounds that Plaintiff denominates "subjective," it nonetheless found the claim objectively unreasonable.  Likewise, due to the lack of any meaningful or legally cognizable similarity between Walk of Shame and Darci's Walk of Shame, the Court

finds that the lack of substantial similarity was obvious, and Plaintiff's suit objectively unreasonable.  This factor favors awarding attorneys' fees.

### 5.        Motivation/Bad Faith

Bad faith in asserting a copyright claim, while not a necessary prerequisite to an award of fees, is a factor taken into consideration in evaluating whether a fee award is appropriate.  See Columbia Pictures Television, 259 F.3d at 1197 (noting that motivation is a factor to be considered); Maljack Prod., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 (9th Cir. 1996) (same).  Defendants argue that Plaintiff's bad faith is demonstrated by the manner in which it conducted the litigation.  They assert that Plaintiff delayed resolution of its substantive claim (which it purportedly knew was meritless) as long as possible to obtain a nuisance-value settlement.[79]  Defendants are correct that "a finding of bad faith can be based not only on the actions that led to the lawsuit, but also the conduct of the litigation."  Gilbert v. New Line Prods., Inc., No. CV 09-2231-RGK, 2010 WL 5790688, *3 (C.D. Cal. Dec. 6, 2010), aff'd in part and vacated and remanded on other grounds, 490 F. App'x 34 (9th Cir. July 23, 2012) (Unpub. Disp.).  The Court agrees with Defendants that there is evidence that Plaintiff pursued the action in bad faith.  This finding is supported by (1) Plaintiff's unreasonable failure to produce its screenplay to Defendants in a timely fashion, and (2) its conduct during the course of discovery.  See id. ("Here, it is clear that Plaintiff engaged in a concerted effort to make the present lawsuit as expensive as possible for Defendants").

As noted, Defendants have adduced evidence that they asked for a copy of the Darci's Walk of Shame screenplay as early as April 28, 2014, before Plaintiff filed suit.[80]  Defendants again requested a copy of the screenplay when the parties met and conferred prior to the scheduling conference; Plaintiff stated that it would produce the document with its initial disclosures following the scheduling conference.  Finally – and most importantly – Plaintiff failed to produce a copy of the screenplay as ordered by the Court at the scheduling conference.  Defendants were forced to seek ex parte relief to obtain a copy of a screenplay it should have received, at the very latest, as part of Plaintiff's initial disclosures.  See Fed. R. Civ. Proc. 26(a)(1)(A)(ii) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . a copy – or a description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and

---

[79] Motion at 15.

[80] See 4/28 Letter.

may use to support its claim or defenses"); see also Zella v. E.W. Scripps Co., 529 F.Supp.2d 1124, 1130-31 (C.D. Cal. 2007) (holding that a copyrighted work was incorporated by reference in the complaint because plaintiff's claim "depend[ed] on [its] contents"). Although a party can reasonably decline to comply with certain discovery requests its opponent propounds, Plaintiff's failure to produce the most fundamental and important component of its copyright claim, even in the face of a Court order, suggests a dilatory motive and a strategy to delay for as long as possible Defendants' filing of a Rule 12(b) motion. See Scott v. Meyer, No. CV 09-6076 ODW, 2010 WL 2569286, *3 (C.D. Cal. June 21, 2010) (noting certain circumstances that gave rise to an inference of bad faith, and stating that "[a]lthough these facts are not dispositive of Plaintiff's bad faith in pursuing her action, when considered under the backdrop of the objective unreasonableness of the claims . . . , the connotations of frivolity are difficult to escape").

Importantly, Plaintiff does not dispute any of the facts surrounding its months' long refusal to produce its screenplay. Rather, it argues that the failure to produce was "non-prejudicial" and "irrelevant" to the issue of bad faith.[81] First, it argues that discovery revealed that "Elizabeth Banks [had been] in possession of [its] screenplay since 2007." Plaintiff does not explain why Banks' possession of the screenplay is relevant to its motivation in filing the lawsuit, litigating in the manner it did, or withholding the screenplay for as long as it did. Plaintiff does not assert, for example, that it declined to produce the screenplay because it knew Banks had a copy of it; to the contrary, Plaintiff asserts it learned that Banks possessed the screenplay only later in discovery.[82] Moreover, even if Defendants' actual possession of Plaintiff's script were relevant in assessing motivation, Plaintiff has not adduced persuasive evidence that Banks (or the other Defendants) possessed the screenplay in any meaningful way. The evidence it proffers is a redacted email to Banks, received July 31, 2007, that attached a copy of the screenplay.[83] That the screenplay was sent to Banks seven years prior to the filing of this action does not necessarily show that she recalled receiving the email before she was sued, or that she had any reason to search her inbox for the email after suit was filed; this is especially true given that Banks, a successful actress and producer, likely receives a vast number of screenplays every year. Plaintiff counters that Defendants' attorney Stephen Mick "revealed in open court" that Defendants possessed the screenplay

---

[81] Opposition at 9.

[82] Declaration of Charles M. Coate ("Coate Decl."), Docket No. 196 (Nov. 16, 2015), ¶ 9.

[83] Opposition, Exh. C ("Banks email").

by referencing certain facts about its plot during the scheduling conference that were not apparent from the face of the complaint; these included the fact that <u>Darci's Walk of Shame</u> is set in Hawaii.[84]  Plaintiff previously advanced this argument, and the Court rejected it.  In ordering Plaintiff to produce its screenplay, the Court stated:

> [Plaintiff] Shame on You is correct that the complaint does not allege that Rosen's script is set in Hawaii.  It strains credulity, however, to conclude that defendants already have a copy of the screenplay when they have gone so far as to seek ex parte relief to obtain it.  It appears defendants know some aspects of Rosen's screenplay beyond those pled in the complaint.  The court declines to infer that they already have the screenplay in their possession, however.[85]

The Court remains unconvinced that Mick's statements demonstrate that Defendants possessed the screenplay and sought to have Plaintiff produce it to them as some type of subterfuge.[86]

In addition to its failure to produce a copy of its screenplay in a timely fashion, other discovery-related conduct by Plaintiff evidences bad faith, as it suggests an intent to force Defendants to expend significant resources on litigation in order to coerce a settlement.  See <u>AF Holdings LLC v. Navasca</u>, No. C-12-2396 EMC, 2013 WL 3815677, *2-3 (N.D. Cal. July 22, 2013) (noting that discovery violations – including an improper emergency motion to compel – were evidence both of objective unreasonableness and bad faith); <u>Jackson v. Sturkie</u>, 255 F.Supp.2d 1096, 1104 (N.D. Cal. 2003) (noting that a party's failure to perform diligently its discovery obligations was a reason to grant attorneys' fees in a copyright case).  Defendants' attorney, Stone, asserts that in late October 2014, Plaintiff propounded nine requests for production from various Defendants.[87]  When Defendants objected to certain of the requests, Plaintiff bypassed the required pre-filing conference and filed eight motions to compel a week later, which totaled more than a thousand

---

[84] Opposition at 10.

[85] Ex Parte Order at 5.

[86] At the December 7, 2015 hearing, Mick asserted that he received a written summary of the screenplay from a third party who had previously received the screenplay from Rosen.

[87] Stone Decl., ¶ 11.

pages.[88]  Plaintiff purportedly provided the requests accompanying the motions in
PDF form, which made it impossible for Defendants to copy and paste the requests
into their opposition; when Plaintiff was told of the difficulty, it purportedly refused
without explanation to provide a Word version of the motions.[89]  Plaintiff does not
dispute any of these assertions in its Opposition.  The Court concludes that
Plaintiff's actions – most particularly, its failure to meet and confer prior to filing
voluminous motions – raises an inference that its primary motivation was not receipt
of the documents in question, but rather draining Defendants' resources in order to
force a settlement.  This inference is reinforced by Plaintiff's refusal to confer in
good faith even after Judge Chooljian directed that it do so, a fact that is apparent
from a review of the transcript of the conference and was noted by Judge
Chooljian.[90]  Indeed, when forced to confer during the course of the status
conference Judge Chooljian held, the parties were able to resolve all of their
differences through a stipulation.  Plaintiff's lack of interest in facilitating a
resolution of the disputes on the merits gives rise to an inference that it had an
improper purpose in filing the action.

Consequently, the Court finds there is evidence that Plaintiff's motivation for
filing suit was not a good faith belief in the merits of its claim, but an attempt to
coerce Defendants to pay money to settle a meritless suit.  This factor weighs in
favor of awarding fees.

---

[88] Id., ¶ 25.

[89] Id.

[90] See Motions to Compel Hearing Transcript at 11 ("And directing this to plain-
tiff's counsel, I recognize there's a certain level of frustration . . . in light of the
largely boilerplate responses to the document requests that defendants supplied
and what you perceived as unreasonable delays, but meeting and conferring is not
supposed to be a hostile-witness cross-examination, and that's how you treated de-
fense counsel.  Nor is meeting and conferring leaping directly to a demand that the
other side tell you whether or not it will . . . produce any documents or stand on all
of its objections to 300-or-so document requests.  Nor is it merely listening to one
side explain its rationale for asserting an objection and then essentially saying,
'We'll just have to agree to disagree,' without engaging in a substantive discussion
. . . of the matter. . . .  What I read in that transcript just did not cut it.").

###### 6.  Deterrence

Deterrence likewise weighs in favor of awarding fees, but only moderately. Some courts look to the deterrent effect on the party being ordered to pay fees in assessing this factor.  Courts that focus on "specific deterrence" impose attorneys' fees to deter a party that has engaged in prior acts of infringement or has previously filed non-meritorious actions.  See, e.g., Robinson v. New Line Cinema Corporation, 57 F.Supp.2d 211, 219 (D. Md. 1999) (denying attorneys' fees in part because there was no need to deter an unsuccessful plaintiff who "did not file his suit frivolously, . . . waited until securing an expert's opinion as to the similarity of both works [and] sought early resolution of his claims"); Peer Intern. Corp. v. Luna Records, Inc., 887 F.Supp. 560, 570 (S.D.N.Y 1995) ("In this case, where I have made a finding of willful infringement, which infringement continued for months after the initiation of this action, and where Defendants apparently need to be deterred from future infringement, I find that an award of attorneys' fees is warranted").

Other courts, however, look to "general deterrence," considering whether an award of attorneys' fees will positively impact the behavior of future litigants and potential litigants other than the parties to the case.  See, e.g., Perfect 10, 2015 WL 1746484 at *12 (awarding attorneys' fees because "it will discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement"); AF Holdings LLC, 2013 WL 3815677 at *3 ("[G]iven AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements").

Defendants proffer no evidence that Plaintiff or Rosen have filed baseless or frivolous claims in the past, or that either is likely to do so in the future. Nonetheless, awarding attorneys' fees might well dissuade future parties from bringing objectively unreasonable claims, or from bringing claims in bad faith.  See City of Inglewood v. Teixiera, No. CV-15-01815-MWF, 2015 WL 6146269, *4 (C.D. Cal. Oct. 8, 2015) ("The Court is also persuaded that a fee award is necessary to deter future meritless litigations of this kind.  The City argues that the attorneys' fees 'will have absolutely no deterrent effect' on a municipality that intends to file no future copyright lawsuits.  Even if true, the Court notes that deterrence is a broad value that is not limited to the individual litigants here.  Indeed, a reasonable award of fees will serve to deter other entities, whether public or private, that contemplate bringing unreasonable suits to pressure an individual into abandoning protected

activity"). For this reason, this factor favors an award of attorneys' fees.

### 7.      Overall Goals of the Copyright Act

A final factor to consider – to the extent not subsumed in evaluating the other factors – is whether an award of attorneys' fees would be consistent with the overall goals of the Copyright Act.  See AF Holdings LLC, 2013 WL 3815677 at *3 (considering whether an award of attorneys' fees furthered the goals of the Copyright Act); Scott, 2010 WL 2569286 at *4 (same).

The Copyright Act's "primary objective is to 'encourage the production of original literary, artistic, and musical expression for the good of the public.'"  SOFA Ent., Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013) (quoting Fogerty, 510 U.S. at 524).  Awarding fees to Defendants in this case will reward artists and others who defend against meritless claims, and will encourage artists to continue producing original works without fear of having to defend against baseless claims.  Scott, 2010 WL 2569286 at *4 ("Finally, an award of attorney's fees in this case is consistent with the ultimate purposes of the Copyright Act, and therefore appropriate.  The successful defense against Plaintiff's copyright infringement claims will assure that Meyer's literary work remains available to the public, thus furthering the goal of 'stimulating artistic creativity for the general public good' and perhaps 'lead[ing] to further creative pieces,'" quoting Fogerty, 510 U.S. at 524).

This conclusion is reinforced by the fact that Defendants' "successful defense also nudged copyright law in the direction of 'free expression' by appealing to basic principles about the unprotectability of ideas, instead of relying on 'technical defense[s], such as the statute of limitations, laches, or the copyright registration requirements."  Mattel, Inc. v. MGA Ent., Inc., No. CV 04–9049 DOC (RNBx), 2011 WL 3420603, *2 (C.D. Cal. Aug. 4, 2011) (quoting Fogerty, 94 F.3d at 556).  Consequently, the Court finds that awarding fees is consistent with, and will further, the purposes of the Copyright Act.

### 8.      Balancing the Factors

Balancing the factors, the Court concludes that this is an appropriate case in which to award attorneys' fees under the Copyright Act.  Defendants were completely successful in dismissing Plaintiff's copyright claim at an early stage of the litigation.  Plaintiff's claim was objectively unreasonable, and there is evidence the claim was brought in bad faith.  Awarding fees will discourage others from filing non-meritorious suits alleging ownership of unprotectable ideas.  All of these

conclusions underscore the fact that awarding fees will further the goals of the Copyright Act.  The Court exercises its discretion and will award Defendants attorneys' fees.

## B.    Whether the Requested Fees are Reasonable

Defendants contend they incurred $360,616.00 in attorneys' fees defending the action.[91]  This includes $354,148.00 billed by Barnes & Thornburg, LLP ("Barnes & Thornburg"), as well as $6,468.00 billed by Kinsella Weitzman Iser Kump & Aldisert LLP, ("Kinsella Weitzman"), which represented Banks and Handelman at the outset of the litigation before Banks and Handelman retained Barnes & Thornburg.[92]  Defendants also seek $3,825.15 in costs.[93]

Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quotation omitted); see also DuckHole, 2013 WL 5797204 at *4 (noting that an award of attorneys' fees under the Copyright Act "must be reasonable").  A court may award fees only for the number of hours it concludes were reasonably expended litigating the case.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  Hensley, 461 U.S. at 434.  At the outset, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked."  Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  "'The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits.'"  Common Cause v. Jones, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (quoting Deukmejian, 987 F.2d at 1397).

---

[91] Motion at 21; Mick Decl., ¶ 19.

[92] Id., ¶¶ 15, 19.  Defendants erroneously refer to Kinsella Weitzman as "Kinsella Weisman" and as "Kinsella Witzman Iswer Kump & Aldisert."  Id.

[93] Application to the Clerk to Tax Costs ("Application for Costs"), Docket No. 183 (Aug. 31, 2015).

1.     **Lodestar Method**

The Ninth Circuit "requires a district court to calculate an award of attorneys' fees by first calculating the 'lodestar.'" Caudle v. Bristow Optical Co., 224 F.3d 1014, 1028 (9th Cir. 2000) (citing Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) (reversing the district court's fee award because it failed to calculate a lodestar figure and assess the extent to which recognized bases for adjusting that figure applied)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales, 96 F.3d at 363; see also Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157 (9th Cir. 2002). It incorporates consideration of the results obtained, as required by Hensley, 461 U.S. 424, and other relevant factors as well. Morales, 96 F.3d at 363 n.8. When calculating the lodestar, courts do not use the actual rate charged by a party's attorney. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1985) ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party"). Rather, "in determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers, 796 F.2d at 1210-11; see Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984) (the requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").[94]

The Court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services. See Bell v. Clackamas Cty., 341 F.3d 858, 868 (9th Cir. 2003); Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). The party requesting fees bears the burden of adducing evidence that the requested rates are in line with prevailing rates for lawyers of reasonably comparable skill and reputation in the community. Jordan, 815 F.2d at 1263. The relevant community is the district in which the Court sits. See Schwartz v. Sec'y of Health and Human Serv., 73 F.3d 895, 906 (9th Cir. 1995).

---

[94] Because the crucial issue is the reasonableness of Defendants' asserted rates – not whether those rates were in fact billed to the clients – the Court overrules Plaintiff's evidentiary objection that the rates are "irrelevant . . . for purposes of this motion if they were not" in fact billed to the clients. (Shame on You Objections.) Moreover, Defendants expressly state that the rates "w[ere] in effect . . . at the beginning of the case." (Mick Decl. ¶ 6.)

Declarations from local attorneys who practice in the same area of law regarding the prevailing market rate in the community suffice to establish a reasonable hourly rate. See Widrig v. Apfel, 140 F.3d 1207, 1209 (9th Cir. 1998); Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates); see also Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1215 (9th Cir. 2003) (discussing the affidavit of "an attorney practicing in the same region as Earthquake's attorneys," which opined that "Earthquake's attorney rates were reasonable and customary").

Once it has determined a reasonable hourly rate, the Court must determine the number of hours reasonably spent on the litigation. "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting Hensley, 461 U.S. 424). After computing the lodestar, the Court must assess whether additional considerations require adjustment of the figure, such as novelty and complexity of the issues, the specific skill and experience of counsel, the quality of representation, and the results obtained.[95] See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975); see also Blum, 465 U.S. at 989-900; Clark v. City of Los Angeles, 803 F.2d 987, 990-91 & n.3 (9th Cir. 1986); Cunningham v. Cty. of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988).

### 2. Whether Fees Incurred Litigating Plaintiff's State Law Contract Claim are Recoverable

Plaintiff argues that the Court must apportion the fees Defendants request between its copyright and breach of implied contract claims, and award only fees incurred in litigating the copyright claim under § 505. When fees are awarded under

---

[95] "The twelve Kerr factors bearing on the reasonableness [of the fee] are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Morales, 96 F.3d at 363-64 n.8 (citing Kerr, 526 F.2d at 70).

the Copyright Act, the prevailing party may recover fees associated with the litigation of related non-copyright claims. Mattel, Inc., 2011 WL 3420603 at *6 ("MGA is entitled to recover the fees it incurred in defending against claims that 'involve[d] a common core of facts or [were] based on related legal theories,'" quoting The Traditional Cat Ass'n v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003); see also Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) ("To the extent the claims are related, Plaintiff should recover reasonable fees for prosecuting those claims"); The Traditional Cat Ass'n, 340 F.3d at 833 (stating that "a party entitled to attorney's fees as a prevailing party on a particular copyright claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any related claims," and remanding for a district court to determine whether the non-copyright claims were related).

"To determine whether the claims are related, the district court should focus on whether the claims on which [defendants] did not prevail 'involve a common core of facts or are based on related legal theories.'" Thomas, 410 F.3d at 649 (quoting Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis original)).

Here, the non-copyright claim concerned a purported breach of an implied contract.[96] The implied contract allegedly provided that Defendants "liked the idea [of Rosen's film] and would get back to Rosen shortly." It obligated them, "if elements of the Screenplay were to be used [by them], [to obtain] the rights . . . in and to the Screenplay in exchange for appropriate compensation to be agreed upon in accordance with entertainment industry custom and practice."[97] As can be seen, both the copyright and breach of implied contract claims were based on Defendants' purportedly unauthorized and uncompensated use of the Darci's Walk of Shame screenplay; both claims, moreover, required a determination as to whether the two films were substantially similar (copyright claim) or "used" the same "elements" (breach of implied contract claim). As Plaintiff concedes, "[t]he vast majority of this case including discovery concerned both of [p]laintiff's claims equally, in that the copyright infringement and contractual claim arose out of the same set of facts and circumstances."[98] As the claims are interrelated, the Court need not apportion fees between them. See Mattel, 2011 WL 3420603 at *8 (noting that a copyright plaintiff could recover fees incurred in litigating a non-copyright claim if the claims were related); Love v. Mail on Sunday, No. CV 05-7798 ABC, 2007 WL 2709975, *7

---

[96] FAC, ¶ 37.

[97] Id., ¶ 38a.

[98] Opposition at 22 (emphasis added).

(C.D. Cal. Sept. 7, 2007) ("[T]he Court finds that Plaintiff's claims for § 17200 violations and civil conspiracy are inextricably intertwined with Plaintiff's claims warranting an award of fees.  The Court therefore will not apportion fees on these claims"); see also Roberts v. WMC Mortgage Corp., 173 F. App'x 575, 577 (9th Cir. Mar. 10, 2006) (Unpub. Disp.) ("[W]here multiple claims are asserted and a litigant is successful on some claims, an award of costs need not be apportioned if the claims are so inextricably intertwined that apportionment would be meaningless"); Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 884 (9th Cir. 2005) (awarding fees based on defense of unfair competition and slander claims because the non-copyright claims were "predicated on [plaintiff's] assertion that [defendant] did not own the copyright").

### 3.    Whether the Requested Hourly Rates are Reasonable

As noted, in determining the reasonableness of an attorney's rate, the Court must review the "prevailing market rates in the relevant community."  Blum, 465 U.S. at 895 & n.11.  The proper rate to employ in computing fees is that which a lawyer of comparable skill, experience and reputation would command in the relevant community.  Id.  "The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community."  Id.; see Earthquake Sound Corp., 352 F.3d at 1215; Guam Soc'y of Obstetricians & Gynecologists, 100 F.3d at 696. Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate.  See Widrig, 140 F.3d at 1209; Guam Soc'y of Obstetricians & Gynecologists, 100 F.3d at 696.

Defendants represent that three Barnes & Thornburg attorneys worked on this litigation: partner Stephen Mick, senior associate Devin Stone, and associate Stacey Foster.[99]  Defendants also seek attorneys' fees for work performed by two Kinsella Weitzman attorneys: Michael Kump and Gregory Korn.[100]  Finally, Defendants seeks fees for work performed by three Barnes & Thornburg paralegals: Jennifer Wylie, Carla Montiel, and James Cho.[101]

Defendants assert that Mick's time should be compensated at $595 per hour. The Court concludes that this is a reasonable rate for an attorney with Mick's

---

[99] Mick Decl., ¶ 6.

[100] Id.

[101] Id.

qualifications.  Mick has been practicing law for almost thirty years, and has more than twenty years of experience litigating copyright actions.[102]  He asserts that his practice substantially is comprised of intellectual property litigation, and that he has served as lead counsel in nearly twenty cases that have been tried to verdict.[103]  His hourly rate is comparable to (or lower than) rates other courts have deemed reasonable for a partner in this district.  Perfect 10 Inc., 2015 WL 1746484 at *15-16 (finding "reasonable and comparable" hourly fees for partners ranging from $610 to $930); DuckHole, 2013 WL 5797204 at *5 ("Mr. Weiner billed himself . . . at $580 an hour. . . .  The Court finds that the hourly rate[ ] charged by Mr. Weiner . . . fall[s] within the range of rates charged by similarly situate attorneys in the Los Angeles area"); see also Goldberg v. Cameron, No. C-05-03523 RMW, 2011 WL 3515899, *7 (N.D. Cal. Aug. 11, 2011) ("Shephard's hourly billing rate was $495 in 2006; $510 in 2007; and $550 in 2008 and 2009. . . .  Cameron has put forth substantial evidence to support a finding that his counsel charged a reasonable hourly rate for services rendered in connection to this lawsuit").

The Court also finds reasonable the hourly rates charged by the two Barnes & Thornburg associates assigned to the litigation.  Defendants assert that both Stone and Foster have litigation experience, and that Stone, as a senior associate, has experience in copyright defense work.  Mick's declaration states that Stone graduated from UCLA Law School in 2008, while Foster graduated from Loyola Law School in 2012.[104]  Based on its review of the record, the Court finds that hourly rates of $395 and $320 for Stone and Foster respectively are reasonable.  See DuckHole, 2013 WL 5797204 at *5 (finding reasonable a rate of $380 for a third year associate); Browne v. Am. Honda Motor Co., Inc., No. CV 09-06750 MMM, 2010 WL 9499073, *7 (C.D. Cal. Oct. 5, 2010) ("Billing rates for lawyers two years out of school range from $200 to the high $400 range"); see also De Amaral v. Goldsmith & Hull, No. 12-cv-03580-WHO, 2014 WL 1309954, *2-3 (N.D. Cal. Apr. 1, 2014) (approving a rate of $350 for an associate); Caplan v. CNA Fin. Corp., 573 F.Supp.2d 1244, 1249–50 (N.D. Cal. 2008) (approving rates of $350 for a sixth year associate and $330 for a fourth year associate).[105]

---

[102] Id., ¶ 10.

[103] Id.

[104] Id., ¶¶ 12–13.

[105] Plaintiff objects that the discussion in Mick's declaration of Foster's credentials is "inconsistent" in that it states she graduated from law school in 2012 but was an associate from 2011 to 2013.  (Shame on You Objections at 6).  Assuming the reference to 2011 was a typographic error and Foster became an associate in 2012, the

The Court agrees with Plaintiff, however, that fees should not be awarded for time spent by attorneys Kump and Korn – the attorneys originally representing Banks and Handelman.  Defendants have merely attached Kinsella Weitzman's billing records for the relevant period.  They have adduced no evidence as to Kump's and Korn's credentials, experience, or role in the litigation.  Nor have they provided any other information from which the Court could determine if their hourly rates are reasonable.  See Blum, 465 U.S. at 895 & n. 11 ("The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community"); see also Chalmers, 796 F.2d at 1210 ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party").  For this reason, the Court declines to award fees for Kump's and Korn's work, and deducts $6,468.00 from the fees requested.

Defendants also seek fees for work performed by three paralegals.  "Work performed by paralegals may be compensated as part of an attorney[s'] fee award." Hirsch v. Compton Un. Sch. Dist., No. CV 12–01269 RSWL, 2013 WL 1898553, *3 (C.D. Cal. May 3, 2013).  Defendants assert that the following rates are reasonable: $270 for senior paralegal Wylie; $270 for senior paralegal Montiel; and $200 for paralegal Cho.[106]  Plaintiff contends there is insufficient evidence to support these rates.[107]  The Court agrees.  Defendants provide no information about the paralegals' qualifications; they offer only the conclusory statement that they "are all experienced paralegals whose work was directed and supervised by [Mick] and . . . Stone."[108]  The Court finds Wylie's and Montiel's rates high, particularly because Defendants proffer no evidence that they are more skilled or experienced than most paralegals, other than their designation as "senior" paralegals.  Other district courts have approved paralegal rates of up to $250 per hour.  See Hirsch, 2013 WL 1898553 at *4 (awarding fees based on a $200 hourly rate for a paralegal); Perfect 10, Inc., 2015 WL 1746484 at *21 (awarding fees at the rate of $240 per hour for a paralegal

---

Court's opinion concerning the reasonableness of her hourly rate remains unchanged.

[106] Mick Decl., ¶ 6.  Plaintiff objects that Wylie's rate is not $270 but $335. (Shame on You Objections at 5).  As Defendants clarify in their reply, however, although counsel billed Defendants for Wylie's work at a rate of $335, Defendants request that the Court use a rate of $270 in calculating attorneys' fees.

[107] Shame on You Objections at 6.

[108] Mick Decl., ¶ 14.

with five years experience); <u>Jones v. Corbis Corp.</u>, No. CV 10-8668-SVW, 2011 WL 4526084, *4-5 (C.D. Cal. Aug. 24, 2011) (awarding fees based on rates of $134 for a paralegal and $243 for a senior paralegal); <u>see also</u> <u>Rodriguez v. Barrita, Inc.</u>, 53 F.Supp.3d 1268, 1279 (N.D. Cal. 2014) (rejecting a party's request for a $200 hourly rate for work performed by a paralegal with "more than a decade" of experience and employing a $175 hourly rate).

In situations where courts have found an hourly rate higher than $250 reasonable for paralegal time, they have done so because the moving party has adduced evidence that the paralegal was particularly skilled and experienced. <u>See</u> <u>Perfect 10, Inc.</u>, 2015 WL 1746484 at 21 ("[W]hile the . . . rate requested of $345 for Robert Winat is admittedly on the higher end, Mr. Winat has 23 years of experience as a paralegal"). Given that Defendants have not proffered evidence of this, the Court cannot conclude that Wylie's and Montiel's $270 rates are reasonable; it will award fees to Defendants for their work based on an hourly rate of $250. <u>See</u> <u>Browne</u>, 2010 WL 9499073 at *7 (declining to award fees based on plaintiffs' requested paralegal rates because plaintiffs "provide[d] [no] specific information about these individuals that would suggest expertise warranting rates above the average charged for paralegals in Southern California"). Wylie billed a total of 7.5 hours on this matter, while Montiel billed 20.1 hours. The Court thus deducts $552.00 from the total award ($150.00 for Wylie and $402.00 for Montiel).[109]

### 4. Propriety of Redactions

Plaintiff argues that 136.5 hours ($63,478.50) should be excluded from the fee award because defense counsel's time entries contain redactions.[110] A party seeking fees may redact certain portions of the relevant time entries when doing so "is necessary to protect the attorney client privilege," so long as the unredacted portions "still afford[ ] the Court sufficient detail to determine the reasonableness of the hours requested." <u>Perfect 10, Inc.</u>, 2015 WL 1746484 at *25; <u>see also</u> <u>Jones v. Corbis Corp</u>, 489 F. App'x 155, 157 (9th Cir. July 16, 2012) (Unpub. Disp.) ("Corbis can recover for tasks with redacted entries because the descriptions provide sufficient information"); <u>Allen v. Ghoulish</u>, Civil No. 06cv371 NLS, 2008 WL 474394, *8 (S.D. Cal. Feb. 19, 2008) (instructing a party to file billing records and to

---

[109] These deductions are based solely on the paralegals' rates. To the extent that the Court finds that the hours billed for paralegal work are unreasonable, further deductions will be addressed <u>infra</u>.

[110] Opposition at 17.

redact them "so as to remove all information that is protected by the attorney-client and work-product privileges"). Stated differently, redactions are acceptable so long as they "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1285 (9th Cir. 2004). For example, a time entry need not specify the precise purpose of a conversation or the topics discussed. See Moofly Prod., LLC v. Favila, No. 13-05866 SJO, 2015 WL 6681164, *4 (C.D. Cal. Nov. 2, 2015) ("The Corrales Parties contend that there are still heavy redactions on numerous entries for work performed, which makes it impossible to evaluate the fees charged for these entries. The Court disagrees with the Corrales Parties' contention. For example, the Corrales Parties object to the Walton Firm's March 12, 2015 billing entry; 'Continued work on trying to settle Joel matter, correspondence with opposing counsel [redacted].' The Court believes that this and similar entries are sufficiently detailed to substantiate a claim for reasonable fees"). Likewise, if counsel billed time for research, the records need not specify the topic of the research, as doing so may threaten revelation of information protected by the attorney work-product privilege. See Reed, 388 F.3d at 1285 ("As for the redactions, they are of this sort: 'Counsel call to discuss [REDACTED]' and 'Research Supreme Court case law involving [REDACTED].' If the Democratic Party were not furnishing enough information for a court to form a judgment on whether its fees were legitimate, then a court might be obligated to deny them. But these redactions do not impair the ability of the court to judge whether the work was an appropriate basis for fees").

Although cognizant of Defendants' desire to maintain confidentiality and protect privileges, the Court finds that some of the billing entries have been so heavily redacted that it cannot assess the reasonableness of the time expended. See Pringle v. Adams, No. SACV 10-1656-JLS, 2014 WL 3706826, *7 (C.D. Cal. Jul. 23, 2014) (stating that redactions are permitted only to the extent they are "limited" and "do not impair the Court's ability to determine the nature of the work performed or time billed"). The Court declines to award fees associated with the following billing entries:

- 05/16/14: Steven R. Mick: Communications re [REDACTED] (.3 hours)
- 06/05/14: Steven R. Mick: Further correspondence re [REDACTED] (.3)
- 06/23/14: Steven R. Mick: Telephone conference re [REDACTED] (.3)
- 09/10/14: Steven R. Mick: Communications re [REDACTED] (.4)
- 11/10/14: Steven R. Mick: Communications re [REDACTED] (.4)

- 03/31/15: Steven R. Mick: Telephone conferences re [REDACTED] (.8)
- 04/30/15: Seven R. Mick: Telephone conference [REDACTED] (1.2)
- 05/21/15: Steven R. Mick: Review [REDACTED] (.2)
- 06/04/15: Steven R. Mick: Review [REDACTED] (.3)

Thus, the Court will thus deduct 4.2 hours ($2,499.00) from the attorneys' fee award.  The balance of time entries that contain redactions are sufficiently clear to permit the Court to determine whether the time expended was reasonable.

### 5. Fees Incurred Drafting Discovery Responses

Plaintiff next objects to the fees requested for preparation of Defendants' responses to Plaintiff's discovery requests in October and November 2014.[111]  The Court's review of the time records indicates that Stone spent 30.9 hours drafting and revising the responses, while Mick spent 2.3 hours.  Defendants seek a total of $13,573.50 in fees associated with the preparation of their discovery responses.[112]

Plaintiff argues that this number of hours (33.2 in toto) is unreasonable given that the "responses consisted entirely of boilerplate objections largely cut and paste[d] from one another."[113]  The Court agrees.  The responses to each discovery request served on Banks stated:

> Defendant notes before her response that she is in the process of substituting counsel in this case.  It is the intention of the defendants in this case to all be represented by the same counsel.  Given the number of parties, however, it has taken time to enter into the appropriate representation agreements.  Because of the large number of moving pieces and the parties' efforts, counsel for Defendant (as well as counsel for Lakeshore, separately) asked Plaintiff's counsel for a short (two week) extension to answer these discovery requests.  Plaintiff's counsel flatly refused to provide the professional courtesy of an extension, stating that 'nothing has been

---

[111] Opposition at 18-19.

[112] Plaintiff asserts in its Opposition that Defendants seek $17,441.50 in fees for the preparation of discovery responses.  Because it does not explain its calculation, the Court cannot determine why its figure differs from that calculated by the Court.

[113] Opposition at 19.

filed.'  Defendant intends to amend these responses as soon as practicable.

> Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, and not relevant to the claims at issue or likely to lead to the discovery of admissible evidence.  Defendant further objects to this request on the grounds that the request seeks confidential and proprietary business documents.  Defendant also objects on the basis that this request is unduly burdensome.  Defendant objects that it is not sufficiently particularized to enable Defendant to respond.  Defendant objects to this request to the extent it calls for the disclosure of attorney client communications or documents protected by the work product doctrine or any other related privilege, immunity or doctrine.[114]

Similarly, almost all of Lakeshore's responses repeated identical objections verbatim.[115]  Defendants' responses were largely boilerplate, a conclusion shared by Judge Chooljian.[116]

> In assessing the reasonableness of Defendants' fee request, it is immaterial whether Plaintiff was justified in refusing to grant Defendants an extension to respond to its discovery requests, or whether Defendants were justified in providing "boilerplate" responses.  The relevant fact is that Defendants' responses essentially entailed repetition of identical objections to each of Plaintiff's requests.  It should not reasonably have taken 33.2 hours to prepare such responses.  Even keeping in mind the large number of requests that Defendants had to review and the fact that they had to communicate with their clients, the Court concludes that Defendants spent approximately twice as long preparing the responses as was reasonable.  For

---

[114] See Plaintiff's Motion to Compel Defendant Elizabeth Banks' Production of Documents and Further Responses, Docket No. 43 (Dec. 16, 2014), Exh. 3 (Banks' responses to discovery requests).

[115] See Plaintiff's Motion to Compel Defendant Lakeshore Entertainment Group LLC's Production of Documents and Further Responses, Docket No. 46 (Dec. 16, 2014).

[116] Motions to Compel Hearing Transcript at 11 (referring to Defendants' responses as "largely boilerplate").

that reason, it deducts $6,786.75 (50%) from the fee award.[117]

### 6.    Fees Incurred in Litigating Unsuccessful or Unfiled Motions

Plaintiff also seeks the elimination or reduction of fees associated with Defendants' unsuccessful opposition to its motion to amend to add a named defendant and its motion to compel compliance with a discovery order and for sanctions.[118]  It argues that "[d]efendants cannot properly seek to recover fees incurred in motions they lost."[119]

First, it is clear that Defendants did not entirely lose the discovery-related motions, as both the motion to compel compliance and the motion for sanctions were granted in part and denied in part.[120]  Second, and more fundamentally, Plaintiff cites no authority for the proposition that a party "cannot properly seek to recover fees incurred in motions [it] lost."[121]  Indeed, the argument is foreclosed by Ninth Circuit precedent.  Cabrales v. Cty. of Los Angeles, 935 F.2d 1050, 1052–53 (9th Cir. 1991) ("[P]laintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.  Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims. . . . The rationale is clear: If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim – even though she may have suffered some adverse rulings. . . . Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war"); see also Twentieth Century Fox Film Corp., 429 F.3d at 884 (applying the logic of Cabrales to attorneys' fees under § 505).  Because the time spent by Defendants on these motions likely contributed to

---

[117] Plaintiff also seeks a reduction of the time Defendants spent preparing opposition to its motions to compel.  (Opposition at 19).  Plaintiff fails to explain why the time recorded by Defendants for this task was excessive.  Unlike the discovery responses, Defendants' opposition briefs were substantive and non-repetitive.  The Court declines to reduce the fees sought on this basis.

[118] Opposition at 19-20.

[119] Id.

[120] See Order (1) Granting in Part and Denying in Part First Motion; and (2) Granting in Part and Denying in Part Second Motion ("Sanction Order"), Docket No. 136 (Apr. 28, 2015).

[121] Opposition at 19.

their decisive success by laying the groundwork for the eventual victory, the Court
declines to deduct the fees associated with preparation of opposition to these
motions.

Plaintiff also objects to awarding fees for hours spent drafting a motion for
summary judgment that was never filed.[122]  Defendants counter that the only reason
the motion was not filed was because Defendants were victorious in dismissing
Plaintiff's claims or obtaining judgment on the pleadings.[123]  Generally, the Court
believes it is unreasonable for a defendant to begin preparing a summary judgment
motion while a Rule 12(b) motion is still pending.  Here, there were some
extenuating circumstances that might have made an otherwise unreasonable choice
reasonable.  Specifically, the Defendants represented by Barnes & Thornburg filed a
motion for judgment on the pleadings on February 25, 2015, which they set for
hearing on May 18, 2015.  In the interim, Plaintiff amended its complaint to add
Broken Road and Garner as Defendants; the amended complaint was filed April 27,
2015.  Broken Road and Garner then filed a motion to dismiss that raised issues
identical to the motion for judgment on the pleadings.  As a result, the Court
concluded that the motions should be heard on the same day; this necessitated a
continuance of the hearing on the motion for judgment on the pleadings.  The
motions were finally heard on July 27, 2015, and the Court issued an order granting
them on August 14, 2015.  Because the July 27 hearing date was also the deadline for
filing a motion for summary judgment under the Local Rules, the Court could
understand if Defendants had taken the precaution of commencing preparation of a
summary judgment motion in July.[124]  According to the submitted time records,
however, all work on the summary judgment motion was complete by mid-June,
more than a month before the hearing on the motion for judgment on the pleadings

---

[122] Id. at 20.

[123] Defendants' Reply Brief in Support of Motion for Fees and Costs, Docket No.
198 (Nov. 23, 2015), at 18.

[124] Had Defendants been concerned about meeting the filing deadline, the Court
presumes they would have filed the motion on July 27, 2015, as a precautionary
measure.  They never filed the summary judgment motion, however, despite the
fact that the Court took the Rule 12(b) motions under submission on that date, and
did not rule until ten days before the motion hearing cut-off date.  This reinforces
the conclusion that Defendants' early work on the summary judgment motion was
not motivated by a desire to meet the motion hearing cut-off date.  Rather, it ap-
pears that they relied on the fact that the Court would grant Broken Road's and
Garner's application for a continuance of the case management schedule.

took place. It does not appear that Defendants were merely performing background research or drafting preliminary sections of the summary judgment motion during this period; rather, the motion appears to have been substantially complete by June 15, 2015, as it was "cite-checked" by a paralegal on June 16, 2015. Given that the Rule 12 motion had not even been argued as of that date, the Court finds the preparation of a potentially and ultimately unnecessary motion unreasonable.

Stone recorded 25.1 hours for preparation of the summary judgment motion, while Mick recorded 0.8 hours, and Wylie 1.8 hours. This corresponds to fees of $10,840.50. Because Defendants have failed to justify adequately why this expenditure of time so early in the litigation was warranted, the Court deducts this amount of fees from the award.

### 7. Fees Incurred Bringing this Motion

Defendants seek $17,800 in fees for the preparation and filing of this Motion.[125] This type of fees are frequently described as "fees on fees." See, e.g., Hirsch, 2013 WL 1898553 at *1. It is not clear that fees on fees are available under § 505. See Identity Arts v. Best Buy Enterp. Servs. Inc., No. C 05-4656 PJH, 2008 WL 820674, * 8 (N.D. Cal. Mar. 26, 2008) ("It is Best Buy's burden to establish that the fees it seeks were reasonably necessary to the successful litigation of their claims. . . . However, it is not immediately apparent to the court that fees incurred in bringing an attorney's fees motion were reasonably necessary to the successful litigation of Best Buy's defense. While other federal statutes – e.g., 42 U.S.C. § 1988 [and] 28 U.S.C. § 2412 – have been construed to permit the recovery of fees upon fees, Defendants have not submitted any controlling authority regarding the availability of fees upon fees vis-a-vis the Copyright Act specifically. Accordingly, the court declines to award such fees").

Even were such fees properly awarded, Defendants have failed to justify adequately the fees they seek for preparation of this Motion. The $17,800.00 in fees requested is based solely on Mick's and Stone's declarations. Mick states that "[i]n connection with this attorneys' fee motion, [he] . . . expended an additional 6.5 hours of time," and "anticipate[d] that [he would] spend a further 3.5 hours on the Reply Brief in support of this motion."[126] Stone "estimate[s] that [he] spent well over 20 hours preparing Defendants' Motion for Fees . . . ," and that he "will spend

---

[125] Mick Decl., ¶ 19.

[126] Mick Decl., ¶ 18.

10 additional hours writing a reply and preparing for the hearing on th[e] motion."[127] These summaries and conclusions concerning time associated with preparing and filing the Motion are insufficient.  See Ent. Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1231 (9th Cir. 1997) ("In line with the Supreme Court's directive, we have held that a district court can abuse its discretion in certain circumstances by not requiring the party requesting attorney's fees to submit any materials besides summaries of the time expended to litigate a matter.  Given the instant circumstances, we feel that the district court abused its discretion by concluding that the summaries submitted in conjunction with the declaration of Genesis's counsel were sufficient to determine exactly how many hours Genesis spent solely defending against the Inflatimation claims.  Indeed, in these circumstances, we believe that the district court erred in not requiring Genesis to submit its original time records and billing statements so that ERG – and the district court – could determine whether the fees being claimed were truly for time spent in defending against the Inflatimation claims"); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984) ("The district court appears to have accepted uncritically plaintiff's representations concerning the time expended on this case, and it awarded the entire amount requested by plaintiff.  Such a procedure is inadequate").  Consequently, the Court declines to award Defendants fees on fees, and deducts $17,800.00 from its request.

### 8.    Conclusion Regarding Amount of Fees

Defendants request that the Court award fees of $360,616.00.  For the reasons stated in this Order, the Court makes the following deductions:

- $6,468.00, for insufficiently documented fees incurred by Kinsella Weitzman;
- $552.00, for excessive fees incurred for paralegal work;
- $2,499.00, for improperly redacted billing entries;
- $6,786.75, for excessive billing for preparation of Defendants' responses to Plaintiff's discovery requests;
- $10,840.50, for unreasonably early preparation of a motion for summary judgment that was never filed;
- $17,800.00, for insufficiently documented "fees on fees"

In light of the deductions totaling $44,946.25, the Court awards Defendants $315,669.75 in attorneys' fees.

---

[127] Stone Decl., ¶ 42.

### 9.    Costs

Defendants also seek $3,825.15 in costs.[128]  Although there is some debate among courts of appeal as to whether § 505 authorizes an award of costs beyond the "taxable" costs authorized by Rule 54 of Federal Rules of Civil Procedure, see Twentieth Century Fox, 429 F.3d at 885 (noting the split), Defendants seek only costs authorized by Rule 54 and Local Rule 54.  The Court awards these costs.

## C.    Whether the Court Should Sanction Coate Under 28 U.S.C. § 1927

Defendants ask that the award of attorneys' fees also be entered against Charles Coate as a sanction under 28 U.S.C. § 1927, making Plaintiff and Coate jointly liable for the award.  Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The purpose of § 1927 sanctions is to deter "unnecessary filings and tactics once a lawsuit has begun."  In re Keegan Mgmt. Co., Securities Litigation, 78 F.3d 431, 435 (9th Cir. 1996).  "[D]amages under section 1927 are appropriate where there is no obvious violation of the technical rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs."  Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986).  Before § 1927 sanctions can be imposed, the Court must make a finding that the attorney's conduct was at least reckless.  Lahiri v. Universal Music and Video Distribution Corp., 606 F.3d 1216, 1218-19 (9th Cir. 2010) ("Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent authority require a bad faith finding"); see also Braunstein v. Ariz. Dept. of Transp., 683 F.3d 1177, 1189 (9th Cir. 2012) (citing Lahiri, 606 F.3d at 1219); Fink v. Gomez, 239 F.3d 989, 993 (9th Cir. 2001) ("[R]ecklessness suffices for § 1927, but bad faith is required for sanctions under the

---

[128] Application to the Clerk to Tax Costs, Docket No. 183 (Aug. 31, 2015).

court's inherent power").[129]  "For sanctions to apply [under § 1927], if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass."  In re Keegan, 78 F.3d at 436.

The decision to sanction a party or attorney rests in the sound discretion of the district court.  See, e.g., Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1996) (district court abused its discretion by not awarding § 1927 sanctions); MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1121 (9th Cir. 1991) (holding that the district court abused its discretion by awarding § 1927 sanctions).  As with sanctions awarded under the Court's inherent powers, § 1927 sanctions must be tailored to the particular conduct challenged.  See, e.g., Blodgett, 709 F.2d at 610-11 ("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct"); Doyle v. Illinois Central R.R. Co., No. CV F 08-0971 LJO SM, 2009 WL 224897, *6 (E.D. Cal. Jan. 29, 2009).

Defendants base their argument for sanctions on Coate's failure timely to produce the Rosen screenplay; they argue that this failure was "disturbing" and "clear evidence of bad faith."[130]  For the reasons stated above, the Court agrees that the failure to disclose the Rosen screenplay in a timely fashion was indicative of "a

---

[129] In B.K.B. v. Maui Police Dep't, 276 F.3d 1091 (9th Cir. 2002), the Ninth Circuit noted that "[its] cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanctions for attorneys' fees.  For example, in United States v. Blodgett, 709 F.2d 608, 610 (9th Cir. 1983), [it] held that § 1927 sanctions require a finding of recklessness or bad faith.  See also Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998) ('An award of sanctions under 28 U.S.C. § 1927 or the district Court's inherent authority requires a finding of recklessness or bad faith').  However, [it has] also held that 'section 1927 sanctions must be supported by a finding of subjective bad faith,' which 'is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'  In re Keegan Mgmt. Co. [ ] . . . [The Court's] most recent pronouncement on the proper legal standard for § 1927 sanctions comes from the case of Fink v. Gomez . . . . In Fink, [the Court] reconciled Blodgett, Keegan, and Barber by holding that 'recklessness suffices for § 1927, but bad faith is required for sanctions under the Court's inherent power.'"  B.K.B., 276 F.3d at 1107 (some citations omitted).  Subsequent Ninth Circuit cases have also held that a finding of recklessness may suffice under § 1927.  See Braunstein, 683 F.3d at 1189; Lahiri, 606 F.3d at 1218-19.

[130] Motion at 17.

subjective finding of bad faith." New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989). Moreover, by delaying Defendants' ability to file a Rule 12(b) motion, Coate "vexatiously increased the scope of this litigation in violation of § 1927." Trulis, 107 F.3d at 694. This is especially true given that the failure to provide the screenplay directly violated a Court order. See Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 189 (E.D.N.Y. 2005) ("Here, plaintiff's efforts to obtain the requested discovery . . . consisted of repeated letters and phone calls, over the course of 2003 and 2004, to get the documents. During this time, defendant's counsel (1) misled plaintiff into believing the documents were forthcoming; (2) turned over non-responsive documents instead of the requested documents; and (3) refused to provide a written response to the request for the 1980 Plan and related documents at issue here. . . . [S]uch repeated failure to produce documents, particularly after the entry of a Court order directing production of the documents, constitutes bad faith on the part of defendant's counsel"); cf. Batson v. Neal Spelce Assoc., Inc., 765 F.2d 511, 516 (5th Cir. 1985) (affirming a sanctions award based on a party's failure to disclose documents to the other party pursuant to a court order, and stating that "although the court's order did not recite that sanctions would follow a refusal to comply, it is universally understood that a court's orders are not to be willfully ignored, and, certainly, attorneys are presumed to know that refusal to comply will subject them and their clients to sanctions").

Nonetheless, Defendants' request that Coate be sanctioned by being held jointly and severally responsible for the full amount of Defendants' fees is excessive. This is because Defendants have not adequately demonstrated that all of their attorneys' fees were the result of Coate's failure to disclose the screenplay. See Yagman, 796 F.3d at 1187 (refusing to award § 1927 sanctions because "there has been no showing how any such [misconduct] resulted in a delay or multiplication of the proceedings"). The only "excess" litigation costs Defendants incurred as a result of Coates' conduct were those associated with their efforts to obtain the screenplay between October 27, 2014, when the parties made their initial disclosures (and Plaintiff violated the Court's directive that it produce the screenplay), and December 17, 2014, when the screenplay was finally produced. See Blodgett, 709 F.2d at 610-11 ("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct").

Defendants dispute this. They assert that Coate's bad faith failure to produce the screenplay caused them to incur all, or at least most, of their litigation expenses. They argue that the dates on which fees were incurred are "heavily back-weighted after December 2014 when Plaintiff finally provided its screenplay" and conclude

that "the lion's share of such fees could have easily been avoided with an early production of Plaintiff's screenplay."[131]   The Court disagrees.   Defendants are correct that the amount of time their lawyers expended on this litigation increased substantially after December 17, 2014.[132]   This is likely, however, due to the fact that, once Defendants obtained the screenplay, they reviewed it and began to draft their Rule 12(b) motions.   The increase in litigation costs would have occurred irrespective of Plaintiff's delay in producing the document, but simply at an earlier point in time.   For that reason, it is not the flurry of litigation activity <u>after</u> December 17, but rather some portion of the moderate amount of activity <u>before</u> December 17 – during the period Defendants were attempting to obtain the screenplay – that is more directly attributable to Plaintiff's and Coate's bad faith delay.[133]

A review of the time records indicates the following hours/fees were incurred in connection with efforts to recover the script being wrongfully withheld by Coate and Plaintiff:

- Stone: 9.6 hours ($3,792.00)
- Mick: .3 hours ($178.50)
- Montiel: 1.5 hours ($375.00)

The Court imposes sanctions on Charles Coate of $4,345.50.   Because the billing entries related to production of Plaintiff's screenplay were explicit and reasonable, the Court declines to reduce this amount, which was calculated using the hourly rate the Court found reasonable for Montiel.   Of the total award against Plaintiff, Coate is jointly and severally liable for $4,345.50.

---

[131] Motion at 19-20.

[132] <u>Id.</u> at 20.

[133] Defendants also appear to argue that the screenplay should have been provided <u>before</u> initial disclosures, specifically at the Rule 26 conference.   However the federal rules do not require disclosures when the parties meet for their Rule 26 conference.   <u>See</u> Fed. R. Civ. Proc. 26(f) ("In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan").   Coate was not in violation of the Federal Rules of Civil Procedure or any Court order prior to the date upon which initial disclosures were to be made.

## III.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Fees and Costs in part.  Attorneys' fees are awarded to Defendants in the amount of $315,669.75 and costs are awarded to Defendants in the amount of $3,825.15, for a total of $319,494.90 against Plaintiff.  The Court imposes sanctions of $4,345.50 on Charles Coate under 28 U.S.C. § 1927; he will be jointly and severally liable with Plaintiff for this amount of fees.

**IT IS SO ORDERED.**

Dated:  August 14, 2016

Virginia A. Phillips
Chief United States District Judge